**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant*,<br><br>and<br><br>CHENG SHIN RUBBER USA INC.,<br><br>*Defendant-Intervenor*. | Court No. 24-00165<br><br>PUBLIC VERSION |

**PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Plaintiff the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (the "USW" or "Plaintiff") hereby moves for judgment on the agency record with regard to the Department of Commerce's ("Commerce's") final scope ruling that certain temporary-use spare ("T-Type") tires produced in Taiwan by Cheng Shin Rubber Ind. Co. are not within the scope of the antidumping duty order on passenger vehicle and light truck ("PVLT") tires from Taiwan, *Final Scope*

*Ruling on the Antidumping Duty Order on Passenger Vehicle and Light Truck Tires from Taiwan: Request by Cheng Shin Rubber Ind. Co. Ltd.* (Dep't Commerce Aug. 5, 2024).

Plaintiff maintains that certain aspects of Commerce's final ruling were not supported by substantial evidence, were arbitrary and capricious and an abuse of discretion, and were otherwise not in accordance with the law. The reasons for Plaintiff's claims and points and arguments in support of those claims are detailed in the attached memorandum, and a proposed order remanding the scope ruling to the agency for redetermination is also attached. Plaintiff respectfully asks this Court to so remand the matter to Commerce.

Respectfully submitted,

/s/ Nicholas J. Birch
Roger B. Schagrin
Nicholas J. Birch
Alessandra A. Palazzolo
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

Date: December 10, 2024

## UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> CHENG SHIN RUBBER USA INC., <br><br> *Defendant-Intervenor.* | **Court No. 24-00165** <br><br><br> <u>PUBLIC VERSION</u> |

## PLAINTIFF'S RULE 56.2 MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR JUDGMENT ON THE AGENCY RECORD

Roger B. Schagrin
Nicholas J. Birch
Alessandra A. Palazzolo
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel for Plaintiff the USW*

Date: December 10, 2024

PUBLIC VERSION

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

RULE 56.2 STATEMENT AND SUMMARY OF ARGUMENT ................................. 1

STATEMENT OF THE FACTS ................................................................................... 4

ARGUMENT ................................................................................................................. 8

I.    Standard of Review ............................................................................................ 8

II.   Commerce's Scope Ruling is Contrary to the Language of the Scope and the
      Record ............................................................................................................... 10

      A.   Commerce's Determination is Contrary to the Plain Language of the
           Scope ........................................................................................................ 10

      B.   The Evidence on the Record Shows That CST's T-Type Tires Should Be
           Included Within the Scope of the Order ................................................. 15

III.  Commerce Did Not Provide an Opportunity to Comment on a Preliminary
      Determination .................................................................................................. 17

CONCLUSION AND RELIEF SOUGHT ................................................................. 22

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172 (2004) .................. 9

*ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82
  (Fed. Cir. 2012).................................................................................................... 11

*Coal. of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340
  (Ct. Int'l Trade 2020)............................................................................................. 8

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003)....................... 21

*Consol. Bearings Co. v. United States*, 412 F.3d 1266 (Fed. Cir. 2005)................. 9, 19

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ....................................................... 8

*Dupont Teijin Films USA v. United States*, 407 F.3d 1211 (Fed. Cir.
  2005) .................................................................................................................... 8

*Essex Mfg., Inc. v. United States*, 27 C.I.T. 630 (2003), *aff'd*, 89 F. App'x
  263 (Fed. Cir. 2004)............................................................................................. 13

*King Supply Co. LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012).... 9, 10, 11, 12

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.
  Co.*, 463 U.S. 29, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)................................. 9, 12

*Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341 (Ct.
  Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020) ................................... 12

*Polites v. United States*, 35 C.I.T. 312 (2011) ............................................................. 12

*SKF USA, Inc. v. United States*, 630 F.3d 1365 (Fed. Cir. 2011) .......................... 8, 13

*SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263 (Ct. Int'l
  Trade 2023)........................................................................................................... 12

*Smith Corona Corp. v. United States*, 915 F.2d 683 (Fed. Cir. 1990)........................ 12

*Star Fruits S.N.C. v. United States*, 393 F.3d 1277 (Fed. Cir. 2005) .......................... 9

*Thai Plastic Bags Indus. Co. v. United States*, 37 C.I.T. 354 (2013*),
  aff'd sub nom. Thai Plastic Bags Indus. Co. v. United States*, 774
  F.3d 1366 (Fed. Cir. 2014) ................................................................................... 17

*USX Corp. v. United States*, 655 F. Supp. 487 (Ct. Int'l Trade 1987) ......................... 8

*Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350 (Fed. Cir.
  2010) ..................................................................................................................... 9

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370
  (Fed. Cir. 2013)................................................................................................ 8, 12

