## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> CHENG SHIN RUBBER U.S.A. INC., <br><br> Defendant-Intervenor. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Court No. 24-00165 |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE AGENCY RECORD

OF COUNSEL:

DANIELLE COSSEY
Attorney
Office of the Chief Counsel
for Trade Enforcement & Compliance
U.S. Department of Commerce

February 10, 2025

BRETT A. SHUMATE
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, Jr.
Assistant Director

SOSUN BAE
Sosun Bae
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC, 20044
Tel.: (202) 305-7568
Email: sosun.bae@usdoj.gov

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, ) ) ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Court No. 24-00165 |
| UNITED STATES, ) ) | |
| Defendant, ) ) | |
| and ) ) | |
| CHENG SHIN RUBBER U.S.A. INC., ) ) | |
| Defendant-Intervenor. ) ) | |

## <u>ORDER</u>

Upon consideration of plaintiff's motion for judgment on the agency record, defendant and defendant-intervenor's responses thereto, plaintiff's reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that the plaintiff's motion is DENIED, and it is further

ORDERED that the Department of Commerce's determination is sustained, and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____          _____
                                                                    JUDGE

## <u>TABLE OF CONTENTS</u>

STATEMENT PURSUANT TO RULE 56.2 ....................................................................2

    I.    Administrative Decision Under Review ..................................................2

    II.   Issues Presented For Review ..................................................................2

STATEMENT OF FACTS ........................................................................................2

    I.    Commerce Issues An Antidumping Duty Order ...................................2

    II.   Cheng Shin Requests A Scope Ruling ...................................................4

    III.  Commerce Finds That Cheng Shin's Tires Are Not Covered By The Order ...........6

SUMMARY OF THE ARGUMENT ..........................................................................7

ARGUMENT ..........................................................................................................8

    I.    Standard Of Review ................................................................................8

    II.   Legal Framework For Scope Rulings .....................................................9

    III.  Commerce Acted Reasonably, And Within Its Discretion, In Not Issuing A Preliminary Scope Ruling .....................................................12

    IV.  Commerce's Determination That T-type Tires Are Not Covered By The Order Is Supported By Substantial Evidence And Otherwise In Accordance With Law ......15

         A.  USW Failed To Exhaust Its Administrative Remedies ....................................15

         B.  Commerce's Findings Are Supported By The Scope Language And Record ..17

CONCLUSION ........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages(s)**

*Altx, Inc. v. United States*,
   370 F.3d 1108 (Fed. Cir. 2004) ................................................................. 9

*Atl. Sugar, Ltd. v. United States*,
   744 F.2d 1556 (Fed. Cir. 1984) ................................................................. 9

*Boomerang Tube LLC v. United States*,
   856 F.3d 908 (Fed. Cir. 2017) ................................................................. 16

*Coalition of Am. Flange Producers v. United States*,
   448 F. Supp. 3d 1340 (Ct. Int'l Trade 2020) ........................................... 20

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) ................................................................................... 9

*Corus Staal BV v. U.S.*,
   502 F.3d 1370 (Fed. Cir. 2007) ............................................................... 16

*Duferco Steel, Inc. v. United States*,
   296 F.3d 1087 (Fed. Cir. 2002) ............................................................... 11

*Ericsson GE Mobile Commc'ns, Inc. v. United States*,
   60 F.3d 778 (Fed. Cir. 1995) ................................................................... 11

*Fedmet Res. Corp. v. United States*,
   755 F.3d 912 (Fed. Cir. 2014) ................................................................. 11

*Fujitsu Gen. Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) ................................................................... 8

*Gerber Food (Yunnan) Co. v. United States*,
   601 F. Supp. 2d 1370 (Ct. Int'l Trade 2009) ........................................... 16

*Glob. Commodity Grp. LLC v. United States*,
   709 F.3d 1134 (Fed. Cir. 2013) .......................................................... 11, 17

*Hitachi Metals, Ltd. v. United States*,
   949 F.3d 710 (Fed. Cir. 2020) ................................................................... 9

*Jiangsu Jiasheng Photovoltaic Tech. Co., Ltd. v. United States*,
   28 F. Supp. 3d 1317 (Ct. Int'l Trade 2014) ............................................. 12

*King Supply Co., LLC v. United States*,
    674 F.3d 1343 (Fed. Cir. 2012) ................................................................ 11, 17

*Mid Continent Nail Corp. v. United States*,
    725 F.3d 1295 (Fed. Cir. 2013) ...................................................................... 11

*Meridian Prod., LLC v. United States*,
    851 F.3d 1375 (Fed. Cir. 2017) ................................................................... 9, 11

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ........................................................................ 9

*Novosteel SA v. United States*,
    284 F.3d 1261 (Fed. Cir. 2002) ...................................................................... 18

*OMG, Inc. v. United States*,
    972 F.3d 1358 (Fed. Cir. 2020) ...................................................................... 18

*PAM, S.p.A. v. United States*,
    582 F.3d 1336 (Fed. Cir. 2009) ........................................................................ 9

*PSC VSMPO-Avisma Corp. v. United States*,
    688 F.3d 751 (Fed. Cir. 2012) ........................................................................ 12

*Sandvik Steel Co. v. United States*,
    164 F.3d 596 (Fed. Cir. 1998) ................................................................... 11, 16

