**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, | |
| *Plaintiff*, | |
| v. | **Court No. 24-00165** |
| UNITED STATES, | |
| *Defendant*, | |
| and | |
| CHENG SHIN RUBBER USA INC., | |
| *Defendant-Intervenor*. | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF THE MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Roger B. Schagrin
Nicholas J. Birch
Alessandra A. Palazzolo
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel for Plaintiff the USW*

Date: March 24, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

I.    Introduction .................................................................................................................. 1

II.   The Court must reject the post hoc justifications now being offered for
      Commerce's actions ..................................................................................................... 2

III.  Commerce nor Defendant can ignore or change the plain terms of the scope
      language ........................................................................................................................ 4

   A.   Commerce and Defendant cannot treat explicit language in the
        scope of the order as mere surplusage ............................................................ 5

   a.   *Commerce did set out its interpretation of the scope* ................................... 5

   b.   *Commerce cannot interpret the plain terms in the scope language as
        mere surplusage* .............................................................................................. 7

   c.   *Defendant's new claim that a reference in the scope is "indicative" of
        a limitation must fail as it is contrary to the express denial of that
        limitation in the scope language* .................................................................. 8

   B.   Defendant and Defendant-Intervenor cannot now add language to
        the scope of the order to change the coverage of the order ...................... 10

   a.   *The actual scope language nowhere contemplates a limitation to
        "regular service" tires* .................................................................................. 10

   b.   *Such an end-use limitation cannot now be injected into the existing
        scope* ............................................................................................................... 11

   C.   The Court should reject all these attempts to change the plain
        language of the scope ...................................................................................... 15

IV.  Defendant and Defendant-Intervenor's failure to exhaust administrative
     remedies claims must fail ......................................................................................... 15

   a.   *Defendant admits that claims were raised and addressed* ...................... 16

   b.   *There is no failure to exhaust remedies where issues were raised
        and addressed or where issues were raised only by the agency in its
        final determination* ....................................................................................... 16

   c.   *The issue of scope interpretation was clearly raised* ............................... 18

   d.   *Plaintiff had no opportunity to address issues raised for the first
        time in Commerce's final ruling* ................................................................. 18

   e.   *Commerce's scope inquiry regulations do not direct a different
        outcome* ......................................................................................................... 20

   f.   *Preventing Plaintiff from raising meritorious claims would serve no
        purpose here* ................................................................................................. 21

V.    Commerce did abuse its discretion in deciding not to issue a preliminary
      determination and so avoiding briefing before the agency ........................... 24

VI.   Conclusion ..................................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Allegheny Bradford Corp. v. United States*, 342 F.Supp.2d 1172 (Ct. Int'l Trade 2004)...........................................................................................4

*Asia Wheel Co. v. United States*, CIT No. 23-00096, Slip Op. 25-17, 2025 WL 573718 (Ct. Int'l Trade Feb. 21, 2025)...............................7, 8, 9

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 83 S. Ct. 239, 246, 9 L. Ed. 2d 207 (1962) .............................................................2

*Consol. Bearings Co. v. United States*, 348 F.3d 997 (Fed. Cir. 2003)................16, 24

*DynaEnergetics U.S. Inc. v. United States*, 298 F. Supp. 3d 1363 (Ct. Int'l Trade 2018).......................................................................................9

*Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068 (Fed. Cir. 2001) ................4, 7

*King Supply Co., LLC v. United States*, 674 F.3d 1343 (Fed. Cir. 2012)...................12

*Maquilacero S.A. de C.V. v. United States*, 731 F. Supp. 3d 1346 (Ct. Int'l Trade 2024).......................................................................................4

*Meridian Prods., LLC v. United States*, 851 F.3d 1375 (Fed. Cir. 2017)...................23

*Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261 (Fed. Cir. 2002) ....................................................................................................23

*Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020) ......................7

*Precision Components, Inc. v. United States*, CIT No. 23-00218, Slip Op. 25-20, 2025 WL 602998 (Ct. Int'l Trade Feb. 25, 2025)..............4, 23

*Qingdao Taifa Group Co., Ltd. v. United States*, 637 F. Supp. 2d 1231 (Ct. Int'l Trade 2009), *aff'd*, 467 F. App'x 887 (Fed. Cir. 2012).............17

*Sandvik Steel Co. v. United States*, 164 F.3d 596 (Fed. Cir. 1998)...........................21

*SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263 (Ct. Int'l Trade 2023).......................................................................................7

*Smith Corona Corp. v. United States*, 915 F.2d 683 (Fed. Cir. 1990)........................4

*Star Fruits S.N.C. v. United States*, 393 F.3d 1277 (Fed. Cir. 2005) .......................24

*Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310 (Fed. Cir. 2024), *cert. denied sub nom. Saha Thai Steel Pipe Pub. Co. v. Wheatland Tube Co.*, No. 24-696, 2025 WL 663702 (U.S. Mar. 3, 2025) ...............................................................................................11

*Tr. Chem Co. v. United States*, 35 C.I.T. 1012 (2011) .............................................16

*U.H.F.C. Co. v. United States*, 916 F.2d 689 (Fed. Cir. 1990).....................................2

iii

*Vinh Hoan Corp. v. United States*, 179 F. Supp. 3d 1208 (Ct. Int'l Trade 2016)................................................................................... 17

*Worldwide Door Components, Inc. v. United States*, 119 F.4th 959 (Fed. Cir. 2024).................................................................................. 23