## Statutes

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................... 8

19 U.S.C. § 1516a(b)(1)(B)(ii) .................................................................. 8

## Regulations

19 C.F.R. § 351.225(f)(2) ......................................................................... 20

19 C.F.R. § 351.225(f)(3) ......................................................................... 20

19 C.F.R. § 351.225(f)(4) ...................................................................... 3, 18

19 C.F.R. § 351.225(f)(5) ......................................................................... 18

19 C.F.R. § 351.225(g) ..................................................................... 3, 17, 18

19 C.F.R. § 351.225(h) .............................................................................. 3

19 C.F.R. § 351.309(c)(1) ........................................................................ 20

19 C.F.R. § 351.309(c)(2) ........................................................................ 20

## Administrative Determinations

*Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 Fed. Reg. 47,902 (Dep't Commerce Aug. 10, 2015) ........................ 4

*Notice of Scope Ruling Applications Filed in Antidumping and Countervailing Duty Proceedings*, 89 Fed. Reg. 35,796 (Dep't Commerce May 2, 2024) ................................................................... 1

*Notice of Scope Rulings*, 82 Fed. Reg. 26,454 (Dep't Commerce June 7, 2017) ...................................................................................... 4

*Passenger Vehicle and Light Truck Tires From the Republic of Korea, Taiwan, and Thailand: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determination for Thailand*, 86 Fed. Reg. 38,011 (Dep't Commerce Jul. 19, 2021) ................................... 5

PUBLIC VERSION

Pursuant to USCIT Rule 56.2 and this Court's Scheduling Order (ECF No. 21), Plaintiff the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (the "USW" or "Plaintiff") submits the following memorandum of points and authorities supporting Plaintiff's motion for judgment on the agency record.

## <u>RULE 56.2 STATEMENT AND SUMMARY OF ARGUMENT</u>

**1.**    <u>**Administrative Determination for Which Review Is Sought**</u>

The determination contested by Plaintiff is the final scope ruling by the Department of Commerce ("Commerce") that certain temporary-use spare ("T-Type") tires produced in Taiwan by Cheng Shin Rubber Ind. Co. ("CST") are not within the scope of the antidumping duty order on passenger vehicle and light truck ("PVLT") tires from Taiwan, and Commerce's decision to issue this determination without a preliminary determination or opportunity for parties to comment on Commerce's reasoning. Commerce published its final scope ruling[1] as *Final Scope Ruling on the Antidumping Duty Order on Passenger Vehicle and Light Truck Tires from Taiwan: Request by Cheng Shin Rubber Ind. Co. Ltd.* (Dep't Commerce Aug. 5, 2024) ("*Scope Ruling*") (P.R. 15, C.R. 4).[2]

---

[1] As of the date of this filing, Commerce has not yet published notice of the scope ruling in the Federal Register. Commerce did publish notice of the application for the scope ruling on May 2, 2024. *Notice of Scope Ruling Applications Filed in Antidumping and Countervailing Duty Proceedings*, 89 Fed. Reg. 35,796 (Dep't Commerce May 2, 2024).

[2] Citations to documents on the public administrative record are denoted as "P.R." and citations to the confidential administrative record are denoted as "C.R." in this brief.

2.    **Issues Presented and Summary of Arguments**

    A.    **Commerce's scope ruling was contrary to the plain language of the scope**

Commerce's determination that the T-Type tires produced by CST in Taiwan were not within the scope of the Order because these tires were not of sizes included in the passenger car or light truck sections of the Tire and Rim Association ("TRA") Year Book is contrary to the plain language of the scope. That language instead states unambiguously that the scope covers "{s}izes that fit passenger cars and light trucks {that} *include, but are not limited to*, the numerical size designations listed in the passenger car section or light truck section of the Tire and Rim Association Year Book." *See Scope Ruling* (P.R. 15, C.R. 4) at 3 (emphasis added). But Commerce impermissibly interpreted that purposefully non-exclusive scope language to instead mean that *only* tire sizes listed in the TRA Year Book are covered by the scope. *Id.* Commerce cannot change the plain meaning of scope language in that way, and so Commerce's scope ruling was unsupported by substantial evidence and otherwise not in accordance with law.

    B.    **Commerce's scope determination was contrary to the clear facts on the record**

Commerce further claimed in its scope ruling that "there is no evidence on the record that suggests the tire in question is of a size that fits passenger cars and light trucks," which Commerce argued provided further support for Commerce's final negative ruling. *Scope Ruling* (P.R. 15, C.R. 4) at 8. But the record before Commerce provided specific evidence that proved that the tires in question were of a size specifically used for passenger cars. Because Commerce ignored evidence on the

record and reached a determination incompatible with that evidence, Commerce's determination was unsupported by substantial evidence.