*Sango Int'l, L.P. v. United States*,
    484 F.3d 1371 (Fed. Cir. 2007) ...................................................................... 10

*SeAH Steel Corp. v. United States*,
    659 F. Supp. 3d 1318 (Ct. Int'l Trade 2023) .................................................. 12

*Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*,
    776 F.3d 1351 (Fed. Cir. 2015) ...................................................................... 10

*Smith Corona Corp. v. United States*,
    915 F.2d 683 (Fed. Cir. 1990) ........................................................................ 18

*Stanley Works (Langfang) Fastening Sys. Co., Ltd. v. United States*,
    279 F. Supp. 3d 1172 (Ct. Int'l Trade 2017) .................................................. 16

*Tak Fat Trading Co. v. United States*,
    396 F.3d 1378 (Fed. Cir. 2005) ...................................................................... 10

*United States v. Eurodif S.A.*,
   555 U.S. 305 (2009) ............................................................................................ 9

*United Steel & Fasteners, Inc. v. United States*,
   947 F.3d 794 (Fed. Cir. 2020) ......................................................................... 11

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) .......................................................................................... 12


**Statutes**

19 U.S.C. § 1516a(b) .................................................................................... 8, 18


**Rules**

RCFC 56.2 ............................................................................................................. 1


**Regulations**

19 C.F.R. § 351.225 (1997) ............................................................................... 10

19 C.F.R. § 351.225(a) ......................................................................................... 9

19 C.F.R. § 351.225(e) ....................................................................................... 10

19 C.F.R. § 351.225(f) ............................................................................. 5, 14, 17

19 C.F.R. § 351.225(g) .................................................................................. *passim*

19 C.F.R. § 351.225(k) (2022) ......................................................................... 10

19 C.F.R. § 351.225(k) ....................................................................................... 11


**Administrative Determinations**

*Final Scope Ruling on the Antidumping Duty Order on Passenger Vehicle and Light Truck Tires
   from Taiwan*
   (Dep't of Commerce Aug. 5, 2024) .................................................................... 2

*Notice of Scope Ruling Applications Filed in Antidumping and Countervailing Duty
   Proceedings*,
   89 Fed. Reg. 35,796 (Dep't of Commerce May 2, 2024) .................................... 5

*Notice of Scope Rulings*,
  82 Fed. Reg. 26,454 (Dep't of Commerce June 7, 2017) ........................................................ 7

*Passenger Vehicles and Light Truck Tires from the Republic of Korea, Taiwan, and Thailand*,
  86 Fed. Reg. 38,011 (Dep't of Commerce July 19, 2021) ..................................................... 2, 4

*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*,
  86 Fed. Reg. 52,300 (Dep't of Commerce Sept. 20, 2021) ..................................................... 10

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> CHENG SHIN RUBBER U.S.A. INC., <br><br> Defendant-Intervenor. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Court No. 24-00165 <br><br> ████████████████ |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response in opposition to the motion for judgment on the agency record filed by plaintiff, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (USW), challenging the Department of Commerce's final scope ruling on passenger vehicle and light truck (PVLT) tires from Taiwan. Commerce's determination that certain temporary-use (T-type) spare tires produced in Taiwan by Cheng Shin Rubber Ind. Co.[1] (Cheng Shin) are not within the scope of the antidumping duty order is supported by substantial evidence and otherwise in accordance

---

[1] The producer is Cheng Shin Rubber Ind. Co. The importer, and defendant-intervenor, is Cheng Shin Rubber USA Inc. We refer to these entities collectively as Cheng Shin.

with law.  Accordingly, the Court should deny USW's motion and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

I.    Administrative Decision Under Review

USW challenges Commerce's August 5, 2024 final scope ruling on certain T-type tires produced in Taiwan by Cheng Shin.  *See Final Scope Ruling on the Antidumping Duty Order on Passenger Vehicle and Light Truck Tires from Taiwan* (Dep't of Commerce Aug. 5, 2024) (P.R. 15, C.R. 4) (Final Scope Ruling).[2]

II.    Issues Presented For Review

1.    Whether Commerce acted lawfully, and within its discretion, in deciding not to issue a preliminary scope ruling.

2.    Whether USW failed to exhaust administrative remedies regarding the merits of the final scope ruling.

3.    Whether Commerce's determination that T-type tires are not covered by the plain language of the order is supported by substantial evidence and otherwise in accordance with law.

## STATEMENT OF FACTS

I.    Commerce Issues An Antidumping Duty Order

On July 19, 2021, Commerce issued an antidumping duty order covering PVLT tires from the Republic of Korea, Taiwan, and Thailand.  *See Passenger Vehicle and Light Truck Tires from the Republic of Korea, Taiwan, and Thailand*, 86 Fed. Reg. 38,011 (Dep't of Commerce July 19, 2021) (order).  Commerce defined the scope of the order as follows:

> The scope of these orders is passenger vehicle and light truck tires.
> Passenger vehicle and light truck tires are new pneumatic tires, of

---

[2]  Citations to the public record (P.R.) and confidential record (C.R.) refer to the administrative record of the underlying proceeding.

rubber, with a passenger vehicle or light truck size designation.
Tires covered by these orders may be tube-type, tubeless, radial, or
non-radial, and they may be intended for sale to original equipment
manufacturers or the replacement market.