*Zhaoqing Tifo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328 (Ct. Int'l Trade 2015)........................................................................ 17, 18

*Zhengzhou Harmoni Spice Co. v. United States*, 33 C.I.T. 453 (2009) ..................... 18

## Regulations

19 C.F.R. § 351.225(f)(2) ................................................................. 20

19 C.F.R. § 351.225(f)(3) ................................................................. 20

19 C.F.R. § 351.225(f)(4) ................................................................. 21

## Administrative Determinations

*Notice of Scope Rulings*, 89 Fed. Reg. 104,087 (Dep't Commerce Dec. 20, 2024) ......................................................................................... 1

Pursuant to USCIT Rule 56.2 and this Court's Scheduling Order (ECF No. 21), Plaintiff the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (the "USW" or "Plaintiff") submits the following reply brief supporting Plaintiff's motion for judgment on the agency record (*Plaintiff's Brief*, ECF Nos. 22, 23) and in reply to the response briefs opposing that motion submitted by Defendant (ECF Nos. 22, 23) and Defendant-Intervenor Cheng Shin Rubber U.S.A. Inc ("Cheng Shin") (ECF Nos. 29, 30).

## I.    Introduction

As set out in Plaintiff's Rule 56.2 brief (ECF Nos. 22,23), the Department of Commerce's ("Commerce") final scope ruling that certain temporary-use spare ("T-Type") tires produced in Taiwan by Cheng Shin Rubber Ind. Co. ("CST") are not within the scope of the antidumping duty order (the "Order") on passenger vehicle and light truck ("PVLT") tires from Taiwan is unlawful. *See Final Scope Ruling on the Antidumping Duty Order on Passenger Vehicle and Light Truck Tires from Taiwan: Request by Cheng Shin Rubber Ind. Co. Ltd.* (Dep't Commerce Aug. 5, 2024)[1] ("*Scope Ruling*") (P.R. 15, C.R. 4).[2] Commerce improperly interpreted the scope of the Order contrary to the plain language of that scope and failed to engage with the full record before it.

---

[1] Commerce has now published notice of this scope ruling in the Federal Register. *Notice of Scope Rulings*, 89 Fed. Reg. 104,087 (Dep't Commerce Dec. 20, 2024).

[2] Citations to documents on the public administrative record are denoted as "P.R." in this brief.

In their response briefs, Defendant and Defendant-Intervenor respond to Plaintiff's claims with a series of arguments that must be rejected by this Court. Both defendant parties seek to justify Commerce's actions on different grounds than those that were offered by the agency; openly attempt to change the plain language of the scope; and argue that Plaintiff failed to properly raise claims before the agency while having to admit that claims were raised before and addressed by Commerce. As detailed below, Defendant's and Defendant-Intervenor's arguments are contrary to the law and to the facts now before the Court.

## II.    The Court must reject the post hoc justifications now being offered for Commerce's actions

First, an important principle that must be applied when reviewing the arguments raised in Defendant's and Defendant-Intervenor's briefs is that the Court must address the applied facts and reasoning that were actually stated in the agency's determination being reviewed, not the alternative arguments raised and facts relied on by parties' counsel before the Court trying to justify that determination on other grounds. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S. Ct. 239, 246, 9 L. Ed. 2d 207 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action; … an agency's {action must} be upheld, if at all, on the same basis articulated in the order by the agency itself"); *U.H.F.C. Co. v. United States*, 916 F.2d 689, 700 (Fed. Cir. 1990) ("Post-hoc rationalizations of agency actions first advocated by counsel in court may not serve as the basis for sustaining the agency's determination.").

As explained below, on multiple issues Defendant and Defendant-Intervenor ask this Court to sustain Commerce's scope ruling and decisions on grounds other than those that the agency set forth in its final ruling. In every such instance, the Court should decline to adopt counsel's post hoc reasons and should examine the legitimacy of what the agency itself said. Additionally, as explained below, these post hoc justifications are no more in line with the law or the facts than were the erroneous justifications Commerce did offer for its decisions.

Here, Defendant's claim that the reference to the Tire and Rim Association ("TRA")Year Book in the scope of the Order is "indicative" of an "intended reliance" on only that source for coverage and Defendant's and Defendant-Intervenor's claims that the words "regular service" should be read into the scope as a limiting factor (*see Defendant's Brief* (ECF Nos. 26, 27) at 18-20; *Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 19-20) are not reasons that appear in Commerce's scope ruling memo. Instead, Commerce simply stated that the size of the tires in question were not covered by the scope that was "defined" by the tire sizes listed in the TRA Year Book and that "there is no evidence on the record that suggests the tire in question is of a size that fits passenger cars and light trucks." *Scope Ruling* (P.R. 15, C.R. 4) at 8. No mention was made by the agency of some "intended reliance" or the need to introduce the term "regular service" into the scope. *See id.* This Court should reject Defendant's and Defendant-Intervenor's attempts to justify Commerce's actions on these other grounds as post hoc reasoning. Additionally, as discussed below, both

lines of argument must fail as they improperly seek to openly change the plain language of the scope.