### C.    Commerce did not provide parties with the opportunity to respond to a preliminary scope ruling

Commerce's regulations allow it to issue a final scope ruling without issuing a preliminary scope ruling in cases where the issue is not complex and not under disagreement. *See* 19 C.F.R. § 351.225(g). If Commerce does not issue a preliminary ruling, it can issue a scope ruling without providing interested parties any opportunity to comment on Commerce's proposed action. *Cf.* 19 C.F.R. § 351.225(h) (final scope rulings) and § 351.225(f)(4) (Commerce is required to allow party comments on a preliminary scope ruling).

During Commerce's scope inquiry here, Petitioner requested that Commerce issue a preliminary determination, pointing out to the agency the flawed argument made in the scope ruling request by importer Cheng Shin Rubber USA Inc. ("Cheng Shin") that claimed tire sizes not included in the TRA Year Book were excluded from the scope, contrary to the plain language of the scope that stated expressly that coverage was *not* limited to sizes listed in the Year Book. *See Petitioner's Request for a Preliminary Determination* (P.R. 12). Commerce ignored the argument over this issue and issued its final scope ruling in this inquiry without first issuing a preliminary scope ruling and allowing for parties to brief the agency on their views of Commerce's proposed action. *See Scope Ruling* (P.R. 15, C.R. 4) at 8. Commerce abused its discretion by not issuing a preliminary determination, despite knowing the matter before it was complex and under disagreement, and by not

3

allowing parties any opportunity to review and comment on Commerce's proposed ruling.

<u>**STATEMENT OF THE FACTS**</u>

The relevant background for the case starts with the earlier investigations that resulted in the antidumping and countervailing duty orders on PVLT tires from China. *See Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 Fed. Reg. 47,902 (Dep't Commerce Aug. 10, 2015) ("*PVLT from China Orders*"). Plaintiff USW was also the petitioner in those investigations. The scope language in those investigations stated that all tires "of a size that is among the numerical size designations listed in the passenger car section or light truck section of the Tire and Rim Association Year Book," a U.S. tire industry publication that lists the characteristics of the most common tire sizes used in the United States, were covered by that scope. *See id.* at 47,902.

Later, over the arguments of the petitioner that orders on PVLT tires were intended to cover all PVLT tires, Commerce issued a scope ruling under the PVLT from China orders that held that this language limited the coverage of the scope to *only* those tire sizes listed in the TRA Year Book. *See Notice of Scope Rulings*, 82 Fed. Reg. 26,454 (Dep't Commerce June 7, 2017).

So when Plaintiff brought new petitions on PVLT tires from other countries, including Taiwan – in large part in response to Chinese tire manufacturers shifting

their production to those additional countries following the PVLT tires from China orders – it proposed similar scope coverage to what had been in the petitions on China. But, attempting to avoid the same outcome under the new investigations that had limited the scope contrary to petitioner's intent under the prior orders, petitioner purposefully changed the proposed scope language regarding TRA Year Book size listings. Commerce adopted the revised scope language on this point when it issued the new orders on PVLT tires. That new language stated that all tires of a PVLT tire size were covered, "*includ{ing}, but {} not limited to*, the numerical size designations listed in the passenger car section or light truck section of the Tire and Rim Association Year Book…." *See Passenger Vehicle and Light Truck Tires From the Republic of Korea, Taiwan, and Thailand: Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determination for Thailand*, 86 Fed. Reg. 38,011, 38,012 (Dep't Commerce Jul. 19, 2021) (emphasis added).

On March 11, 2024, importer Cheng Shin requested a scope ruling from Commerce regarding whether the T-Type tires produced in Taiwan by Cheng Shin's affiliate CST were subject to the antidumping duty order on PVLT tires from Taiwan. *See* Cheng Shin, *Request for Scope Ruling* (Mar. 11, 2024) ("*Cheng Shin Request for Scope Ruling*") (P.R. 1, C.R. 1). Commerce accepted Cheng Shin's application and initiated a scope inquiry into T-Type tires on April 11, 2024. *See Initiation of Cheng Shin Scope Inquiry* (Dep't Commerce Apr. 11, 2024) (P.R. 3). However, Commerce's initiation memorandum was erroneously captioned as "Scope Inquiry: LTST 2024" rather than "Scope Inquiry: T-Type Tires." *Id.*

PUBLIC VERSION

Commerce issued a supplemental questionnaire in this scope inquiry on May 1, 2024, and Cheng Shin responded to the questionnaire on May 8, 2024. *See* Cheng Shin, *Response to the Department's May 1 Supplemental Questionnaire* (May 8, 2024) (P.R. 10). Commerce's only request in this supplemental questionnaire was to instruct Cheng Shin to submit the relevant current version of the TRA Year Book sections. *Id.*

On June 17, 2024, the USW requested that Commerce issue a preliminary determination in this scope inquiry, in order to allow interested parties to see, and submit comments on, Commerce's preliminary interpretation of the scope. *See Petitioner's Request for a Preliminary Determination* (P.R. 12). In that request, Plaintiff pointed out to Commerce that while Cheng Shin claimed in its scope request that the coverage of the scope was limited to tire sizes listed in the TRA Year Book, the actual language of the scope stated the opposite. *Id.* at 2. Plaintiff also expressed to Commerce that it was essential to allow parties to see and comment on Commerce's views of the scope language in such a case where the agency was being asked to interpret the scope contrary to the plain meaning of the language. *Id.*