Subject tires have, at the time of importation, the symbol "DOT" on
the sidewall, certifying that the tire conforms to applicable motor
vehicle safety standards. Subject tires may also have the following
prefixes or suffix in their tire size designation, which also appears
on the sidewall of the tire:

Prefix designations:
    P – Identifies a tire intended primarily for service on passenger
cars.
    LT – Identifies a tire intended primarily for service on light
trucks.

Suffix letter designations:
    LT – Identifies light truck tires for service on trucks, buses,
    trailers, and multipurpose passenger vehicles used in nominal
    highway service.

All tires with a "P" or "LT" prefix, and all tires with an "LT" suffix
in their sidewall markings are covered by these orders regardless of
their intended use.

In addition, all tires that lack a "P" or "LT" prefix or suffix in their
sidewall markings, as well as all tires that include any other prefix
or suffix in their sidewall markings, are included in the scope,
regardless of their intended use, as long as the tire is of a size that
fits passenger cars or light trucks. Sizes that fit passenger cars and
light trucks include, but are not limited to, the numerical size
designations listed in the passenger car section or light truck section
of the Tire and Rim Association Year Book, as updated annually.
The scope includes all tires that are of a size that fits passenger cars
or light trucks, unless the tire falls within one of the specific
exclusions set out below.

*Id.* at 38,012. In relevant part, the order excluded from its scope:

(4) tires designed and marketed exclusively as temporary use spare
tires for passenger vehicles which, in addition, exhibit each of the
following physical characteristics:

    (a) the size designation and load index combination molded
    on the tire's sidewall are listed in Table PCT–1R ("T" Type

3

Spare Tires for Temporary Use on Passenger Vehicles) or PCT-1B ("T" Type Diagonal (Bias) Spare Tires for Temporary Use on Passenger Vehicles) of the Tire and Rim Association Year Book,

(b) the designation "T" is molded into the tire's sidewall as part of the size designation, and,

(c) the tire's speed rating is molded on the sidewall, indicating the rated speed in MPH or a letter rating as listed by Tire and Rim Association Year Book, and the rated speed is 81MPH or a "M" rating;

(5) tires designed and marketed exclusively as temporary use spare tires for light trucks which, in addition, exhibit each of the following physical characteristics:

(a) the tires have a 265/70R17, 255/80R17, 265/70R16, 245/70R17, 245/75R17, 245/70R18, or 265/70R18 size designation;

(b) "Temporary Use Only" or "Spare" is molded into the tire's sidewall;

(c) the tread depth of the tire is no greater than 6.2 mm; and

(d) Uniform Tire Quality Grade Standards ("UTQG") ratings are not molded into the tire's sidewall with the exception of 265/70R17 and 255/80R17 which may have UTQG molded on the tire sidewall{.}

*Id*. at 38,013.

## II.    Cheng Shin Requests A Scope Ruling

On March 11, 2024, Cheng Shin submitted a scope ruling request to Commerce.  *See* Scope Ruling Request at 1 (P.R. 1, C.R. 1).  Specifically, Cheng Shin requested that Commerce find its tires to be outside the scope of the order.  *Id.*  The request described the inquiry merchandise as a tire that "is used exclusively as a temporary spare tire by {Cheng Chin's} U.S. customer" and a "'mini' spare tire that does not meet the size or regulatory requirements for regular-service on passenger cars or light trucks."  *Id*. at 4.  The tire designation that is molded onto the sidewall is T155/60R18.  *Id.* at 3-4.  The tires are classified under part code TP10657100, and imported under HTSUS subheading 4011.10.1060.  *Id.* at 3.  The numerical size designation of the tire is 155/60R18 which, along with a "T" prefix, is molded onto the

sidewall of the tire.  *Id*. at 7.  Cheng Shin argued that, because the prefix of the tire designation is

a "T" rather than a "P" or "LT," the 155/60R18 size does not fit passenger vehicles for regular

use, and the tire is not listed in relevant sections of the Tire and Rim Association Year Books,

Commerce should confirm the T-type tire is outside the scope of the order.  *Id*. at 6-8.

Cheng Shin submitted multiple records to support its request, including photographs and

schematic drawings, documents showing the physical characteristics of the T-type Tire, the 2022

and 2023 Tire and Rim Association Handbook Classification for Passenger Cars and Light

Trucks (TRA Year Book), and an invoice.  *See generally id.*; *see also* Scope Ruling Request Pt

II-III (P.R. 2, C.R. 2-3).  Pursuant to a supplemental request, Cheng Shin also provided the TRA

Year Book for 2024.  *See* Supplemental Questionnaire (P.R. 4); Supplemental Response (P.R. 9-

11).

On April 11, 2024, Commerce initiated a scope inquiry.[3]  *See* Scope Inquiry Initiation

(P.R. 3).  In the initiation notice, Commerce stated that, pursuant to 19 C.F.R. § 351.225(f)(2),

"an interested party other than the applicant is permitted one opportunity to submit comments

and factual information to rebut, clarify, or correct factual information contained in the scope

ruling applications within thirty days of the initiation of this scope inquiry{.}"  *Id.* at 2.

Commerce identified the deadline for such comments as May 13, 2024.  *Id.*  Commerce

published its monthly notice of scope ruling requests on May 2, 2024.  *See Notice of Scope*

*Ruling Applications Filed in Antidumping and Countervailing Duty Proceedings*, 89 Fed. Reg.