### III.    Commerce nor Defendant can ignore or change the plain terms of the scope language

As has become axiomatic in the precedent controlling how Commerce can interpret the scope of its orders once it issues them, "Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001). Put in other words, "Commerce cannot make a scope determination that conflicts with an order's terms, nor can it interpret an order in a way that changes the order's scope." *Allegheny Bradford Corp. v. United States*, 342 F.Supp.2d 1172, 1184 (Ct. Int'l Trade 2004). Or, "{a}ll of Commerce's analysis…must be done in such a way that the scope is not changed, and that the order is not interpreted in a manner contrary to its terms." *Precision Components, Inc. v. United States*, CIT No. 23-00218, Slip Op. 25-20 at *6, 2025 WL 602998 (Ct. Int'l Trade Feb. 25, 2025).

Thus, where the "reading of the Order urged by the Government is in conflict with the language of the Order itself, {that reading} must be rejected." *Eckstrom*, 254 F.3d at 1072. *See also, e.g.*, *Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed. Cir. 1990) ("Although the scope of a final order may be clarified, it can not be changed in a way contrary to its terms."); *Maquilacero S.A. de C.V. v. United States*, 731 F. Supp. 3d 1346, 1352 (Ct. Int'l Trade 2024) ("It is well-established that Commerce cannot 'interpret' an antidumping order so as to change the scope of the

order, nor can Commerce 'interpret' an order in a manner contrary to its terms;" citations and quotation marks omitted).

As has been explained in Plaintiff's brief, Commerce's declaration in making its scope determination here—that the scope of this Order was defined by the tire sizes listed in the TRA Year Book—was contrary to the plain language of the scope, which expressly stated that the scope was *not* limited to that list. *See Plaintiff's Brief* (ECF Nos. 22,23) at 10-15; *cf. Scope Ruling* (P.R. 15, C.R. 4) at 8 ("Commerce notes that the scope, as specified above, is dependent upon the passenger car and light truck sections of the TRA Year Book"). Not only was Commerce's interpretation of the scope clearly a change from the plain language of the scope, in seeking to justify Commerce's improper interpretation, Defendant and Defendant-Intervenor seek to openly introduce even more changes to the scope language. The Court must reject all these attempts to change the scope of the Order.

### A. Commerce and Defendant cannot treat explicit language in the scope of the order as mere surplusage

#### a. Commerce did set out its interpretation of the scope

Defendant claims that Commerce did not in fact seek to limit the scope language to only tire sizes listed in the TRA Year Book. *See Defendant's Brief* (ECF Nos. 26, 27) at 19; *see also Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 13-14 (claim that Commerce only looked at the TRA Year Book as one source of "evidence"). But that is not what Commerce said. Commerce was explicit: "Commerce notes that the scope, as specified above, *is dependent* upon the passenger car and light truck sections of the TRA Year Book, which is updated

annually." *Scope Ruling* (P.R. 15, C.R. 4) at 8. "Is dependent" is clear. Further, in the immediately following sentence, Commerce referred to this claimed dependency on the Year Book as "this exclusion;" again demonstrating that Commerce was in fact interpreting the scope to exclude tire sizes outside those listed in the Year Book. *Id.*

As Commerce did hold that the scope of the Order "is dependent upon the passenger car and light truck sections of the TRA Year Book," it concluded that because "{t}he numerical size of the tires in question reported by Cheng Shin is not listed in the passenger car section or light truck section of any of the TRA Year Books provided on the record" they were not in scope. *Id.* If Commerce had instead meant that the scope is not limited to the sizes listed in the TRA Year Book and does, as the scope actually states, include *all* sizes of tires that fit passenger cars and light trucks, Plaintiff would be very pleased to have Commerce say so in an actual ruling, rather than having that statement made in non-binding court filings only by counsel. But because what Commerce in fact stated was that the limit of the scope coverage "is dependent upon the passenger car and light truck sections of the TRA Year Book," Plaintiff has had to seek review by this Court to address Commerce's improper reading-out of the plain terms in the scope language.

"Dependent" means "determined or conditioned by another." Merriam-Webster Online Dictionary, "Dependent," https://www.merriam-webster.com/dictionary/dependent (last visited March 18, 2024). But the actual language in the scope of this Order is explicit that the coverage is not "determined

or conditioned" by the sizes listed in the TRA Year Book. Instead, the coverage "include{s}, *but {is} not limited to*," the Yeark Book. *See Scope Ruling* (P.R. 15, C.R. 4) at 3 (emphasis added). Any interpretation of the scope language that attempts to make coverage "dependent" on what is listed in the TRA Year Book necessarily makes the "include{s}, but {is} not limited to" language of entirely no effect, as the dependent coverage would *be* limited to the TRA Year Book.

        b.  *Commerce cannot interpret the plain terms in the scope language as mere surplusage*

As this Court and the Federal Circuit have repeated on many occasions, "{a}n interpretation that renders a term in the scope language meaningless and mere surplusage is not reasonable." *Asia Wheel Co. v. United States*, CIT No. 23-00096, Slip Op. 25-17 at *7, 2025 WL 573718 (Ct. Int'l Trade Feb. 21, 2025) (quotation marks removed; quoting *SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263, 1275 (Ct. Int'l Trade 2023)). *See also*, *e.g., Eckstrom*, 254 F.3d at 1073 ("the Government's interpretation of the conditions of use provision renders this language mere surplusage. Accordingly, we reject the Government's argument…."); *Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341, 1353 (Ct. Int'l Trade 2019), *aff'd*, 836 F. App'x 883 (Fed. Cir. 2020) (rejecting "an alternative interpretation {that} would result in reading out the 'as parts' term from the relevant scope language").