Rather than do so – and assure that it had all facts and arguments laid out before it in order to help prevent it from reaching a plainly erroneous determination – on August 5, 2024, Commerce issued its final scope ruling in this matter, ruling that the T-Type tires produced by CST were not within the scope of the Order. *See Scope Ruling* (P.R. 15) at 1. In making that ruling, Commerce relied on the fact that

these tires were "of a size not listed in the passenger vehicle or light truck sections of the {TRA} Yearbook," claiming that "the scope … is dependent upon the passenger car and light truck sections of the TRA Year Book." *Id.* at 8. Commerce provided no explanation of how the actual scope language of "include, but are not limited to" could be interpreted consistently with Commerce's determination the scope was instead limited only to that listing. *Id.* at 8.

Commerce also stated that it found that it was "unnecessary" to issue a preliminary scope ruling and to provide parties with the opportunity to comment on such, claiming that "there is no evidence on the record that suggests the T-Type tires subject to this scope inquiry would be covered by the scope of this *Order*." *Id.* Commerce also claimed that a preliminary determination was unwarranted because "Commerce has previously interpreted similar scope language pursuant to the AD order on passenger tires from the People's Republic of China." *Id.* Commerce did not address the difference in the language of the scope of the order on PVLT tires from China. *Id.*

On August 8, 2024, the USW filed a request for Commerce to reconsider its August 5 scope determination as Commerce's conclusion was contrary to the plain language of the scope of the relevant order on PVLT tires from Taiwan; pointing to the agency's recognized inherent authority to reconsider incorrect determinations. *See Petitioner's Request to Reconsider* (Aug. 8, 2024) (P.R. 18, C.R. 5) at 3. Cheng Shin filed comments in opposition to the USW's request. *See Response to Petitioner's August 8 Letter* (Aug. 9, 2024) (P.R. 19). Commerce issued out-of-scope liquidation

instructions on September 26, 2024, without addressing the USW's request for

reconsideration. *See Liquidation Notice* (P.R. 21).

**ARGUMENT**

## I.    Standard of Review

This Court must hold unlawful any determination by Commerce in an

antidumping proceeding that is "unsupported by substantial evidence on the record,

or otherwise {is} not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Dupont Teijin Films USA v. United States*,

407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)).

In order to meet this substantial evidence standard, "Commerce is obligated

to respond to those arguments made by interested parties that bear on issues

material to Commerce's determination." *Coal. of Am. Flange Producers v. United

States*, 448 F. Supp. 3d 1340, 1351 (Ct. Int'l Trade 2020); *see also SKF USA, Inc. v.

United States*, 630 F.3d 1365, 1374 (Fed. Cir. 2011) ("…Commerce also has an

'obligation' to address important factors raised by comments from petitioners and

respondents."). In other words, "{t}his standard requires Commerce to examine the

record and articulate a satisfactory explanation for its action." *Yangzhou Bestpak

Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013). "The court

cannot defer to a decision which is based on inadequate analysis or reasoning." *USX

Corp. v. United States*, 655 F. Supp. 487, 492 (Ct. Int'l Trade 1987).

Moreover, to be upheld, Commerce's decisions must not be "arbitrary, capricious, {or} an abuse of discretion." 19 U.S.C. § 1516a(b)(1)(B)(ii). An agency's actions are arbitrary and capricious where

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983). In other words,

> {a}n abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors.

*Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (quoting *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).

In the context of a scope determination, Commerce is entitled to "broad" but "not unlimited" deference from the Court, as "Commerce cannot interpret an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *King Supply Co. LLC v. United States*, 674 F.3d 1343, 1348 (Fed. Cir. 2012) (quoting *Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1354 (Fed. Cir. 2010)). "{A} scope determination is not in accordance with the law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms." *Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004).

## II.   Commerce's Scope Ruling is Contrary to the Language of the Scope and the Record

### A.   Commerce's Determination is Contrary to the Plain Language of the Scope

"Commerce cannot interpret an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *King Supply Co. LLC*, 674 F.3d at 1348. Unfortunately, here, Commerce has done exactly that. The language of the scope as established in the antidumping order states in plain and explicit terms that:

> … all tires that lack a "P" or "LT" prefix or suffix in their sidewall markings, as well as all tires that include any other prefix or suffix in their sidewall markings, are included in the scope, regardless of their intended use, as long as the tire is of a size that fits passenger cars or light trucks. Sizes that fit passenger cars and light trucks *include, but are not limited to*, the numerical size designations listed in the passenger car section or light truck section of the Tire and Rim Association Year Book, as updated annually.