35,796 (Dep't of Commerce May 2, 2024).

---

[3] As pointed out by USW, the initiation erroneously identified the segment as "LTST 2024" in the heading rather than "T-type Tires."  USW Br. at 5.  The correct scope merchandise was identified in the body of the text, and USW did not argue in its brief that this error interfered with its notice of the scope inquiry or its ability to participate.

USW's counsel filed an entry of appearance on May 6, 2024, one week before the deadline for comments. *See* Entry of Appearance (P.R. 6). However, USW did not file any actual comments or factual information. Instead, over a month after the deadline for comments, USW submitted a letter requesting that Commerce issue a preliminary determination in the scope inquiry in order to "allow interested parties to see Commerce's preliminary interpretation" and "allow{} parties to submit comments on it." USW Request for Preliminary Determination (P.R. 12). Cheng Shin responded to USW's request, pointing out that the regulations do not require a preliminary determination, that the evidence on the record demonstrated that its tires were not covered by the scope of the order, and that Cheng Shin would be required to continue paying cash deposits during any undue delay. *See* Cheng Shin Response to Request for Preliminary Determination (P.R. 13).

III.    <u>Commerce Finds That Cheng Shin's Tires Are Not Covered By The Order</u>

Commerce issued its final scope ruling on August 6, 2024. *See* Final Scope Ruling (P.R. 15, C.R. 4). Commerce explained that the language of the order, the record evidence, and prior scope determinations were dispositive in determining that Cheng Shin's T-type tires are not covered by the order. *Id*. at 7. Commerce observed that tires with a prefix or suffix other than "P" or "LT" on their sidewall markings are only covered by the scope of the order if they are of the size that fits passenger cars or light trucks, and that Cheng Shin's tires are not listed in the TRA Year Book as a size of tire fitting passenger cars or light trucks. *Id*. at 7-8. Commerce also noted that "there is no evidence on the record that suggests the tire in question is of a size that fits passenger cars and light trucks." *Id*. at 8.

Commerce then addressed USW's request for a preliminary determination, explaining that a preliminary scope ruling was unnecessary, as no record evidence suggests that Cheng

Shin's T-type tires fall within the scope of the order, meaning no reasonable basis existed for Commerce to believe or suspect that the tires were covered by the order. *Id.* Commerce also stated that it had previously interpreted similar scope language in an earlier scope proceeding concerning the antidumping duty order covering passenger tires from China. *Id.* (citing *Notice of Scope Rulings*, 82 Fed. Reg. 26,454 (Dep't of Commerce June 7, 2017) (China Tires Scope Ruling).

Subsequent to the scope ruling, USW submitted a request for reconsideration of the scope ruling and the decision not to issue a preliminary determination. *See* USW Request for Reconsideration (P.R. 19, C.R. 5). Cheng Shin responded to USW's request, arguing that USW's request constituted "an attempt to circumvent the deadlines established by the Department's regulations" and noting that USW had ample opportunity to comment prior to the final scope ruling. Cheng Shin Response to Request for Reconsideration (P.R. 20). Commerce did not reconsider, and issued liquidation instructions. *See* Liquidation Instructions (P.R. 21).

## SUMMARY OF THE ARGUMENT

Commerce's finding that T-type tires are not covered by the scope of the order is supported by substantial evidence and otherwise in accordance with law. USW's arguments to the contrary are unavailing.

First, Commerce acted reasonably, and within its discretion, in determining that a preliminary scope ruling was not required. Pursuant to 19 C.F.R. § 351.225(g), Commerce is not required to issue a preliminary scope ruling, though it may do so if there is a reasonable basis to believe or suspect that the product at issue is covered by the order. Commerce considered "the complexity of the issues and the arguments raised," 19 C.F.R. § 351.225(g), and determined that no record evidence suggested that T-Type tires were covered by the order. Commerce also

explained that it had already interpreted similar language under another order.  And, while USW had the opportunity to submit comments rebutting Cheng Shin's request, it chose not to do so.

Second, because USW failed to submit comments in response to Cheng Shin's scope request even though it had the opportunity to do so, USW has failed to exhaust its administrative remedies with respect to its argument that the record does not support the final scope ruling, and the Court should not consider the argument.

Third, even if the Court considers the merits of USW's argument notwithstanding USW's failure to exhaust its administrative remedies, Commerce's finding that T-type tires are not covered by the order is supported by substantial evidence and in accordance with law.  The description of T-type tires as "temporary" and "mini" spare tires not fit for regular use in passenger vehicles and light trucks is undisputed.  Record evidence also demonstrates that T-type tires are not listed in the TRA Year Book as being of a size that fits passenger cars and light trucks.  And, while Commerce did rely on this evidence, it did not do so exclusively; rather, it considered the record evidence and found that no evidence suggested that the tires were covered by the order.  Finding no such evidence, Commerce reasonably concluded that T-type tires are not covered by the language of the orders.

## **ARGUMENT**

I.    Standard Of Review

In reviewing Commerce's antidumping and countervailing duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).  "The specific factual findings on which {Commerce} relies in applying its interpretation are conclusive unless unsupported by

substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). Substantial

evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336,

1339 (Fed. Cir. 2009). Even if the Court may draw two inconsistent conclusions from the record

evidence, that possibility "does not prevent an administrative agency's finding from being

supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Under this standard, a reviewing court "must affirm {Commerce's} determination if it is

reasonable and supported by the record as a whole, even if some evidence detracts from

{Commerce's} conclusion." *Hitachi Metals, Ltd. v. United States*, 949 F.3d 710, 716 (Fed. Cir.