This Court recently rejected a proposed interpretation of the scope of the orders on steel wheels from China where that interpretation would have improperly limited the scope to only the types of products that the scope language stated that

7

coverage was "including, but not limited to." *Asia Wheel*, Slip Op. 25-17 at * 8. There as well, the party arguing for that interpretation claimed that by referencing an example list of covered products, the scope language was indicating that coverage was limited to those listed products—even though the plain language of the scope stated that the coverage *included* but was *not* limited to those enumerated product types. *See id.* But Commerce (in that case) and the Court disagreed, explained that "{t}he words 'including, but not limited to' would be rendered meaningless if Commerce were to interpret the scope to unambiguously exclude {products outside the listed examples}." *Id.* Here too, Defendant's proposed interpretation of the reference to the TRA Year Book cannot be interpreted in a way that makes the directly preceding "including, but not limited to" language mere surplusage. That "including, but not limited to" language must be given effect, and so must be interpreted to mean just what it says: the coverage of the scope is *not* limited to the sizes listed in the TRA Year Book.

   c. *Defendant's new claim that a reference in the scope is "indicative" of a limitation must fail as it is contrary to the express denial of that limitation in the scope language*

   Further, Defendant's attempt to explain away Commerce's dismissal of ""include{s}, but {is} not limited to" in the scope language as anything other than a ruling that would limit the future coverage of the scope to the TRA Year Book listings is contradicted by Defendant's immediate pivot to trying to justify just that dismissal, arguing that "{a}lthough the lack of inclusion in the TRA Year Book may not be dispositive, it is still indicative…." *Defendant's Brief* (ECF Nos. 26, 27) at 19. But even claiming that that reference to the TRA Year Book in the scope language

8

is meant to "indicate" that the scope is somehow limited to that source is plainly inconsistent with the plain language of the scope. That plain scope language is instead explicit that coverage includes *but is not limited* to that source, just as this Court affirmed on similar scope language in *Asia Wheel*. And, as noted above, Defendant's "indicative" argument does not appear in Commerce's actual ruling, so provides no grounds that can support that ruling now. This Court should instead address what Commerce actually said in its ruling.

There is nothing particularly unusual about scope language referring to an industry standard or publication but *not* limiting coverage to that source. Such examples are given to aid understanding of what is included, not to indicate what is not. For example, regarding the scope of orders on oil country tubular goods ("OCTG") from China, this Court has noted that scope language stated that OCTG was covered "*whether or not* conforming to American Petroleum Institute ('API') or non-API specifications.'" *DynaEnergetics U.S. Inc. v. United States*, 298 F. Supp. 3d 1363, 1366 and 1377 (Ct. Int'l Trade 2018) (emphasis added). As the Court explained, "{t}his language indicates that {noted} standards and specifications *are irrelevant* when determining whether a product is within the scope of the Orders." *Id.* at 1377 (emphasis added). Where the plain language of the scope states that coverage is *not* limited to some listing or standard, the reference to that listing or standard in making that statement is "irrelevant when determining whether a product is within the scope of the Order{}" other than indicating that products in that list are undoubtedly covered. That is true in this case as well.

Thus, the fact that the scope of this Order references the TRA Year Book as a non-exhaustive example of what tire sizes are covered by the scope cannot be interpreted to instead indicate a limitation of coverage to only that source. The scope expressly says otherwise. The scope sets out in plain language coverage includes all tires "as long as the tire is of a size that fits passenger cars or light trucks," unless the tire falls into one of the eight enumerated scope exclusions. *See Scope Ruling* (P.R. 15, C.R. 4) at 2-6. And none of those exclusions is for tire sizes not covered in the TRA Year Book. *Id.* at 3-6. Commerce's and now Defendant's attempts to interpret the scope contrary to those plain terms must fail.

### B. Defendant and Defendant-Intervenor cannot now add language to the scope of the order to change the coverage of the order

#### a. The actual scope language nowhere contemplates a limitation to "regular service" tires

Defendant and especially Defendant-Intervenor attempt to make even more extreme changes to the language of the scope. They claim that the scope must also be read to limit coverage to tires used in "regular service;" though neither defines what "regular service" is. *See Defendant's Brief* (ECF Nos. 26, 27) at 20; *see also Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 18-19.

Defendant-Intervenor is most obvious that these are open attempts to change the language of the scope, as Defendant-Intervenor unambiguously argues that the Court should *add* the words "regular service" to the scope language where those words do not appear. *See Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 19. Defendant also argues that Commerce considered that the tires in question were

out of scope because they were not for "regular service." *Defendant's Brief* (ECF Nos. 26, 27) at 20.

But "regular service" nowhere appears in the actual scope language that had been adopted by Commerce. *See Scope Ruling* (P.R. 15, C.R. 4) at 2-6. There is no limitation that can be found in that language limiting the coverage to tires to be used in "regular service." Defendant and Defendant-Intervenor invent this scope limitation whole cloth. Likewise, Commerce never claimed to add such an exclusion in its actual scope ruling. This again is simply post hoc rationalization.

   b.   *Such an end-use limitation cannot now be injected into the existing scope*

When a party recently asked this Court to similarly "inject an implicit exclusion into the scope language" based on that party's interpretation of what the scope was *supposed* to mean, this Court explained "{t}hat is backwards and ignores the paramount weight the scope language carries….{anything other than the plain language of the scope} cannot rewrite or change the scope of the order…." *Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310, 1329 (Fed. Cir. 2024), *cert. denied sub nom. Saha Thai Steel Pipe Pub. Co. v. Wheatland Tube Co.*, No. 24-696, 2025 WL 663702 (U.S. Mar. 3, 2025). The Court in *Saha Thai* also "reject{ed} {that party's} attempt to read references to exclusions in other {orders on that product from different countries} as equally applying to the {order in question}." *Id.* The Court recognized that the plain language of the particular scope sets the coverage of that order; different scope language from different orders cannot be substituted in. Commerce failed to make that same recognition here. *See*

*Scope Ruling* (P.R. 15, C.R. 4) (Commerce's reliance on the dissimilar language in the orders on PVLT tires from China).