*Scope Ruling* (P.R. 15) at 3 (emphasis added).

In interpreting the language of this scope to determine instead that "that the scope, as specified above, is dependent upon the passenger car and light truck sections of the TRA Year Book," Commerce inserts an entirely new limitation to the scope so that it covers nothing more than what may be listed in the Year Book. But the scope is specific that its coverage is "*not limited to*" the sizes listed in the TRA Year Book. *Id.* at 8. A scope that is "not limited to" the TRA Year Book cannot be interpreted to be "dependent upon the passenger car and light truck sections of the TRA Year Book" without fundamentally changing the terms of the scope.

When Commerce sets out to interpret the coverage of a scope of an order, "the plain language of the AD order is paramount…." *King Supply Co. LLC*, 674 F.3d at 1345; *see also, e.g., ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 87 (Fed. Cir. 2012) ("If it is not ambiguous, the plain meaning of the language governs."). Commerce made no finding that the plain term of the scope language at issue here, that coverage "include{s}, but {is} not limited to" the sizes listed in the TRA Year Book, was in any way ambiguous. Instead, Commerce simply ignored that plain language by declaring that the four corners of the scope coverage was instead "dependent" on what was listed in the Year Book and, because the size of the T-Type tires was not amount that list, deciding those were outside the scope of the order. *Scope Ruling* (P.R. 15) at 8. Commerce cannot so dismiss out of hand the plain language of the scope.

Indeed, Commerce even noted directly in its determination that the "scope then states that sizes that fit passenger cars and light trucks include, but are not limited to, the size designations listed in the TRA Year Book." *Id.* But Commerce gave no explanation of how a scope that expressly states it is "not limited to {} the size designations listed in the TRA Year Book" could be interpreted to *be* limited to the Year Book. Commerce did not address the actual language of the scope at all, other than to paradoxically quote and then ignore the very scope language that unambiguously conflicts with Commerce's interpretation of that scope. Because Commerce failed to provide any explanation of how the actual language of the scope allowed the interpretation Commerce applied to it, Commerce entirely failed to

consider an aspect of the question before it. That unconsidered aspect was not only important to the question before the agency, but was the paramount aspect of the issue. *See King Supply Co. LLC*, 674 F.3d at 1345 (the plain language of the scope is the paramount issue in interpretation). Thus, Commerce's unsupported scope determination here is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, 103 S. Ct. at 2867 (an agency determination is arbitrary and capricious where it has "entirely failed to consider an important aspect of the problem"). Moreover, as Commerce failed to address this central issue, Commerce's determination is also unsupported by substantial evidence. *See, e.g.*, *Yangzhou Bestpak*, 716 F.3d at 1378 (Commerce must "articulate a satisfactory explanation for its action" under the substantial evidence standard).

Likewise, even if the scope were ambiguous and susceptible to interpretation, Commerce cannot interpret scope language in a manner that renders *any* term in that language to be "meaningless and 'mere surplusage.'" *SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263, 1275 (Ct. Int'l Trade 2023) (quoting *Polites v. United States*, 35 C.I.T. 312, 317 (2011)); *see also, e.g.*, *Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341, 1353 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020) (rejecting a reading of scope language that would require "reading out {a} term from the relevant scope language"). Commerce's interpretation of the scope to be defined by the TRA Year Book necessarily makes the actual scope language of "include, but are not limited to" meaningless. Indeed. Commerce's reading not only would discount that term, it would wholly replace it with "is

12

limited to" instead. Commerce cannot so change the terms of the scope through a post-order act of interpretation. *King Supply Co. LLC*, 674 F.3d at 1348; *see also Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed. Cir. 1990) ("Although the scope of a final order may be clarified, it can not be changed in a way contrary to its terms.").

As this Court has recognized, the language "include, but are not limited to" is expansive, not exclusive. *See, e.g., Essex Mfg., Inc. v. United States*, 27 C.I.T. 630, 645 n.15 (2003), *aff'd*, 89 F. App'x 263 (Fed. Cir. 2004) (explaining that "the very language" of the term "include, but are not limited to" in Customs' regulations "makes it clear that the list of {items in the regulation} is not exclusive"). The unescapably plain meaning of the term in the scope language here directs that the scope is "*not* limited to" what is listed in the TRA Year Book. That is what the scope language states. If Commerce had addressed the actual language of the scope in its determination, it would have been unable to reach any decision other than that the scope was *not* defined by what is listed in the Year Book: it included it, but included other tire sizes as well.

Commerce's failure to engage at all with the actual language of the scope, even directly after quoting it in its determination, is even more inexplicable as Plaintiff specifically pointed the issue out to Commerce during the scope inquiry. In its request that Commerce issue a preliminary determination, Plaintiff explained this exact issue to Commerce, quoting the very scope language of "includ{ing}, but {} not limited to" that Commerce would then go on to ignore in its final determination.