2020) (quoting *Altx, Inc. v. United States*, 370 F.3d 1108, 1121 (Fed. Cir. 2004)) (internal

quotation marks omitted).

A party challenging Commerce's determination under the substantial evidence standard

"has chosen a course with a high barrier to reversal," *Nippon Steel Corp. v. United States*, 458

F.3d 1345, 1352 (Fed. Cir. 2006) (citation and international quotation marks omitted), and the

Court will sustain Commerce's factual determinations as long as they are reasonable and

supported by the record as a whole, even if some evidence detracts from them. *See Atl. Sugar,

Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

II.    Legal Framework For Scope Rulings

After the issuance of an antidumping or countervailing duty order, questions may arise

concerning the scope of the order. "Such issues can arise because the descriptions of subject

merchandise contained in" the orders "must be written in general terms." 19 C.F.R. § 351.225(a)

(1997); s*ee also Meridian Prod., LLC v. United States*, 851 F.3d 1375, 1379 (Fed. Cir. 2017).

When Commerce confronts such a question, it follows the analytical framework and procedures

set forth in its regulations.  19 C.F.R. § 351.225 (1997); *see also Shenyang Yuanda Aluminum Indus. Eng'g Co. v. United States*, 776 F.3d 1351, 1354 (Fed. Cir. 2015).

   In 2021, Commerce amended its regulation for answering scope questions.  *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,322-23 (Dep't of Commerce Sept. 20, 2021); 19 C.F.R. § 351.225(k) (2022).  Pursuant to the amended regulation, to determine if a product is covered by an order, Commerce "may make its determination" on the basis of the language of the scope alone.  19 C.F.R. § 351.225(k)(1) (2022) (emphasis added).  However, in making this determination, Commerce has discretion to consider the (k)(1) sources, including the primary interpretive sources under (k)(1)(i), such as the petition and initial investigation pertaining to the order at issue, previous determinations by Commerce (including prior scope rulings), and International Trade Commission (ITC) reports.  *See id*.  Commerce may also consider the secondary interpretive sources under (k)(1)(ii), such as "any other determinations of {Commerce} or the {ITC} not identified above, Customs rulings or determinations, industry usage, dictionaries, and any other relevant record evidence."  *See* 19 C.F.R. § 351.225(k)(1)(ii) (2022).  To the extent such secondary sources conflict with the primary sources, however, the primary sources "will normally govern."  *Id*.

   If Commerce determines that the (k)(1) sources—including the language of the order—are dispositive, it will issue a final scope ruling.  *See* 19 C.F.R. § 351.225(e); s*ee also Tak Fat Trading Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005).  The (k)(1) sources are "dispositive" when they "definitively answer the scope question."  *Sango Int'l, L.P. v. United States*, 484 F.3d 1371, 1379 (Fed. Cir. 2007).  This Court reviews "Commerce's analysis of the (k)(1) sources against the product in question" as an issue of fact under the substantial evidence

standard. *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 799 (Fed. Cir. 2020); *see also Meridian Prod.*, 851 F.3d at 1382 (citing *Fedmet Res. Corp. v. United States*, 755 F.3d 912, 919-22 (Fed. Cir. 2014)).   Only when the (k)(1) sources are not dispositive will Commerce consider the five criteria set forth in § 351.225(k)(2). *See* 19 C.F.R. § 351.225(k)(2); *Fedmet Res. Corp.*, 755 F.3d at 918.

In reviewing Commerce's scope rulings, the Court grants "'significant deference to Commerce's interpretation of a scope order,' so long as Commerce's interpretation is not 'contrary to the order's terms,' and does not 'change the scope of the order.'" *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300 (Fed. Cir. 2013) (quoting *Glob. Commodity Grp. LLC v. United States*, 709 F.3d 1134, 1138 (Fed. Cir. 2013)).   This is because scope rulings involve a "'highly fact-intensive and case-specific determination.'" *Fedmet Resources Corp. v. United States*, 755 F.3d 912, 918, 923 (Fed. Cir. 2014) (quoting *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012)).   Importantly, scope rulings are "particularly within the expertise of {Commerce}." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998).

In addition, Commerce "enjoys substantial freedom to interpret and clarify its antidumping duty orders." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1094-96 (Fed. Cir. 2002) (quoting *Ericsson GE Mobile Commc'ns, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995)).   As such, the Court grants Commerce substantial deference in interpreting its own orders, provided the orders "contain language that specifically includes the subject merchandise or may be reasonably interpreted to include it." *See Duferco Steel*, 296 F.3d at 1089, 1094-95.

III.    Commerce Acted Reasonably, And Within Its Discretion, In Not Issuing A Preliminary
        Scope Ruling

Whether or not to issue a preliminary scope ruling is a matter squarely within

Commerce's discretion, and Commerce did not abuse that discretion by declining to issue a

preliminary determination and instead issuing a final scope ruling. USW cannot demonstrate

otherwise.