Essentially, Defendant and Defendant-Intervenor seek to now add new end-use restrictions to the language of the scope, limiting the coverage of the Order to only tires used in "regular service," and not as a spare tire in any way. But such end-use restrictions cannot be manufactured on what "should be meant" as Defendant and Defendant-Intervenor attempt. End-use restrictions must be clearly spelled out in the scope.

"The requisite clear exclusionary language must leave no reasonable doubt that certain products were intended to be outside the scope of the AD order based solely on the end use of those products." *King Supply Co., LLC v. United States*, 674 F.3d 1343, 1349 (Fed. Cir. 2012). Thus, "when Commerce intends to impose end-use restrictions, Commerce consistently uses express terms such as 'only' or 'solely' to indicate restrictions on end uses for certain products." *Id.*

The scope of this Order contains no express terms that it "only" or "solely" covers tires for "regular service." *See Scope Ruling* (P.R. 15, C.R. 4) at 2. Indeed, "regular service" has appeared nowhere in the scope language until Defendant-Intervenor injected it there in its brief. *Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 19 (Defendant-Intervenor's altered scope language); *cf. Scope Ruling* (P.R. 15, C.R. 4) at 3 (actual scope language).

Instead, the plain and unadulterated language of the scope includes all tires "*regardless of their intended use*, as long as the tire is of a size that fits passenger

cars or light trucks." *Scope Ruling* (P.R. 15, C.R. 4) at 3 (emphasis added). Defendant's and Defendant-Intervenor's arguments would have the scope language read that PVLT tires are covered "regardless of their intended use" but only if that use is for "regular service." Such self-contradictory language cannot justifiably be read into the actual language of the scope.

Moreover, the actual scope language makes clear that some temporary spare tires are covered by the Order. The fourth and fifth listed exclusions in the scope state that some temporary spare tires are excluded (for passenger vehicles and light trucks respectively), but only if they meet specifically enumerated characteristics, such as design, specific size designations, and tread depths. *See Scope Ruling* (P.R. 15, C.R. 4) at 3-4. If only those temporary spare tires that meet the enumerated characteristics are excluded, other PVLT temporary spare tires that do not meet those characteristics must be therefore covered. *Cf. Defendant's Brief* (ECF Nos. 26, 27) at 18 (claiming without support that "T-type tires are not covered by the order").

Accepting Defendant's and Defendant-Intervenor's attempts to limit the coverage only to "regular service" would make some enumerated exclusions merely redundant surplusage: they would only be excluding non-regular service tires that would not be covered anyway. As discussed above, such "mere surplusage" interpretations must be rejected. This one certainly should be.

As a final point here, Defendant-Intervenor argues that the "regular service" limitation should be added to the scope because, Defendant-Intervenor claims, the PVLT sections of TRA Year Book "only identify the size designations of regular-

service tires for passenger cars and light trucks, while other sections of the TRA Year Book identify the size designations for temporary use spare tires for passenger cars and light trucks….” *Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 18-19. Either Defendant-Intervenor is woefully misinformed about the factual claims it asserts or is actively trying to mislead the Court, as Defendant-Intervenor's claim that T-type spare tires are not included in the passenger vehicle or light truck sections of the TRA Year Book is patently false.

Defendant-Intervenor refers only to its submission of portions of the TRA Year Book in its scope ruling request in support of this claim. *Id.* at 19 and n.69. But Defendant-Intervenor's submission did not include the complete sections of TRA Year Book on passenger vehicle and light truck tires: Defendant-Intervenor simply omitted the pages covering T-type spare tires in those sections from its submission.

This can be seen plainly in what Defendant-Intervenor did submit. On the final page of the portion of the passenger vehicle section that Defendant-Intervenor did submit from the 2023 TRA Year Book, Defendant-Intervenor failed to completely cut out of its scan the following page of that section of the Year Book. The title of that page can still be read: “TABLE PCT-1B 'T' TYPE RADIAL SPARE TIRES FOR TEMPORARY USE ON PASSENGER VEHICLES.” Cheng Shin, *Request for Scope Ruling* (Mar. 11, 2024) (“*Cheng Shin Request for Scope Ruling*”) (P.R. 1-2, C.R. 1-3), Attachment 11-a at page I-48. So the very next page of the

14

passenger vehicle section, cut out by Cheng Shin, began coverage of T-type spare tires.

**C.  The Court should reject all these attempts to change the plain language of the scope**

In sum, Commerce's, Defendant's, and Defendant-Intervenor's attempts to change the plain language of the scope of this Order must all fail. The Court must apply the actual language of the scope. The Court cannot, as Commerce, Defendant, and Defendant-Intervenor attempt in a number of ways, either ignore express language in the scope as mere surplusage nor add new end-use limitations that do not appear in the actual scope language. So the Court must find that all the proposed changes and interpretations are not consistent with the actual scope language. The Court therefore must reject the scope interpretation Commerce did apply in making its scope ruling and so should remand that ruling to Commerce for a redetermination that is consistent with a proper interpretation of the scope.