*See Petitioner's Request for a Preliminary Determination* (P.R. 12) at 2. Thus, Commerce not only failed to consider an important aspect of the matter before it, it did so while failing to meet its obligation to address important factors raised by the parties before it. *See SKF USA*, 630 F.3d at 1374 ("…Commerce also has an 'obligation' to address important factors raised by comments from petitioners and respondents.").

Commerce's additional reasoning that it "has previously interpreted similar scope language pursuant to the AD order on passenger tires from the People's Republic of China" further fails to support Commerce's clear misreading of the scope in this case. *Id*. As explained in the statement of the facts, *supra*, the scope of the separate order that Commerce cited to for support is pointedly – and purposefully – different from the scope at issue here. The scope language for the antidumping and countervailing duty orders on PVLT tires from China stated that:

> … all tires that lack a "P" or "LT" prefix or suffix in their sidewall markings, as well as all tires that include any other prefix or suffix in their sidewall markings, are included in the scope, regardless of their intended use, as long as the tire *is of a size that is among* the numerical size designations listed in the passenger car section or light truck section of the Tire and Rim Association Year Book, as updated annually, unless the tire falls within one of the specific exclusions set out below.

*PVLT Tires from China Orders* , 80 Fed. Reg. at 47,902.

In contrast, as we have stated, the scope language for PVLT tires from Taiwan provides expressly that the coverage of this newer and different order "*include{s}, but {is} not limited to,* the numerical size designations listed in the

passenger car section or light truck section of the Tire and Rim Association Year Book….” *Scope Ruling* at 3 (emphasis added).

Commerce failed to acknowledge, much less to address, the differences in the express terms used in each of the scopes it was choosing to compare. The purposefully different language used in the order at issue here was clearly distinctive from the language used in the orders on China. In interpreting the scope language for this order, Commerce was required to look to the plain terms of *this* scope, not to the dissimilar language under a different order.

Because Commerce entirely failed to consider the actual language of scope of this order and instead interpreted that scope contrary to that plain language, Commerce’s final scope ruling here was unsupported by substantial evidence and, as that central aspect of the issue was unaddressed by the agency, was also arbitrary, capricious, and an abuse of discretion. This Court must remand this unsupported ruling to the agency and direct the agency to instead reach a determination that considers and is consistent with the plain language of the scope before it.

**B. The Evidence on the Record Shows That CST’s T-Type Tires Should Be Included Within the Scope of the Order**

Commerce also erred in determining that “there is no evidence on the record that suggests the tire in question is of a size that fits passenger cars and light trucks, and should therefore be included within the scope of the Order.” *Scope Ruling* (P.R. 15) at 8. As Plaintiff outlined in its request to Commerce to reconsider its erroneous scope ruling – Plaintiff’s only opportunity to address Commerce’s

contention that there was "no evidence on the record," due to Commerce's refusal to issue a preliminary determination in the proceeding setting out that view – the record does, in fact, indicate that CST's T-Type tires fit passenger cars or light trucks.

First, Cheng Shin stated in its initial request for the scope ruling that the T-Type tires in question are imported under U.S. Harmonized Tariff Schedule ("HTS") 4011.10.1060, "New pneumatic tires, of rubber: *Of a kind used on motor cars* (including station wagons and racing cars) ..." *Cheng Shin Request for Scope Ruling* (P.R. 1) at 3, Attachments 2 (HTS Schedule) and 7 (Public Summary of Physical Characteristics) (emphasis added). While, as Commerce notes, the "HTSUS subheadings are provided {in the scope} for convenience and for customs purposes, {and} the written description of the subject merchandise is dispositive," it is indicative that HTS 4011.10.1060 is specifically listed as one of the HTS codes for "products covered by this *Order*." *Scope Ruling* (P.R. 15) at 6.

Second, Cheng Shin provided documentation of a sample import transaction "that included the relevant T-Type model" as an attachment to its scope request. *Cheng Shin Request for Scope Ruling* (P.R. 1, C.R. 1) at 6. This attachment contains [                                                                ]. *Id*., Attachment 9. As such, contrary to Commerce's claim that no evidence on the record suggests that these tires are of a size that fits passenger cars and light trucks, in fact, the record shows that these tires [                                    ] passenger cars.

But Commerce failed to address any of this evidence in its determination, declaring contrary to these facts that "no evidence" existed on the record. *Scope Ruling* (P.R. 15) at 8. But such evidence clearly did exist on the record; it was simply ignored in the agency's determination. Thus, Commerce's determination that there was no such evidence was itself unsupported by substantial evidence and arbitrary. Further, because Commerce failed to consider the evidence that was before it and that directly contradicted Commerce's determination, Commerce's scope ruling was further unsupported by substantial evidence. *See, e.g., Thai Plastic Bags Indus. Co. v. United States*, 37 C.I.T. 354, 360 (2013*), aff'd sub nom. Thai Plastic Bags Indus. Co. v. United States*, 774 F.3d 1366 (Fed. Cir. 2014) ("this decision is not supported by substantial evidence because Commerce did not address record evidence that fairly detracts from its conclusion").