It is axiomatic that "Commerce has broad discretion to fashion its own rules of

administrative procedure{.}" *SeAH Steel Corp. v. United States*, 659 F. Supp. 3d 1318, 1324

(Ct. Int'l Trade 2023); *see also PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760

(Fed. Cir. 2012) (quoting *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,

435 U.S. 519, 543-44 (1978)) ("Absent constitutional constraints or extremely compelling

circumstances the administrative agencies should be free to fashion their own rules of procedure

and to pursue methods of inquiry capable of permitting them to discharge their multitudinous

duties.") (internal brackets omitted). Accordingly, the Court reviews Commerce's procedural

actions only for abuse of discretion. *Jiangsu Jiasheng Photovoltaic Tech. Co., Ltd. v. United

States*, 28 F. Supp. 3d 1317, 1323 (Ct. Int'l Trade 2014).

Here, the regulation allows, but does not require, Commerce to issue a preliminary scope

ruling. *See* 19 C.F.R. § 351.225(g) (Commerce "*may* issue a preliminary scope ruling, based

upon the available information at the time, as to whether there is a reasonable basis to believe or

suspect that the product subject to a scope inquiry is covered by the scope of the order.")

(emphasis added). And, in considering whether to issue a preliminary scope ruling, Commerce

"*may* consider the complexity of the issues and arguments raised in the scope inquiry." *Id*.

(emphasis added). Given the leniency of the regulatory language, Commerce has full discretion

as to whether to issue a preliminary scope ruling. Commerce considered the complexity of the

issues and the arguments raised, but, because it found that the record evidence did not suggest that Cheng Shin's tires were covered by the order, it determined that a preliminary ruling was not necessary. Nothing about Commerce's decision can be reasonably read as an abuse of discretion.

USW contends that Commerce abused its discretion because there were "unmistakably" complex issues and USW raised issues regarding scope language in its request for a preliminary determination. This argument fails for multiple reasons. First, Commerce was not required to issue a preliminary scope ruling *even if* the issues and arguments were complex. The regulation only states that Commerce "*may* consider the complexity of the issues and arguments raised in the scope inquiry" in deciding whether to issue a preliminary scope ruling. 19 C.F.R. § 351.225(g). Second, USW did not claim in its request that the issues and arguments were complex. Rather, its two-page request merely pointed out that Commerce had not previously interpreted the particular language of the order pertaining to Cheng Shin's request, and claimed that allowing parties to comment would assist Commerce in considering the issues and reaching a "correct" final determination. USW Request for Preliminary Determination. Third, Commerce *did* consider the issues raised by the scope inquiry and USW's request, explaining that it had previously interpreted similar language in a scope inquiry concerning the antidumping order covering passenger tires from China. *See* Final Scope Ruling at 8. Commerce also explained that no record evidence suggested that Cheng Shin's T-Type tires were covered by the scope language; accordingly, there was no reasonable basis to believe or suspect that the product subject to the inquiry was covered by the order. *See* 19 C.F.R. § 351.225(g). Because Commerce found the scope language and record evidence dispositive, it reasonably determined no preliminary ruling was necessary.

In addition, USW—despite the opportunity to do so—decided not to submit any comments or factual information responding to Cheng Shin's scope ruling request, even though Commerce had clearly stated that parties could do so. *See* Scope Inquiry Initiation. Accordingly, and as alluded to above, USW did not raise any complexities or arguments for Commerce to consider. Therefore, "based upon the available information at the time," 19 C.F.R. § 351.225(g), Commerce did not find a reasonable basis to believe or suspect that Cheng Shin's tires were covered by the order, and did not deem a preliminary scope ruling necessary. Commerce did not abuse its discretion in declining to issue a preliminary scope ruling.

USW claims that it did not have the opportunity to comment on the scope language and the record evidence until after the final scope ruling, and that an opportunity to comment on Cheng Shin's request is not commensurate to an opportunity to comment on Commerce's views. USW Br. at 20. But USW contradicts itself, also claiming that it pointed out "the flawed argument made in the scope ruling request by importer {Cheng Shin.}" *Id*. at 3. Moreover, USW *did* have the opportunity to comment. The regulation provides interested parties 30 days from the initiation of a scope inquiry "to submit comments and factual information to rebut, clarify, or correct factual information contained in the scope ruling application." 19 C.F.R. § 351.225(f)(2). Commerce stated as much in its initiation notice, and gave parties until May 13, 2024 to submit comments and factual information. Scope Inquiry Initiation at 2. And, while USW entered an appearance in the proceeding prior to the deadline, it did not submit any comments or factual information, instead waiting over a month from the deadline to request a preliminary determination, citing a desire to comment. USW Request for Preliminary Determination at 2. Nor did USW claim that it was unable to comment or submit factual

information prior to the deadline, or request an extension.  USW cannot now reasonably complain that it did not have an opportunity to submit comments.

According to USW, having an opportunity to submit comments and factual information in response to a scope ruling request is not the same as having the opportunity to submit comments in response to a preliminary determination.  USW Br. at 20-21.  This argument makes little sense; in either situation, USW could have submitted comments and factual information to support its position.  Moreover, USW was—or should have been—aware of Cheng Shin's request that Commerce find its tires outside the scope of the order;[4] as such, if USW wanted Commerce to find the tires covered by the order, it should have timely submitted comments and factual information rebutting Cheng Shin's request.[5]  Indeed, if it had done so, Commerce may have determined that a preliminary determination was necessary.  USW had a full opportunity to submit comments and factual information to rebut Cheng Shin's position that its tires were outside the scope of the order, but failed to avail itself.  USW's inaction does not render Commerce's decision an abuse of discretion.