**IV.  Defendant and Defendant-Intervenor's failure to exhaust administrative remedies claims must fail**

Both Defendant and particularly Defendant-Intervenor ask the Court to dismiss Plaintiff's meritorious claims on procedural grounds rather than rule on them. They claim that Plaintiff failed to exhaust its administrative remedies before seeking relief from this Court. *See Defendant's Brief* (ECF Nos. 26, 27) at 15-17; *Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 5-17. But their claims regarding exhaustion must fail, rebutted particularly by admissions made in their own briefs.

### a. Defendant admits that claims were raised and addressed

Critically, in its response, Defendant openly admits that "Commerce *did* consider the issues raised by the scope inquiry and USW's request." *Defendant's Brief* (ECF Nos. 26, 27) at 13 (emphasis in original). That admission defeats the claims raised by Defendant, and particularly those made by Defendant-Intervenor, regarding Plaintiff's supposed failure to exhaust administrative remedies. Defendant's admission particularly rebuts Defendant-Intervenor's fallacious claim that Plaintiff did not raise the issues before the agency or that the agency was unable to address those issues in its determination. *See Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 11-12. As Defendant itself states, *both* Cheng Shin and USW *did* raise issues before the agency and Commerce *did* address them (albeit, as discussed above and in Plaintiff's brief in chief, erroneously).

### b. There is no failure to exhaust remedies where issues were raised and addressed or where issues were raised only by the agency in its final determination

As the Federal Circuit has directed, "the Court of International Trade…enjoys discretion to identify circumstances where exhaustion of administrative remedies does not apply." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1003 (Fed. Cir. 2003). In applying that discretion, this Court has explained that "{t}he determinative question {regarding administrative exhaustion} is whether Commerce was put on notice of the issue…." *Tr. Chem Co. v. United States*, 35 C.I.T. 1012, 1024 n.27 (2011). Where Commerce was put on notice of an issue and had the opportunity to address it, there is no failure to exhaust. Thus, "the fact that Commerce thus had an opportunity to consider the issue in {its final

16

determination} would alone suffice to preserve {a party's} right to pursue its {} claim in this forum." *Zhaoqing Tifo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328, 1358 (Ct. Int'l Trade 2015) (also explaining that applying exhaustion would be inappropriate when "the record further makes it clear that Commerce in fact considered the {issue}"). *See also, e.g.*, *Vinh Hoan Corp. v. United States*, 179 F. Supp. 3d 1208, 1227 (Ct. Int'l Trade 2016) (holding that applying exhaustion was inappropriate when "Commerce was aware" of a party's objections to its determination); *Zhaoqing Tifo*, 60 F. Supp. 3d at 1355 and n.31 (collecting numerous cases holding that there is no failure to have exhausted administrative remedies where the agency did in fact address the issue).

Additionally, where a matter only becomes an issue in Commerce's final determination, parties are not required to—nor indeed could they rationally be expected to—have previously argued that issue before the agency. Instead, a party "may seek judicial review of an issue that it did not raise in a case brief if Commerce did not address the issue until its final decision, because in such a circumstance the party would not have had a full and fair opportunity to raise the issue at the administrative level." *Qingdao Taifa Group Co., Ltd. v. United States*, 637 F. Supp. 2d 1231, 1236 (Ct. Int'l Trade 2009), *aff'd*, 467 F. App'x 887 (Fed. Cir. 2012). *See also Zhaoqing Tifo*, 60 F. Supp. 3d at 1347, n.23 (collecting over 20 cases standing for the same).

In such circumstances, the party "had no reason to raise its claim… until after Commerce made its argument in the Final Results, when Commerce, in effect,

'opened the door' on the issue...." *Zhengzhou Harmoni Spice Co. v. United States*, 33 C.I.T. 453, 496 n.49 (2009). A party placed in that position by the agency itself cannot be "required to exhaust its administrative remedies, because—simply stated—at the time {}, there was nothing to exhaust." *Zhaoqing Tifo*, 60 F. Supp. 3d at 1346.

### c.  The issue of scope interpretation was clearly raised

Here, Plaintiff certainly did try to raise the issue of scope interpretation with Commerce during the scope proceeding. Plaintiff specifically called Commerce's attention to the fact that the plain language of the scope was explicit that the coverage was not limited to the TRA Year Book. *See Petitioner's Request for a Preliminary Determination* (P.R. 12) at 2. Plaintiff also pointed out that Cheng Shin was asking Commerce to instead interpret the scope as excluding tires that were outside the Year Book. *Id.* And it cannot be denied that Commerce did address that issue in its determination, holding incorrectly that "the scope, as specified above, is dependent upon the passenger car and light truck sections of the TRA Year Book, which is updated annually." *Scope Ruling* (P.R. 15, C.R. 4) at 8. As Defendant admits, the issue was raised before the agency and the agency did address it. And so there was no failure by Plaintiff to exhaust its claims regarding the plain language of the scope.