This Court must also remand Commerce's scope ruling here so that Commerce can properly consider the full record before it, rather than simply ignoring the evidence that is on that record without any explanation.

## III.    Commerce Did Not Provide an Opportunity to Comment on a Preliminary Determination

As Commerce noted in its final scope ruling, Plaintiff had requested that Commerce issue a preliminary determination in this scope inquiry so that interested parties had an opportunity to comment on the scope ruling. *See Scope Ruling* (P.R. 15) at 8; *see also Petitioner's Prelim. Request* (P.R. 12). However, Commerce held that it was "unnecessary" to issue a preliminary determination in this inquiry. *Scope Ruling* (P.R. 15) at 8.

In the current version of its regulations governing its scope inquiry procedure, Commerce has set out two points during a scope inquiry at which parties will be given an opportunity to submit comments to the agency on the scope question before it, both of which hinge on Commerce's issuance of a preliminary determination. First, Commerce may issue a preliminary determination "concurrently with the initiation of a scope inquiry." 19 C.F.R. § 351.225(g). In that case, Commerce's regulations require that it establish a procedure for the submission of party comments on a case-specific basis. 19 C.F.R. § 351.225(f)(5). In this scope inquiry, Commerce did not issue a preliminary determination concurrently with the initiation of the inquiry, and so set no procedure for comments on an initiation preliminary determination. *See Initiation of Cheng Shin Scope Inquiry* (P.R. 3).

Alternatively, Commerce may issue a preliminary ruling later in the inquiry process. 19 C.F.R. § 351.225(g). If the preliminary determination is made at any point after initiation, Commerce is required to "establish a schedule for the filing of scope comments and rebuttal comments," with a default deadline of 14 days after the issuance of its preliminary determination. 19 C.F.R. § 351.225(f)(4). Unless Commerce specifies otherwise, "no new factual information will be accepted in the scope or rebuttal comments." *Id.*

Here, Commerce not only did not issue a preliminary determination concurrently with the initiation of the inquiry, it refused to do so at any point doing the inquiry. Commerce's regulations state that Commerce "may issue a preliminary

scope ruling, based upon the available information at the time," and direct Commerce in choosing when to exercise that discretion to "consider the complexity of the issues and arguments raised in the scope inquiry." 19 C.F.R. § 351.225(g).

Here, there unmistakably were complexities and arguments before Commerce. Plaintiff raised the issue of the plain language of the scope and expressly requested that Commerce issue its views on the matter in a preliminary determination, so that parties could provide comments on those views for the agency to consider before it made a final determination. *See Petitioner's Request for a Preliminary Determination* (P.R. 12). Cheng Shin replied with its arguments to the contrary. *See* Cheng Shin, *Response to Petitioner's June 17 Letter* (P.R. 13).

Regardless of actual complexity and argument before it, Commerce elected not to issue a preliminary determination and not to allow parties an opportunity to comment on Commerce's views on the coverage of the scope prior to issuing a final determination. Commerce stated that it was refusing to do so because, it claimed, its reading of the scope language was clear and no evidence on the record suggested that the T-Type tires were of a size used on passenger cars and light trucks. *Scope Ruling* (P.R. 15) at 8. As shown above, Commerce's decisions on both of these points are unsupported by substantial evidence and otherwise not in accordance with law. Thus, Commerce's reliance on these points as the reasons to not issue a preliminary determination make that decision "an unreasonable judgment in weighing relevant factors," and so an abuse of the agency's discretion. *Consol. Bearings*, 412 F.3d at 1269.

As a result of that abuse of discretion, Plaintiff did not have the opportunity to comment on Commerce's clearly erroneous understanding of the plain language of the scope and of the actual evidence on the record until after Commerce outlined its reasoning in the final scope ruling. As is contemplated in its scope inquiry regulations, Commerce can take steps to avoid making such obviously incorrect determinations, such as misreading the explicit language of the scope in any scope inquiry where the issues are complex or there is disagreement about the correct outcome, by issuing its preliminary views and allowing the parties before it to raise the issues that Commerce will need to consider in its final determination. Commerce chose not to do so here.

Commerce's regulations do provide parties opportunities to address the submissions of other parties during a scope inquiry, but none of those opportunities for comments on party submissions allow parties to address Commerce's views (indeed, it will be impossible for parties to address Commerce's views until the agency chooses to share them). Parties other than a party requesting a scope ruling can submit comments and factual information up to 30 days after initiation, but those comments are specifically "to rebut, clarify, or correct factual information *contained in the scope ruling application.*" 19 C.F.R. § 351.225(f)(2) (emphasis added). Likewise, if Commerce requires the requesting party to answer a questionnaire during the inquiry and provide more information regarding its request, other parties are given 14 days to submit rebuttal comments and factual information, but again "to rebut, clarify, or correct factual information *contained in*

20

*the questionnaire response*." 19 C.F.R. § 351.225(f)(3) (emphasis added). In neither instance do Commerce's regulations contemplate, much less require, that a party submit its views on *Commerce's* action. They are instead focused on rebuttal to the factual claims made by the requesting party.