IV.  Commerce's Determination That T-type Tires Are Not Covered By The Order Is Supported By Substantial Evidence And Otherwise In Accordance With Law

   A.  USW Failed To Exhaust Its Administrative Remedies

 Despite being provided an opportunity to do so, USW did not submit comments or factual information rebutting Cheng Sin's argument that T-type tires are not covered by the

---

[4]  Indeed, USW would have been aware not only of Cheng Shin's request, but also of the questionnaire response and factual information Cheng Shin submitted, as those documents were submitted prior to the deadline for interested parties to comment.  *See* Supplemental Response (P.R. 10-11).

[5]  Because the regulation makes clear that Commerce is not required to issue a preliminary determination, USW should have been aware that this may constitute the only opportunity for it to submit comment and new factual information.

order.  Instead, now USW claims for the first time that T-type tires are imported under a HTSUS

subheading describing tires "of a kind used on motor cars" and that the tires are ███████████

█████████████████████, and argues that these facts contradict Commerce's conclusion that

the tires are not covered by the order.  *See* USW at 16-17.  Because USW did not make

substantive comments below (despite the opportunity to do so), it has failed to exhaust its

administrative remedies with respect to these arguments.  *See Boomerang Tube LLC v. United

States*, 856 F.3d 908, 912-13 (Fed. Cir. 2017).

      Exhaustion serves two main purposes:  to protect administrative agency authority and to

promote judicial efficiency.  *See Stanley Works (Langfang) Fastening Sys. Co., Ltd. v. United

States*, 279 F. Supp. 3d 1172, 1189 (Ct. Int'l Trade 2017) (quoting *Sandvik Steel Co. v. United

States*, 164 F.3d 596, 600 (Fed. Cir. 1998)).  There are limited exceptions to this requirement,

none of which are present here.  Under the first of these, a pure question of law may excuse a

failure to exhaust if the party raises "a new argument that is of a purely legal nature" that does

not "require further agency involvement, additional fact finding, or opening up of the record"

and does not "create undue delay nor cause expenditure of scarce party time and resources."

*Gerber Food (Yunnan) Co. v. United States*, 601 F. Supp. 2d 1370, 1380 (Ct. Int'l Trade 2009).

Failure to exhaust may also be excused by a lack of access to the confidential record or by an

intervening judicial decision, "which if applied might have materially altered the result."  *Id*.

(internal citations omitted).  Finally, parties need not exhaust their administrative remedies if

doing so would have been futile, although the exception is a narrow one and "{t}he mere fact

that an adverse decision may have been likely does not excuse a party from a statutory or

regulatory requirement that it exhaust administrative remedies."  *Corus Staal BV v. U.S.*, 502

F.3d 1370, 1379 (Fed. Cir. 2007).

None of these exceptions apply here. The question of whether particular merchandise is within the language of a specific order is inherently a factual inquiry, and not a pure question of law. *See Glob. Commodity Grp. LLC*, 709 F.3d at 1138 (quoting *King Supply Co. v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012) ("Consequently, a scope ruling is a highly fact-intensive and case-specific determination")). Nor does USW allege intervening legal authority nor lack of access to the confidential record. Finally, USW cannot reasonably claim that raising these arguments in its comments would have been futile, given that Commerce explicitly solicited comments. *See* 19 CFR § 351.225(f)(2); Scope Inquiry Initiation.

B.     Commerce's Findings Are Supported By The Scope Language And Record

Even if this Court were to consider USW's substantive arguments, it should reject them, as Commerce reasonably determined that Cheng Shin's T-type Tires are not covered by the scope language. The order covers "all tires with a 'P' or 'LT' prefix." Final Scope Ruling at 2-3. The T-type tires in this inquiry have a "T" prefix. *See* Scope Ruling Request at 2. Next, the scope language states that the order includes tires with "any other prefix or suffix on their sidewall markings . . . regardless of their intended use, as long as the tire is of a size that fits passenger cars or light trucks." Final Scope Ruling at 3. The order further provides that "{s}izes that fit passenger cars and light trucks include, but are not limited to, the numerical size designations listed in the passenger car section or light truck section of the Tire and Rim Association Yearbook, as updated annually." *Id*. Cheng Shin's T-type tires are not listed in the pertinent sections of the TRA Year Book.

Commerce also looked at the underlying record, in which Cheng Shin described its tire as "a mini spare tire that does not meet the size or regulatory requirements for regular service on passenger cars or light trucks." Scope Inquiry Request at 4. On examining the record,

Commerce found that no record evidence suggested that the tires are of a size that fit passenger cars and light trucks. Final Scope Ruling at 8. Because no other party submitted comments or factual information (despite the opportunity to do so), the evidence submitted by Cheng Shin was the only evidence on the record. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). Accordingly, Commerce reasonably determined, based on the record evidence and the language of the order, that the tires were not of a size that fits passenger cars or light trucks and are thus are not covered by the language of the order.