### d.  Plaintiff had no opportunity to address issues raised for the first time in Commerce's final ruling

As to Plaintiff's arguments regarding the express difference in the language in the scope of the order on tires from China (*see Plaintiff's Brief* (ECF Nos. 22,23)

at 14-15) and whether there is evidence on the record that the tires in question were of a size used on passenger vehicles or light trucks (*see id.* at 15-17), the door was only opened on those issues *by Commerce* in its final ruling. Prior to Commerce's ruling, no party had raised the issue of the China orders at all. Cheng Shin's scope ruling request makes no mention of that order; the word "China" does not appear in its scope ruling request. *See Cheng Shin Request for Scope Ruling* (P.R. 1-2, C.R. 1-3) at 1-8.

Likewise, the issue of whether evidence on the record did or did not show that the tires in question were of a size used on passenger cars or light trucks was raised only by the agency in its ruling. Cheng Shin made no such claim in its scope request, arguing instead *only* that the tires were outside the scope because they were of a size not listed in the Year Book and did not have a "P" or "LT" in the size designation. *See id.* at 7. Indeed, in its brief here, Defendant-Intervenor openly admits that "Cheng Shin *explicitly* requested Commerce find that the T-type tire it produced for a U.S. customer was outside the scope of the order" for *those* reasons, not based on any other evidence about size. *Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 10 (emphasis in the original). Here again, what one defendant party admits undercuts the unfounded claims made by the other. Indeed, even Defendant admits that that "Cheng Shin never claimed that its tires are not sold for any car use…." *Defendant's Brief* (ECF Nos. 26, 27) at 18.

Plaintiff had no reason to explain to the agency what other evidence of the tire size was on the record until Commerce claimed for the first time that "there is

no evidence on the record" to show these tires were covered by the Order (*Scope Ruling* (P.R. 15, C.R. 4) at 8), so cannot be faulted for not doing so beforehand. Indeed, Plaintiff still sought to raise these issues before the agency once they were raised, explaining Commerce's errors in a post-ruling filing asking Commerce to use its authority to reconsider its erroneous decision. *See Petitioner's Request to Reconsider* (P.R. 18, C.R. 5) at 4-5. Commerce simply ignored that request.

      *e.  Commerce's scope inquiry regulations do not direct a different outcome*

Defendant and Defendant-Intervenor both seek to fault Plaintiff for not submitting comments in direct response to Cheng Shin's filings in the scope inquiry. *See Defendant's Brief* (ECF Nos. 26, 27) at 13-14; *Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 7-9. But these claims are inconsistent with Commerce's actual regulations. Defendant and Defendant-Intervenor point to 19 C.F.R. § 351.225(f)(2) as allowing parties other than the party requesting the scope ruling to make submissions in a scope inquiry. But that regulation specifically "permit{s} one opportunity to submit comments and factual information *to rebut, clarify, or correct factual information contained in the scope ruling application*" (emphasis added). *See also* 19 C.F.R. § 351.225(f)(3) (using identical language for submissions in rebuttal to questionnaire responses from the requesting party). The language of the regulation is plain: the submission called for is for *rebuttal* to the *factual* information submitted by the requesting party. Nowhere does the regulation call for—and certainly does not require—argument or briefing regarding other issues, including the proper interpretation of the scope language or whether the factual

information that *is* submitted by the requesting party does or does not support any conclusions.

In contrast, § 351.225(f)(4) sets out a schedule for "the filing of *scope* comments and rebuttal comments" (emphasis added), but only *after* Commerce issues a preliminary determination ("{u}nless otherwise specified, any interested party may submit scope comments within 14 days after the issuance of the preliminary scope ruling"). Thus, the plain language of the regulation sets a pre-preliminary schedule *only* for comments "to rebut, clarify, or correct *factual* information," and only sets a *post-preliminary* deadline for "scope comments." Defendant and Defendant-Intervenor improperly seek to fault Plaintiff for not submitting scope comments when Commerce's regulations explicitly only call for such comments *after* a preliminary determination. In this case, Commerce expressly denied parties the contemplated post-preliminary scope comment opportunity, despite knowing and acknowledging that there were scope issues that it needed to address and different arguments being made about how it should address those issues.

   f.   *Preventing Plaintiff from raising meritorious claims would serve no purpose here*

The "twin purposes" of applying the exhaustion doctrine are to allow the administrative agency to "to make a factual record {and} to apply its expertise," and to "enable{e} an agency to correct its own errors so as to moot judicial controversies." *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998) (citations and quotation marks omitted). Neither purpose would be served in this case. Indeed,

Plaintiff sought repeatedly to convince Commerce to allow parties a full opportunity to build the record before the agency to assist the agency in reaching a correct determination *and* for Commerce to correct its errors. Plaintiff has not sought in this proceeding to add any facts that were not before the agency, so there is no issue with Commerce's ability to make a factual record. Commerce knew, as Defendant has admitted, of the issues raised by Plaintiff in the scope inquiry and chose how to apply its expertise in addressing those. Commerce then raised new issues that parties had not raised and provided no opportunity for parties to respond. Any shortcomings in the record before the agency or errors that have led to judicial controversies were not the making of Plaintiff, and no judicial purpose would be served by denying Plaintiff the opportunity to raise its challenges to how Commerce chose to address that record and those issues.

As an additional point, Defendant-Intervenor's claims that the only issue Plaintiff identified before Commerce was "that the particular scope language had not yet been interpreted by Commerce in the context of this Order" is patently false. *Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 11-12. In its filing with Commerce, Petitioner raised not only the plain language of the scope (specifically quoting the "including but not limited to" language from the scope) but also pointed out that Defendant-Intervenor's scope request was based on a contrary interpretation that Defendant-Intervenor asked Commerce to adopt. *See Petitioner's Request for a Preliminary Determination* (P.R. 12) at 2. Plaintiff certainly did not only say that no interpretation had yet been made.