That contrasts with Commerce's regulatory requirements for the submission of argument to the agency in investigations and reviews, where parties are expressly required to "present all arguments that continue in the submitter's view to be relevant" in case briefs *following* Commerce's preliminary determination in the proceeding. 19 C.F.R. § 351.309(c)(2); *see also* 19 C.F.R. § 351.309(c)(1) (limiting the case brief requirement to investigations and sunset, administrative, new shipper, and changed circumstances review). While parties must be given a briefing opportunity in those situations, as discussed above, Commerce's regulations do not necessarily provide such an opportunity in scope inquiries. By electing to forgo such a process in this case, Commerce denied parties an opportunity to submit all arguments regarding the determination Commerce (not the requesting party) was making.

Even lacking that full opportunity, Plaintiff *did* alert Commerce to the underlying issue of the plain language of the scope. *See Petitioner's Request for a Preliminary Determination* (P.R. 12). Only when Commerce's views were known, such as Commerce's claim that the record lacked any evidence that T-Type tires are car tires, was Plaintiff able to finally know what arguments were necessary to make to the agency regarding Commerce's erroneous views, and Plaintiff attempted to do

so. *See Petitioner's Request to Reconsider* (P.R. 18). Commerce simply ignored that attempt. Commerce cannot now claim that it was unaware of issues, such as the plain language of the scope or that parties were required to present arguments on unknown aspects of Commerce's views. *See, e.g., Consol. Bearings Co. v. United States*, 348 F.3d 997, 1004 (Fed. Cir. 2003) (parties are not required to raise arguments before the agency when there is no "administrative procedure to exhaust").

Thus, Commerce's abuse of discretion, in deciding to forgo a preliminary determination in a scope inquiry with issues that were apparently complex enough for the agency to entirely miss the plain language of the scope and where the record already showed that there was argument regarding those issues, denied parties the opportunity to fully brief the agency and present their views on all issues Commerce considered relevant. The Court should remand the determination to Commerce and instruct Commerce to allow full participation and briefing by the parties so that all relevant arguments and issues can be before the agency.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Commerce's scope ruling that the T-Type tires produced by CST and imported by Cheng Shin are not covered by the scope of *PVLT Tires from Taiwan* was not supported by substantial evidence and was further arbitrary and capricious and an abuse of discretion. Commerce interpreted the scope before it in a manner entirely inconsistent with the plain terms of that scope, failed to address evidence on the record before it, and abused its discretion in a manner that prevented parties before the agency from being able to meaningfully

participate in the proceeding. Plaintiff therefore respectfully requests that this

Court remand this action to Commerce for reconsideration consistent with the plain

language of the scope and the evidence on the record.

Respectfully submitted,

/s/ Nicholas J. Birch
Roger B. Schagrin
Nicholas J. Birch
Alessandra A. Palazzolo
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to United Steel, Paper and
Forestry, Rubber, Manufacturing,
Energy, Allied Industrial and Service
Workers International Union, AFL-
CIO, CLC*

23

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel at Schagrin Associates hereby certifies that the 56.2 Brief of Plaintiff the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, dated December 10, 2024, complies with the word-count limitation set out in 2(B)(1)(a) of this Court's Standard Chambers Procedures, limiting Rule 56.2 briefs to 14,000 words. This response brief contains 6,053 words according to the word count function of the word processing software used to prepare the brief.

/s/ Nicholas J. Birch
Roger B. Schagrin
Nicholas J. Birch
Alessandra A. Palazzolo
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

Dated: December 10, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant*,<br><br>and<br><br>CHENG SHIN RUBBER USA INC.,<br><br>*Defendant-Intervenor*. | **Court No. 24-00165** |

## <u>PROPOSED ORDER</u>

Upon consideration of the Motion for Judgment on the Agency Record filed by Plaintiff the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and upon consideration of all other papers and proceedings herein, it is hereby

**ORDERED** that the motion is **GRANTED**; and it is further

**ORDERED** that the final determination of the Department of Commerce published as *Final Scope Ruling on the Antidumping Duty Order on Passenger Vehicle and Light Truck Tires from Taiwan: Request by Cheng Shin Rubber Ind. Co.*

*Ltd.* (Dep't Commerce Aug. 5, 2024) is hereby remanded for reconsideration in accordance with this opinion.

_____
HON. JENNIFER CHOE-GROVES, JUDGE

Dated: _____, 2025
       New York, New York