USW's argument that the HTSUS subheading for the tires supports a finding that the product is in-scope fails, given that, as USW acknowledges, the order states that HTSUS subheadings are "provided for convenience and for customs purposes" and "the written description of the subject merchandise is dispositive." Final Scope Ruling at 6. Indeed, the Federal Circuit has rejected reliance on HTSUS subheadings. *See Novosteel SA v. United States*, 284 F.3d 1261, 1270 (Fed. Cir. 2002) ("Our precedent has likewise indicated, meanwhile, that a reference to an HTSUS number 'is not dispositive' about the scope of an antidumping or countervailing duty order) (citing *Smith Corona Corp. v. United States*, 915 F.2d 683, 687 (Fed. Cir. 1990); *see also OMG, Inc. v. United States*, 972 F.3d 1358, 1365 (Fed. Cir. 2020). Here, the scope language, in conjunction with the record evidence, establishes that T-type tires are not covered by the order, and the HTSUS subheading fails to demonstrate otherwise.

USW contends that the description of the tires as ████████████████████████ undermines Commerce's finding that Cheng Shen's tires are not of a size which fit passenger cars. USW Br. at 16 (citing Scope Ruling Request at Att. 9 (C.R. 1)). But Cheng Shin never claimed that its tires are not sold for *any* car use; rather, it explained that the tires are used as "temporary" and "mini" spare tires that do not meet the requirements for "regular service" on

passenger cars and light truck tires.  Scope Ruling Request at 4.  The description of the tires as ████████████████████ does not contradict Cheng Shin's description that the tires are mini-sized and only for temporary use as a spare.  The evidence does not undermine Commerce's conclusion, particularly when weighed against the evidence supporting the determination.

Finally, USW claims that Commerce *only* relied on the TRA Year Book when making its scope determination, thereby acting contrarily to the plain language of the order, which states that "{s}izes that fit passenger cars and light trucks, include, but are not limited to, the numerical size designations listed in . . . the {TRA} Year Book."  USW Br. at 10.  In its argument, USW bases this claim on Commerce's statement that "the scope… is dependent upon the passenger car and light truck sections of the TRA Year Book."  However, when read in context, this statement actually discusses a limitation on Commerce's scope ruling, rather than a limitation of the scope language.  The paragraph, in its entirety, states:

> However, Commerce notes that the scope, as specified above, is dependent upon the passenger car and light truck sections of the TRA Year Book, which is updated annually.  As such, the tires in this request would not qualify for this exclusion if the TRA Year Book is updated in the future to include the tire sizes that are subject to this scope ruling request."

Final Scope Ruling at 8.  Commerce did not exclusively limit the scope of the order to only cover tires in the TRA Year Book; rather, it specified that, if T-type tires are listed in the TRA Year Book in the future, they would then be within scope.

Although the lack of inclusion in the TRA Year Book may not be dispositive, it is still indicative, and USW cannot establish otherwise.  If Commerce had not intended reliance on the TRA Year Book, it would not have cited the book in its scope language.  Commerce therefore

reasonably cited the fact that Cheng Shin's tires are not listed in the passenger car or light truck sections of the TRA Year Books as part of the basis for its decision. *Id.*

In addition, Commerce did not only rely on the TRA Year Book. It also considered Cheng Shin's request, which stated that T-type tires should be excluded from the scope because the tire "is used exclusively as a temporary spare tire" and is considered a "mini spare tire that does not meet the size or regulatory requirements for regular-service on passenger cars or light trucks." Scope Ruling Request at 1. Cheng Shin also argued the tire has a "T" prefix rather than the "P" or "LT" prefix. *Id.* at 3-4; *see also* Supplemental Response. Finally, Commerce examined the record evidence submitted by Cheng Shin and concluded that there "is no evidence on the record that suggest the tire in question is of a size that fits passenger cars and light trucks."[6] Final Scope Ruling at 8. Commerce appropriately considered the plain language of the order and the record evidence, and its determination that T-type tires of a size not listed in the TRA Year Book, and that are not otherwise of a size that would fit passenger vehicles or light trucks, is outside the scope of the order was reasonable and supported by substantial evidence.

## **CONCLUSION**

For these reasons, we respectfully request that this Court sustain Commerce's final scope ruling and enter judgment in favor of the United States.

---

[6] To the extent that USW argues that Commerce did not examine the whole record, such an allegation would be unfounded. Commerce's statement that no record evidence suggested that Cheng Shin's tire is of a size that fits passenger cars and light trucks necessarily assumes that Commerce looked at the record evidence. Moreover, Commerce was not required to address every piece of record evidence and explain why it did or did not support an out-of-scope finding. *See Coalition of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340, 1351 (Ct. Int'l Trade 2020) ("{T}he agency is not required to address every piece of evidence submitted by the parties, and Commerce is presumed to have considered all the evidence in the record absent a showing to the contrary.") (cleaned up).

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

DANIELLE COSSEY                    /s/ Sosun Bae
Of Counsel                         SOSUN BAE
                                   Senior Trial Counsel
U.S. Department of Commerce        Department of Justice
Office of the Chief Counsel for    Civil Division
Trade Enforcement & Compliance     Commercial Litigation Branch
1401 Constitution Ave., NW         PO Box 480, Ben Franklin Station
Washington, D.C. 20230             Washington, DC 20044
                                   Tel.: (202) 305-7568
                                   Email: sosun.bae@usdoj.gov

February 10, 2025                  Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 6,233 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>s/Sosun Bae</u>
Sosun Bae