And contrary to Defendant-Interventor's position that there is no pure question of law in this case (*see Defendant-Intervenor's Brief* (ECF Nos. 29, 30) at 13-14), clear and widespread precedent directs otherwise. "The plain meaning of an antidumping or countervailing duty order, including whether an ambiguity exists with respect to the scope of the order, is a question of law reviewed de novo." *Worldwide Door Components, Inc. v. United States*, 119 F.4th 959, 968 (Fed. Cir. 2024). *See also*, *e.g.*, *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1382 (Fed. Cir. 2017) ("the question of whether the unambiguous terms of a scope control the inquiry, or whether some ambiguity exists, is a question of law that we review de novo"); *Precision Components*, Slip Op.25-20 at *7 ("The plain meaning of an antidumping order is a question of law…."). Even if the issue had not in fact been raised before the agency (which it clearly was), Plaintiff's claim that Commerce ignored the unambiguous language of the scope of the Order and improperly substituted a contrary interpretation is a pure question of law that this Court should address.

As the Federal Circuit has explained,

> A party does not preserve or waive an issue based on the arguments it presented to an administrative agency; a party merely exhausts that issue before the agency so as to give a court the proper basis to review that issue on appeal or via a complaint.

*Novosteel SA v. U.S., Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002). Whether the Court has a proper basis to review the agency action is the relevant question regarding exhaustion. Here, Commerce chose what basis to present its determination on, and Plaintiff's claims seek only to address that basis. Thus, this

23

Court has a proper basis as set by the agency to review that agency's determination. Having that proper basis, this Court should then review Commerce's determination, and so must reject the unfounded claims that Plaintiff did not raise issues before the agency or that Plaintiff should have preemptively addressed issues raised only in the agency's final ruling.

**V.    Commerce did abuse its discretion in deciding not to issue a preliminary determination and so avoiding briefing before the agency**

Defendant and Defendant-Intervenor also fail to make a meaningful response to Plaintiff's argument that Commerce abused its discretion in not issuing a preliminary determination. Instead, Defendant claims that "Commerce has full discretion as to whether to issue a preliminary scope ruling." *Defendant's Brief* (ECF Nos. 26, 27) at 12. But neither Defendant nor Defendant-Intervenor address that discretion may be abused or when such abuse occurs.

As Plaintiff explained in its brief in chief (*see* ECF Nos. 22, 23 at 9), Commerce abuses its discretion when it makes a decision "based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (quoting *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)). Commerce certainly does not have "full" discretion to make a determination that is contrary to the law or the facts.

Here again, the Court must look at the actual reasoning the agency gave for its decision, not any post hoc justification now devised by counsel. Commerce stated

24

explicitly that its reasons for not issuing a preliminary determination were 1) its claim that "there is no evidence on the record that suggests" that the tires in question were covered by the scope and 2) its claim that the scope language from the orders on PVLT tires from China was "similar." *Scope Ruling* (P.R. 15, C.R. 4) at 8.

But as has been shown in Plaintiff's brief, there 1) *was* evidence on the record on the record showing that the tires were covered by the scope and 2) the scope language in the China orders was expressly *dissimilar* from the language in this scope. *Plaintiff's Brief* (ECF Nos. 22,23) at 14-15, 16-17. Further, as established above, Commerce's improper interpretation of the scope of this Order, an interpretation that in Commerce's view made this scope similar to the other scope language, was contrary to the plain language of this scope and so was contrary to law. Thus, the two stated bases for Commerce's decision to forgo issuing a preliminary determination were both factually and legally incorrect.

As Defendant and Defendant-Intervenor fail to engage with the requirements for Commerce to apply its discretion without abusing it, their claims that Commerce simply has "full" discretion to decide whether or not to issue a preliminary determination in spite of any law or fact must fail. This Court is not impotent to review Commerce's abuse of that discretion, but can and should review the reasons Commerce did give for using its discretion. Because those reasons were not legitimate, the Court should find Commerce did abuse its discretion.

**VI.    Conclusion**

For all the reasons above, the arguments raised by Defendant and

Defendant-Intervenor in their response briefs lack merit and must be rejected by

this Court. As they have failed to show any fault in Plaintiff's claims challenging

Commerce's erroneous scope ruling here, Plaintiff again respectfully requests that

this Court remand this action to Commerce for reconsideration consistent with the

plain language of the scope and the evidence on the record.

Respectfully submitted,

/s/ Nicholas J. Birch
Roger B. Schagrin
Nicholas J. Birch
Alessandra A. Palazzolo
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to United Steel, Paper and
Forestry, Rubber, Manufacturing,
Energy, Allied Industrial and Service
Workers International Union, AFL-
CIO, CLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel at Schagrin Associates hereby certifies that the

Reply Brief of Plaintiff the United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied Industrial and Service Workers International Union,

AFL-CIO, CLC, dated March 24, 2025, complies with the word-count limitation set

out in 2(B)(1)(a) of this Court's Standard Chambers Procedures, limiting reply briefs

to 7,000 words. This response brief contains 6,908 words according to the word

count function of the word processing software used to prepare the brief.

/s/ Nicholas J. Birch
Roger B. Schagrin
Nicholas J. Birch
Alessandra A. Palazzolo
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

Dated: Marh 24, 2025