A-583-869
Remand
Slip Op. 25-72
Scope – T-Type
**Public Document**
E&C/OVII:  Team

**United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC., v. United States and Cheng Shin Rubber U.S.A. Inc.**, Court No. 24-00165, Slip Op. 25-72 (CIT June 9, 2025)
**Passenger Vehicle and Light Truck Tires from Taiwan**

### FINAL RESULTS OF REDETERMINATION
### PURSUANT TO COURT REMAND

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and *Remand Order* of the U.S. Court of International Trade (Court or CIT) in *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, v. United States and UCS*, issued on June 9, 2025.[1]  This action arises out of Commerce's final scope ruling that certain temporary-use spare (T-type) tires produced by Cheng Shin Rubber Ind. Co. Ltd. (Cheng Shin) and imported from Taiwan by its U.S. affiliate Cheng Shin Rubber USA Inc. (UCS) are not within the scope of the antidumping duty (AD) order on passenger vehicle and light truck tires (passenger tires) from Taiwan.[2]

In its *Remand Order*, the Court held that Commerce failed to explain how evidence supported its determination that Cheng Shin's tires do not fit passenger cars or light trucks.[3]  In accordance with the *Remand Order*, we reconsidered whether Cheng Shin's T-type tires fall

---

[1] *See United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, v. United States and UCS*, Court No. 24-00165, Slip Op. 25-72 (June 9, 2025) (*Remand Order*).
[2] *See* Memorandum, "Antidumping Duty Order on Passenger Vehicle and Light Tires from Taiwan:  Final Scope Ruling on Passenger Vehicle and Light Truck Tires from Taiwan," dated August 5, 2024 (Final Scope Ruling); *see also Passenger Vehicle and Light Truck Tires from the Republic of Korea, Taiwan, and Thailand:  Antidumping Duty Orders and Amended Final Affirmative Antidumping Duty Determination for Thailand*, 86 FR 38011 (July 19, 2021) (*Order*).
[3] *See Remand Order* at 16.

within the scope of the *Order*.  As detailed below, pursuant to 19 CFR 351.225(k)(1), we find that Cheng Shin's T-type tires with a numerical size designation of T155/60R18, imported by UCS, fall within the *Order*'s description of in-scope merchandise as tires that fit passenger cars, and, therefore, are covered by the scope of the *Orde*r.

## II.     SCOPE OF THE *ORDER*

The products covered by this *Order* are passenger vehicle and light truck tires.  Passenger vehicle and light truck tires are new pneumatic tires, of rubber, with a passenger vehicle or light truck size designation.  Tires covered by this *Order* may be tube-type, tubeless, radial, or non-radial, and they may be intended for sale to original equipment manufacturers or the replacement market.

Subject tires have, at the time of importation, the symbol "DOT" on the sidewall, certifying that the tire conforms to applicable motor vehicle safety standards.  Subject tires may also have the following prefixes or suffix in their tire size designation, which also appears on the sidewall of the tire:

Prefix designations:

P – Identifies a tire intended primarily for service on passenger cars.

LT – Identifies a tire intended primarily for service on light trucks.

Suffix letter designations:

LT – Identifies light truck tires for service on trucks, buses, trailers, and multipurpose passenger vehicles used in nominal highway service.

All tires with a "P" or "LT" prefix, and all tires with an "LT" suffix in their sidewall markings are covered by this *Order* regardless of their intended use.

In addition, all tires that lack a "P" or "LT" prefix or suffix in their sidewall markings, as well as all tires that include any other prefix or suffix in their sidewall markings, are included in the scope, regardless of their intended use, as long as the tire is of a size that fits passenger cars

2

or light trucks.  Sizes that fit passenger cars and light trucks include, but are not limited to, the numerical size designations listed in the passenger car section or light truck section of the Tire and Rim Association Year Book, as updated annually.  The scope includes all tires that are of a size that fits passenger cars or light trucks, unless the tire falls within one of the specific exclusions set out below.

Passenger vehicle and light truck tires, whether or not attached to wheels or rims, are included in the scope.  However, if a subject tire is imported attached to a wheel or rim, only the tire is covered by the scope.

Specifically excluded from the scope are the following types of tires:

(1) Racing car tires; such tires do not bear the symbol "DOT" on the sidewall and may be marked with "ZR" in size designation;

(2) pneumatic tires, of rubber, that are not new, including recycled and retreaded tires;

(3) non-pneumatic tires, such as solid rubber tires;

(4) tires designed and marketed exclusively as temporary use spare tires for passenger vehicles which, in addition, exhibit each of the following physical characteristics:  the size designation and load index combination molded on the tire's sidewall are listed in Table PCT–1R ("T" Type Spare Tires for Temporary Use on Passenger Vehicles) or PCT-1B ("T" Type Diagonal (Bias) Spare Tires for Temporary Use on Passenger Vehicles) of the Tire and Rim Association Year Book,  the designation "T" is molded into the tire's sidewall as part of the size designation, and,  the tire's speed rating is molded on the sidewall, indicating the rated speed in MPH or a letter rating as listed by Tire and Rim Association Year Book, and the rated speed is 81 MPH or a "M" rating; tires designed and marketed exclusively as temporary use spare tires for light trucks which, in addition, exhibit each of the following physical characteristics: the tires have a

265/70R17, 255/80R17, 265/70R16, 245/70R17, 245/75R17, 245/70R18, or 265/70R18

size designation; "Temporary Use Only" or "Spare" is molded into the tire's sidewall;

(a) the tread depth of the tire is no greater than 6.2 mm; and

(b) Uniform Tire Quality Grade Standards ("UTQG") ratings are not molded into the tire's

sidewall with the exception of 265/70R17 and 255/80R17 which may have UTQG

molded on the tire sidewall;

(5) tires designed and marketed exclusively for specialty tire (ST) use which, in addition,

exhibit each of the following conditions:

(a) the size designation molded on the tire's sidewall is listed in the ST sections of the Tire

and Rim Association Year Book,

(b) the designation "ST" is molded into the tire's sidewall as part of the size designation,

(c) the tire incorporates a warning, prominently molded on the sidewall, that the tire is "For

Trailer Service Only" or "For Trailer Use Only",

(d) the load index molded on the tire's sidewall meets or exceeds those load indexes listed in

the Tire and Rim Association Year Book for the relevant ST tire size, and

(e) either

(i) the tire's speed rating is molded on the sidewall, indicating the rated speed in

MPH or a letter rating as listed by Tire and Rim Association Year Book, and the

rated speed does not exceed 81 MPH or an "M" rating; or

(ii) the tire's speed rating molded on the sidewall is 87 MPH or an "N" rating, and in

either case the tire's maximum pressure and maximum load limit are molded on

the sidewall and either

(1) both exceed the maximum pressure and maximum load limit for any tire of the

same size designation in either the passenger car or light truck section of the Tire

and Rim Association Year Book; or

4

(2) if the maximum cold inflation pressure molded on the tire is less than any cold inflation pressure listed for that size designation in either the passenger car or light truck section of the Tire and Rim Association Year Book, the maximum load limit molded on the tire is higher than the maximum load limit listed at that cold inflation pressure for that size designation in either the passenger car or light truck section of the Tire and Rim Association Year Book;

(6) tires designed and marketed exclusively for off-road use and which, in addition, exhibit each of the following physical characteristics:

    (a) The size designation and load index combination molded on the tire's sidewall are listed in the off-the-road, agricultural, industrial or ATV section of the Tire and Rim Association Year Book,

    (b) in addition to any size designation markings, the tire incorporates a warning, prominently molded on the sidewall, that the tire is "Not For Highway Service" or "Not for Highway Use,"

    (c) the tire's speed rating is molded on the sidewall, indicating the rated speed in MPH or a letter rating as listed by the Tire and Rim Association Year Book, and the rated speed does not exceed 55 MPH or a "G" rating, and

    (d) the tire features a recognizable off-road tread design;

(7) Tires designed and marketed for off-road use as all-terrain-vehicle (ATV) tires or utility-terrain-vehicle (UTV) tires, and which, in addition, exhibit each of the following characteristics:

    (a) the tire's speed rating is molded on the sidewall, indicating the rated speed in MPH or a letter rating as listed by the Tire and Rim Association Year Book, and the rated speed does not exceed 87 MPH or an "N" rating, and

    (b) both of the following physical characteristics are satisfied:

5

(i)     the size designation and load index combination molded on the tire's sidewall does not match any of those listed in the passenger car or light truck sections of the Tire and Rim Association Year Book, and

(ii)    the size designation and load index combination molded on the tire's sidewall matches any of the following size designation (American standard or metric) and load index combinations:

| American Standard Size | Metric Size | Load Index |
|---|---|---|
| 26x10R12 | 254/70R/12 | 72 |
| 27x10R14 | 254/65R/14 | 73 |
| 28x10R14 | 254/70R/14 | 75 |
| 28x10R14 | 254/70R/14 | 86 |
| 30X10R14 | 254/80R/14 | 79 |
| 30x10R15 | 254/75R/15 | 78 |
| 30x10R14 | 254/80R/14 | 90 |
| 31x10R14 | 254/85R/14 | 81 |
| 32x10R14 | 254/90R/14 | 95 |
| 32x10R15 | 254/85R/15 | 83 |
| 32x10R15 | 254/85R/15 | 94 |
| 33x10R15 | 254/90R/15 | 86 |
| 33x10R15 | 254/90R/15 | 95 |
| 35x9.50R15 | 241/105R/15 | 82 |
| 35x10R15 | 254/100R/15 | 97 |

The products covered by this *Order* are currently classified under the following Harmonized Tariff Schedule of the United States (HTSUS) subheadings:  4011.10.10.10, 4011.10.10.20, 4011.10.10.30, 4011.10.10.40, 4011.10.10.50, 4011.10.10.60, 4011.10.10.70,

4011.10.50.00, 4011.20.10.05, and 4011.20.50.10.  Tires meeting the scope description may also enter under the following HTSUS subheadings:  4011.90.10.10, 4011.90.10.50, 4011.90.20.10, 4011.90.20.50, 4011.90.80.10, 4011.90.80.50, 8708.70.45.30, 8708.70.45.46, 8708.70.45.48, 8708.70.45.60, 8708.70.60.30, 8708.70.60.45, and 8708.70.60.60.  While HTSUS subheadings are provided for convenience and for customs purposes, the written description of the subject merchandise is dispositive.

## III.    BACKGROUND

On March 12, 2024, UCS filed a scope ruling application requesting that Commerce determine whether certain T-type tires for passenger vehicles produced by Cheng Shin and imported by UCS are outside the scope of the *Order*.[4]  According to UCS, the numerical size designation of these tires is T155/60R18.[5]  On April 11, 2024, Commerce initiated a scope inquiry pursuant to 19 CFR 351.225(d)(1).[6]  No interested parties submitted comments or factual information to rebut, clarify, or correct factual information contained in UCS's Scope Request.

On August 5, 2024, Commerce issued a final scope ruling, in which it determined that pursuant to 19 CFR 351.225(k)(1), Cheng Shin's T-type tires, imported by UCS, were not covered by the scope of the *Order* based on the scope language,[7] or a prior scope determination,[8] and that there was no record evidence suggesting that the product at-issue is of a size that fits passenger cars and light trucks.[9]  Specifically, Commerce found Cheng Shin's T-type tires

---

[4] *See* UCS's Letter, "Request for Scope Ruling," dated March 12, 2024 (UCS's Scope Request).
[5] *Id*. at 2, 7.
[6] *See* Memorandum, "Initiation of Cheng Shin Scope Inquiry," dated April 11, 2024.
[7] *See* Memorandum, "Final Scope Ruling on the Antidumping Dumping Duty Order on Passenger Vehicle and Light Truck Tires from Taiwan:  Request by Cheng Shin Rubber Ind. Co. Ltd.," dated August 5, 2024 (Final Scope Ruling) at 7-8.
[8] *Id*. at 8 (citing *Notice of Scope Rulings,* 82 FR 26454 (June 7, 2017) and Memorandum, "Scope Ruling – American Omni and Unicorn Tire," dated May 27, 2016).
[9] *Id.* at 1, 8-9.  Prior to issuing the final scope ruling, United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (the petitioner) requested that Commerce issue a preliminary determination, and Commerce declined the request.  *See* Petitioner's Letter, "Petitioner's Request for a Preliminary Determination," dated June 17, 2024 (Petitioner's Request for Preliminary Determination); *see also* Cheng Shin's Letter, "Response to Petitioner's June 17 Letter," dated June 21, 2024.

outside the scope of the *Order* because they have a size designation of T155/60R18; they lack a "P" or "LT" prefix and the numerical size designation is not listed in the "P" or "LT" tables of the Tire and Rim Association (TRA) Year Book, as updated annually; and no record evidence suggested that the product at-issue is of a size that fits passenger cars and light trucks.[10]

The petitioner challenged the Final Scope Ruling before the Court.  On June 9, 2025, the Court issued its *Remand Order*, holding that Commerce's Final Scope Ruling was not in accordance with law and not supported by substantial evidence.  In its opinion, the Court stated that Commerce failed to explain how evidence supported its determination that Cheng Shin's tires do not fit passenger cars or light trucks.[11]  The Court ruled that the plain language of the scope is unambiguous and, therefore, that examination of 19 CFR 351.225(k)(1) sources is unnecessary.[12]  Specifically, the Court held that for spare tires lacking a "P" or "LT" prefix, the plain language of the *Order* includes those tires in the scope regardless of their intended use, as long as the tire is of a size that fits passenger cars or light trucks.[13]  As such, the Court held that the plain language of the *Order* requires that inclusion in the scope hinges on the size of the tire and whether it fits passenger cars or light trucks.[14]  According to the Court, "{t}here is no dispute that Cheng Shin's spare tires are of a size that fit passenger cars because spare tires are meant to be used on passenger cars."[15]  Based on its review of the record and Commerce's analysis, the Court held that Commerce failed to explain how any evidence supported its determination that Cheng Shin's tires do not fit passenger cars or light trucks such that they are not included within the *Order*'s scope.[16]

---

[10] *See* Final Scope Ruling at 7-9.
[11] *See* Remand Order at 16.
[12] *Id*. at 13.
[13] *Id*. at 13-14.
[14] *Id*. at 14.
[15] *Id*. at 15-16.
[16] *Id*. at 17.

On August 11, 2025, we released our Draft Remand Results to interested parties.[17]  On August 18, 2025, UCS timely submitted comments on the Draft Remand Results.[18]

## IV.    ANALYSIS

Pursuant to the Court's *Remand Order*, Commerce reconsidered whether Cheng Shin's T-type tires, imported by UCS, are covered by the scope of the *Order*.  As such, we considered the product description in UCS's scope ruling request and supplemental responses, as well as the scope language of the *Order*.  Based on our analysis, below, in accordance with the Court's opinion and *Remand Order*, we find that Cheng Shin's T-type tires fall within the description of in-scope merchandise as tires which fit passenger cars.  Further, as detailed below, we find that Cheng Shin's tires do not meet the criteria for the scope's temporary tire exclusion.  Therefore, we find that Cheng Shin's T-type tires are covered by the scope of the *Order*.

### a.   Legal Framework

When a request for a scope ruling is filed, Commerce examines the scope language of the order{s} at issue and the description of the product contained in the scope ruling application.[19] Pursuant to Commerce's regulations, in determining whether a product is covered by the scope of an order, Commerce may make its determination on the basis of the scope language alone where such language is dispositive.[20]

Commerce may also take into account primary interpretive sources in determining a scope ruling, including the descriptions of the merchandise contained in the petition and investigation; previous or concurrent determinations by Commerce, including prior scope rulings, memoranda, or clarifications pertaining to the order at issue or other orders with same or

---

[17] *See* Commerce's Letter, "Draft Results of Redetermination Pursuant to Court Remand," issued August 11, 2025 (Draft Remand Results).
[18] *See* UCS's Letter, "Comments on Department's August 11 Draft Remand Redetermination," dated August 18, 2025 (UCS's Remand Comments).
[19] *See Walgreen Co. v. United States*, 620 F.3d 1350, 1357 (Fed. Cir. 2010).
[20] *See* 19 CFR 351.225(k)(1).

similar language; and determinations of the U.S. International Trade Commission (ITC) pertaining to the order at issue.[21]  Additionally, Commerce may consider secondary interpretive sources, such as any other determinations of Commerce or the ITC, U.S. Customs and Border Protection (CBP) rulings or determinations, industry usage, dictionaries, and any other relevant record evidence, in determining a scope ruling.[22]  However, to the extent that secondary interpretive sources conflict with primary interpretive sources under 19 CFR 351.225(k)(1)(i), the primary interpretive sources will normally control.[23]  If Commerce determines that these sources are determinative, it will issue a final scope ruling as to whether the merchandise is subject to the scope of the order(s).[24]

Where the descriptions of the merchandise in the sources described in 19 CFR 351.225(k)(1) are not dispositive, Commerce will consider the five additional factors set forth at 19 CFR 351.225(k)(2)(i).  These factors are:  (A) the physical characteristics of the merchandise; (B) the expectations of the ultimate purchasers; (C) the ultimate use of the product; (D) the channels of trade in which the product is sold; and (E) the manner in which the product is advertised and displayed.  In the event of a conflict between these factors, the physical characteristics of the merchandise will normally be allotted greater weight than other factors.[25]

Commerce's scope rulings are made on a case-by-case basis, and may be applied on a producer-specific, exporter-specific, or importer-specific basis, or some combination thereof, or to all products from the same country with the same relevant physical characteristics as the product at issue, on a country-wide basis, regardless of the producer, exporter, or importer of the products.[26]

---

[21] *See* 19 CFR 351.225(k)(1)(i).
[22] *See* 19 CFR 351.225(k)(1)(ii).
[23] *Id*.
[24] *See* 19 CFR 351.225(h).
[25] *See* 19 CFR 351.225(k)(2)(ii).
[26] *See* 19 CFR 351.225(m)(1).

### b. Scope Analysis

The Court held that Commerce failed to explain how evidence supported its

determination that Cheng Shin's tires do not fit passenger cars or light trucks.[27]  In its opinion,

the Court concluded that for tires lacking a "P" or "LT" prefix, the plain language of the *Order* is

clear and unambiguous that such tires are included the scope regardless of their intended use, as

long as the tire is of a size that fits passenger cars or light trucks.[28]  The Court referred to scope

language describing merchandise included in the scope that:

> All tires with a "P" or "LT" prefix, and all tires with an "LT" suffix in their sidewall
> markings are covered by this *Order* regardless of their intended use.  In addition,
> all tires that lack a "P" or "LT" prefix or suffix in their sidewall markings, as well
> as all tires that include any other prefix or suffix in their sidewall markings, are
> included in the scope, regardless of their intended use, as long as the tire is of a size
> that fits passenger cars or light trucks.[29]

According to the Court, this plain language of the *Order* requires that inclusion in the scope

hinges on the size of the tire and whether it fits passenger cars or light trucks.[30]  The Court also

held that this plain language of the scope is clear and unambiguous and, therefore, that

examination of 351.225(k)(1) sources pursuant to Commerce's scope regulations is

unnecessary.[31]

In light of the Court's opinion, we reconsidered whether Cheng Shin's T-type tires,

imported by UCS, fell within the scope language and reexamined record evidence concerning

whether Cheng Shin's spare tires fit passenger cars.  UCS's scope ruling request includes

evidence that the T-type tire model does not have the "P" or "LT" prefix in its sidewall molding

and has a tire size designation of T155/60R18.[32]  In UCS's scope ruling request, it describes

Cheng Shin's T-type tires as temporary use spare tires used exclusively as a temporary spare

---

[27] *See Remand Order* at 16.
[28] *Id*. at 13-14.
[29] *See Remand Order* at 13-14; *see also Order*, 86 FR at 38012.
[30] *See Remand Order* at 14.
[31] *Id*. at 13.
[32] *See* UCS's Scope Request at 7.

tires for passenger vehicles.[33]  Further, UCS submitted an invoice for T-type tires that listed the

tires in question under the heading "CAR TIRES."[34]  No party submitted evidence which

contradicts UCS's product description.

Based on our examination of this evidence and the Court's opinion, on remand, we agree

that Cheng Shin's spare tires are of a size that fit passenger cars because spare tires are meant to

be used on passenger cars.[35]  Accordingly, we have reconsidered whether Cheng Shin's tires fall

within the scope in accordance with the Court's *Remand Order*.  For this final redetermination,

we find that Cheng Shin's T-type tires, imported by UCS, fall within the description of in-scope

merchandise based on the *Order*'s plain language because they are tires which fit passenger cars

as supported by record evidence, consistent with the Court's opinion.[36]

Second, considering the record evidence, on remand, we have determined to further

analyze whether Cheng Shin's spare tires satisfy the *Order*'s exclusion for temporary tires.  With

respect to the temporary tire exclusion, the *Order* states:

Specifically excluded from the scope are …

(4) tires designed and marketed exclusively as temporary use spare tires for
passenger vehicles which, in addition, exhibit each of the following physical
characteristics:

> (a) the size designation and load index combination molded on the tire's
> sidewall are listed in Table PCT-1R ("T" Type Spare Tires for Temporary
> Use on Passenger Vehicles) or PCT-1B ("T" Type Diagonal (Bias) Spare
> Tires for Temporary Use on Passenger Vehicles) of the Tire and Rim
> Association Year Book,

> (b) the designation "T" is molded into the tire's sidewall as part of the size
> designation, and,

---

[33] *See* UCS's Scope Request at 4; UCS's Scope Request at Attachments 3 and 4; *see also* UCS's Letter, "Remand Questionnaire Response," dated June 26, 2025 (UCS's June 26, 2025 Remand QR) at Attachment 2.
[34] *See* Petitioner's Letter, "Petitioner's Request to Reconsider Scope Ruling Determination," dated August 8, 2024 (Petitioner's Request to Reconsider) at 4; *see also* UCS's Scope Request at Attachment 9.
[35] *See Remand Order* at 15-16.
[36] *Id*.

> (c) the tire's speed rating is molded on the sidewall, indicating the rated speed in MPH or a letter rating as listed by Tire and Rim Association Year Book, and the rated speed is 81 MPH or a "M" rating, {…}.[37]

As stated above, for this final redetermination, Commerce finds that Cheng Shin's T-type tires, imported by UCS, fall within the *Order*'s description of in-scope merchandise as tires which fit passenger cars. UCS's scope ruling request indicates that Cheng Shin's T-type tires are "designed and marketed exclusively as temporary use spare tires for passenger vehicles" because the tires are stamped "TEMPORARY USE ONLY."[38] UCS also provided photographic evidence showing that the designation "T" is molded into the tire's sidewall as part of the size designation.[39] Additionally, UCS submitted photo documentation which shows an "M" molded into the sidewall of the tire at-issue.[40] However, the size designation and load index combination molded on the sidewall of Cheng Shin's T-type tires is not listed in Table PCT-1R or PCT-1B of the 2019 Tire and Rim Association Year Book, as required by subsection (a) of the *Order*'s temporary tire exclusion.[41] As such, Cheng Shin's T-type tires do not satisfy the requirements for the scope's temporary tire exclusion. Thus, Commerce finds that these tires are within the scope of the *Order*.

## V.    COMMENTS ON DRAFT RESULTS OF REDETERMINATION

On August 11, 2025, we released our Draft Remand Results to interested parties.[42] On August 18, 2025, we received timely comments from UCS,[43] which we address below.

---

[37] *See Order*, 86 FR at 38011.

[38] *See* UCS's Scope Request at Attachments 3 and 4; *see also* UCS's June 26, 2025 Remand QR at Attachment 2.

[39] *See* UCS's Scope Request at Attachments 3 and 4; *see also* UCS's June 26, 2025 Remand QR at Attachment 2.

[40] *See* UCS's June 26, 2025 Remand QR at Attachment 2.

[41] *See Order*, 86 FR at 38011-13 and Memorandum, "2019 Tire and Rim Association Year Book Excerpt," dated August 5, 2025; *see also* UCS's Scope Request at Attachments 3 and 4 and UCS's June 26, 2025 Remand QR at Attachment 2.

[42] *See* Draft Remand Results.

[43] *See* UCS's Remand Comments.

**Comment 1:  UCS's T-Type Spare Tire is Not "a Size that Fits" Passenger Cars**

*UCS's Comments*

The following is a verbatim summary of arguments submitted by UCS.  For further details, see the UCS's Remand Comments at 4-9.

> {Commerce's} decision that UCS's T-Type spare tire falls within the scope of the order as a tire that "is a size that fits" passenger cars contradicts the plain language of the scope.  {Commerce's} entire analysis of whether UCS's T-Type spare tire is "a size that fits" passenger cars was based on solely on evidence of the intended use of the spare tire.  However, the plain language of the scope makes clear that the only tires included in the scope are those that have a "tire size designation" for a passenger vehicle or light truck.  The scope language also explicitly states that the intended use of the tire is irrelevant to the scope determination.  Moreover, the scope language states that the Tire Rim Association (TRA) Year Book, "as updated annually" should be used for purposes of determining whether the tire, based on its numerical size designation, is "a size that fits" a passenger car or light truck.  And, {Commerce} has previously held that the scope language, "as updated annually" to mean the updated TRA Year Book available at the time of its ruling should be used for the scope determination and recognized that the scope analysis for a particular tire may change year-to-year as a result.

**Commerce's Position:**

First, the relevant scope language states that, "all tires that lack a 'P' or 'LT' prefix or suffix in their sidewall markings … are included in the scope, regardless of their intended use, as long as the tire is of a size that fits passenger cars …."[44]  We find that this language means that intended use does not remove a product from scope coverage where the "tire is of a size that fits passenger cars …."  Our reading is consistent with the Court's holding that the plain language of the *Order* requires that spare tires are in scope if the tire is of a size that fits passenger cars or light trucks.[45]  According to the Court, "{t}here is no dispute that Cheng Shin's spare tires are of a size that fit passenger cars because spare tires are meant to be used on passenger cars."[46]  In light of the Court's opinion, on remand, we reconsidered whether Cheng Shin's T-type tires fall

---

[44] *See Order*, 86 FR at 38012.
[45] *See Remand Order* at 14-15 ("The Court notes that the plain language of the *Order* covers all tires that fit passenger cars or light trucks, 'regardless of their intended use.'" (quoting *Order*, 86 FR at 38012)).
[46] *Id*. at 15-16.

within the scope and reexamined record evidence concerning whether the product fit passenger cars.[47]  Based on our examination of the record, on remand, we found that UCS's description of the merchandise and other record evidence indicating that the T-type tires are used as temporary spare tires for passenger vehicles support that the tires are of a size that fits passenger cars.[48]  As a result, consistent with the Court's *Remand Order*, we determined that Cheng Shin's T-type tires, imported by UCS, fall within the description of in-scope merchandise because they are tires which fit passenger cars.[49]

Second, there is no language in the scope which dictates that "passenger vehicle or light truck size designation" refers to a particular standard or list of numerical codes limited by the industry and UCS fails to cite any authority or record evidence for its argument that the TRA Year Book identifies a complete list of size designations or sizes for tires that fit passenger cars and light trucks.[50]  The scope covers passenger vehicles and light truck tires, specifying that:

> Passenger vehicle and light truck tires are new pneumatic tires, of rubber, with a passenger vehicle or light truck size designation. … Subject tires may also have the following prefixes or suffix in their tire size designation, … on the sidewall of the tire:
>
>> Prefix designations:
>> P—Identifies a tire intended primarily for service on passenger cars.
>> LT—Identifies a tire intended primarily for service on light trucks.
>> Suffix letter designations:
>> LT—Identifies light truck tires for service on trucks, buses, trailers, and multipurpose passenger vehicles used in nominal highway service.
>
> All tires with a "P" or "LT" prefix, and all tires with an "LT" suffix … are covered by the order regardless of their intended use. In addition, all tires that lack a "P" or "LT" prefix on their sidewall markings, as well as all tires that include any other prefix or suffix in their sidewall markings, are included in the scope, regardless of their intended use, as long as the tire is of a size that fits passenger cars and light trucks. Sizes that fit passenger cars and light trucks *include, but are not limited to,* the numerical size designations listed in the passenger car section or

---

[47] *See* Draft Remand Results at 11-13.
[48] *Id.* at 11-13 (citing UCS's Scope Request at 4; UCS's Scope Request at Attachments 3 and 4; *see also* UCS's June 26, 2025 Remand QR at Attachment 2; Petitioner's Request to Reconsider at 4).
[49] *See* Draft Remand Results at 13.
[50] *See* UCS's Remand Comments at 7.

light truck section of the Tire and Rim Association Year Book, as updated annually. The scope includes all tires that are of a size that fits passenger cars or light trucks, unless the tire falls within one of the specific exclusions below.[51]

The plain language of the scope indicates that scope coverage is not determined solely by whether the numerical size designation of the tire is listed in the TRA Year Book. Rather, the language expressly provides that the scope includes "all tires that are of a size that fits passenger cars or light trucks unless the tire falls within one of the specific exclusions," and "{s}izes that fit passenger cars and light trucks *include, but are not limited to*, the numerical size designations listed in the passenger car section or light truck section of the TRA Year Book, as updated annually."[52]

As stated in the Draft Remand Results, we find that Cheng Shin's T-type tires, imported by UCS, are of a size that fits passenger cars.[53] UCS, itself, indicated as much in its underlying scope ruling request, as it described the T-type tires as "temporary use spare tires used exclusively as a temporary spare tire for passenger vehicles."[54] Logic dictates that spare tires "used exclusively as a temporary spare tire for passenger vehicles" are of a size that fits passenger cars.[55] Further, UCS supplied additional evidence on the record which demonstrates the T-type tires are of a size that fits passenger cars, *i.e.*, an invoice listing the tires as "CAR TIRES."[56] In addition, we note that Cheng Shin's T-type tires, which have a size designation of T155/60R18, are of a size that is included in the PCT-1B table of the TRA Year Book for 2025.[57] UCS also included pictures of a T-type tire showing the size designation.[58] We find this record evidence supports that Cheng Shin's T-type tires are "of a size that fits passenger cars" and that

---

[51] *See Order*, 86 FR at 38012 (emphasis added).
[52] *Id.* at Appendix.
[53] *See* Draft Remand Results at 12-14.
[54] *See* UCS's Scope Request at 4.
[55] *See e.g.*, *Remand Order* at 15-16 (reasoning that "{t}here is no dispute that Cheng Shin's spare tires are of a size that fit passenger cars because spare tires are meant to be used on passenger cars.").
[56] *See* UCS's Scope Request at Attachment 9.
[57] *See* UCS's June 26, 2025 Remand QR at Attachment 1-D.
[58] *See* UCS's June 26, 2025 Remand QR at Attachment 2.

the numerical designation is not specifically included in an industry listing does not detract from our conclusion based on this evidence.

UCS also argues that it is not feasible for CBP to administer the *Order* if the agency has to determine the intended use of each imported tire.[59]   However, the plain language of the *Order* requires that, regardless of use, the spare tires are in scope if the tire is of a size that fits passenger cars or light trucks.[60] As such, CBP need not determine an intended use of the imports because the key inquiry is whether the tire is of a size that fits a passenger car or light truck.  In this case, record evidence indicates that the T-type tire imports are invoiced as "CAR TIRES,"[61] which, as explained above, we find supports that the product is of a size that fits passenger cars, along with other record evidence.[62]   Accordingly, we disagree that the scope of the *Order* presents an issue of administrability.

To the extent that UCS argues that the scope language explicitly states that the TRA Year Book "as updated annually" *can* be used by Commerce to identify whether the tire is of a size that fits passenger cars or light trucks, we agree.  However, we do not agree that the scope *requires* Commerce to determine whether a product is covered by the *Order* based on the updated annual TRA Year Book.[63]   As outlined above, the scope language states that, "all tires that lack a 'P' or 'LT' prefix or suffix …, as well as all tires that include any other prefix or suffix in their sidewall markings, are included in the scope … a*s long as the tire is of a size that fits passenger cars and light trucks,*" and "{s}izes that fit passenger cars and light trucks *include, but are not limited to,* the numerical size designations listed in the passenger car section or light truck section of the Tire and Rim Association Year Book, as updated annually."[64]   As such, the

---

[59] *See* UCS's Remand Comments at 9.
[60] *See e.g., Order*, 86 FR at 38012; *see also Remand Order* at 14-15.
[61] *See* UCS's Scope Request at Attachment 9.
[62] *See* Draft Remand Results at 11-13.
[63] *See* UCS's Remand Comments at 10.
[64] *See Order*, 86 FR at 38012 (emphasis added).

key inquiry under this plain language is whether the tire at issue is of a size that fits passenger cars or light trucks.

UCS refers to the order on passenger vehicles and light truck tires from China, arguing that Commerce has previously addressed the meaning of identical "as updated annually" scope language in a scope ruling under the *Passenger Tires from China Orders*.[65]  However, the *Passenger Tires from China Orders* and the instant passenger tires from Taiwan *Order* are similar, but different in a relevant way.  For example, the *Passenger Tires from China Orders*' scope states that "all tires that lack a 'P' or 'LT' prefix or suffix … as well as all tires that include any other prefix or suffix … are included in the scope, … *as long as the tire is of a size that is among the numerical size designations listed in the passenger car section of the TRA Yearbook, as updated annually*."[66]  That is, the *Passenger Tires from China Orders*' scope language explicitly specifies that scope coverage hinges on the whether the tire is of a size that is among the numerical size designations listed in relevant sections of the annual update of the TRA Year Book.  In accordance with this language, Commerce determined that the scope of merchandise subject to the *Passenger Tires from China Orders* will change as the TRA Year Book is revised.[67]  But, the passenger tires from Taiwan *Order* scope, here, hinges on whether the tire is "*of a size that fits passenger cars and light trucks,*" where "{s}izes that fit passenger cars and light trucks *include, but are not limited to,* the numerical size designations listed in the passenger car section or light truck section of the Tire and Rim Association Year Book, as updated annually."[68]  As a result, the plain language of the passenger tires from Taiwan *Order*'s

---

[65] *See* UCS's Remand Comments at 8 and 13 (citing *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China:  Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 FR 47902 (August 10, 2015) (*Passenger Tires from China Orders*); and Memorandum, "Scope Ruling Regarding Spare Tires Imported by Maxxis International," dated May 1, 2018 (Maxxis Scope Ruling), at 8).
[66] *See Passenger Tires from China Orders*, 80 FR at 47902 (emphasis added).
[67] *See* Maxxis Scope Ruling at 8; *see also* UCS's Remand Comments at 8 (citing Maxxis Scope Ruling at 8).
[68] *See Order*, 86 FR at 38012.

18

scope does not dictate an interpretation identical to that of the *Passenger Tires from China Orders* and, therefore, we have based our interpretation on the plain scope language of the passenger tires from Taiwan *Order*.[69]  Accordingly, we disagree that the determination of whether Cheng Shin's T-type tires fall within the scope of the *Order* (*i.e.*, are of a size that fits passenger cars or light trucks) is "governed" by a specific industry list (*i.e.*, 2024, 2025, *etc.*).[70]  Nevertheless, as UCS pointed out, the T-type tire is in the 2025 TRA Year Book.[71]

**Comment 2:   Commerce is Not Required to Find that UCS's T-Type Spare Tire "is a Size that Fits" Passenger Cars under the Court's Remand Order**

*UCS's Comments*

The following is a verbatim summary of arguments submitted by UCS. For further details, see the UCS's Remand Comments at 10-11.

> The Court's decision does not compel {Commerce} to find that UCS's T-Type spare tire is "a size that fits" passenger cars or light trucks for purposes of the scope. The portions of the Court's decision cited by {Commerce} to support its conclusion that UCS's T-Type spare tire is "a size that fits" passenger cars because it would be used on a passenger car is mere dicta.  The Court's actual holding was only that {Commerce's} initial scope ruling — which found that there was no evidence that the tire was "a size that fits passenger cars" — was not supported by substantial evidence.  As such, the Court indicated that {Commerce} would need to explain how it reached that conclusion in light of evidence that the tire was intended for use on a passenger car.

**Commerce's Position:**

The Court held that Commerce's determination that Cheng Shin's T-type tires, imported by UCS, were outside the scope of the *Order* was not in accordance with law nor supported by substantial evidence.[72]  Specifically, the Court held that Commerce's determination that the scope requires tires to be for regular use was not in accordance with law and that, for spare tires lacking a "P" or "LT" prefix, like UCS's T-type tires, the plain language of the *Order* includes those tires regardless of their intended use, as long as the tire is of a size that fits passenger cars

---

[69] *See Order*, 86 FR at 38013.
[70] *See* UCS's Remand Comments at 11.
[71] *See* UCS's June 26, 2025 Remand QR at Attachment 1-D.
[72] *See Remand Order* at 18.

or light trucks.[73]  The Court also held that Commerce failed to explain how evidence supported its determination that "no evidence on the record" suggested that the T-type tire "is of a size that fits passenger cars and light trucks."[74]  According to the Court, "{t}here is no dispute that Cheng Shin's spare tires are of a size that fit passenger cars because spare tires are meant to be used on passenger cars," and Commerce's determination in this case turns on the assumption that the tires that fit passenger cars must be for regular use, not for temporary use as a spare tire.[75] The Court stated that the plain language of the *Order* does not mention "regular use" and only requires that tires in scope must be of a size that fit passenger cars.[76]  For these reasons, the Court remanded the scope ruling back to Commerce.[77]

In light of the Court's *Remand Order* and opinion, we considered record information to determine whether Cheng Shin's T-type tires, imported by UCS, fall within the scope language as tires which are of a size that fit passenger cars.[78]  Based on our examination of the record evidence, considering the Court's opinion, on remand, we determined that Cheng Shin's spare tires are of a size that fit passenger cars because the spare tires are meant to be used on passenger cars.[79]  Accordingly, we reconsidered whether Cheng Shin's tires fall within the scope in accordance with the Court's *Remand Order* and found that Cheng Shin's T-type tires, imported by UCS, fall within the description of in-scope merchandise based on the *Order*'s plain language because they are tires which fit passenger cars as supported by record evidence.

---

[73] *Id*. at 13-14.
[74] *See Remand Order* at 16 (citing Final Scope Ruling at 8).
[75] *Id*. at 15-16.
[76] *Id*. at 16.
[77] *Id*. at 18.
[78] *See* Draft Remand Results at 11-13.
[79] *Id*.

**Comment 3:  Commerce Improperly Relied on the 2019 TRA Year Book for its Analysis of the Passenger-Vehicle Spare Tire Scope Exclusion**

*UCS's Comments*

The following is a verbatim summary of arguments submitted by UCS.  For further details, see the UCS's Remand Comments at 11-15.

> {Commerce's} reliance on the 2019 TRA Year Book to justify its determination that USC's T-Type spare tire did not meet the terms of the exclusion for passenger-vehicle spare tires is contrary to the plain language of the scope and {Commerce's} past decisions.  The scope language explicitly states that the determination of whether merchandise is within the scope will be based on the TRA Year Book "as updated annually."  As a result, {Commerce} has previously determined that the updated TRA Year Book available at the time of its scope ruling should be used for purposes of the passenger-vehicle spare tire exclusion.  In that regard, because {Commerce} reopened the record, its remand redetermine in this case will be a distinct scope ruling based on a different record than the initial scope ruling in this case.  Therefore, the 2025 TRA Year Book is the TRA Year Book available at the time of its ruling for purposes of the remand redetermination.  And, since the tire size designation of UCS's T-Type spare tire is included in the PCT-1B table of the 2025 TRA Year Book and meets all the other requirements of the exclusion for passenger-vehicle spare tires, {Commerce} must find that the tire is excluded from the scope of the order in the final remand redetermination.

**Commerce's Position:**

> The temporary tire exclusion in the scope states:

> Specifically excluded from the scope are …

> (4) tires designed and marketed exclusively as temporary use spare tires for passenger vehicles which, in addition, exhibit each of the following physical characteristics:

> (a) the size designation and load index combination molded on the tire's sidewall are listed in Table PCT-1R ("T" Type Spare Tires for Temporary Use on Passenger Vehicles) or PCT-1B ("T" Type Diagonal (Bias) Spare Tires for Temporary Use on Passenger Vehicles) of the Tire and Rim Association Year Book,

> (b) the designation "T" is molded into the tire's sidewall as part of the size designation, and,

> (c) the tire's speed rating is molded on the sidewall, indicating the rated speed in MPH or a letter rating as listed by Tire and Rim Association Year Book, and the rated speed is 81 MPH or a "M" rating, {…}.[80]

---

[80] *See Order*, 86 FR at 38012 (temporary tire exclusion).

The plain language of the temporary tire scope exclusion's reference in subsection (a) to the TRA Year Book neither specifies a year nor includes the language "as updated annually." However, subsection (a) expressly limits the exclusion to the size designation and load index combinations listed in two tables, *i.e.*, PCT-1R and PCT-1B of the Tire and Rim Association Year Book. UCS noted that since 2019, the TRA Year Book has consolidated T-type tires under the PCT-1B table and does not include a PCT-1R table.[81] The two tables were available in the 2019 TRA Year Book, which was used in the investigation.[82]

Commerce's scope regulations provide that "in determining whether a product is covered by the scope of the order at issue, Commerce will consider the language of the scope and may make its determination on this basis alone if the language of the scope . . . is dispositive."[83] Additionally, the following primary interpretive sources may be taken into account: the descriptions of the merchandise contained in the petition pertaining to the order at issue; initial investigation; previous or concurrent determinations; and determinations and reports of the Commission.[84]

Because the scope language of the temporary tire exclusion does not specify what TRA Year Book Commerce must consider to determine whether a product satisfies subsection (a) of the exclusion criteria, consistent with section 351.225(k)(1) of Commerce's scope regulations, Commerce considered the descriptions of the merchandise contained in the petition pertaining to the *Order* at issue, which include Tables PCT-1R and PCT-1B of the 2019 TRA Year Book.[85] As stated above, UCS itself noted in its supplemental questionnaire response that since 2019, the

---

[81] *See* UCS's June 26, 2025 Remand QR at 2.
[82] *See* Memorandum, "2019 Tire and Rim Year Book Excerpt," dated August 5, 2025 at Attachment.
[83] *See* 19 CFR 351.225(k)(1).
[84] *See* 19 CFR 351.225(k)(1)(i).
[85] *See* Petitioners' Letter, "Petitions for the Imposition of Antidumping and Countervailing Duties: Passenger Vehicle and Light Truck Tires from Korea, Taiwan, Thailand, and Vietnam," dated May 13, 2020 at Exhibit I-7 (the Petition); *see also* 19 CFR 351.225(k)(1)(i)(A).

TRA Year Book no longer includes the PCT-1R table.[86]  As such, in accordance 19 CFR 351.225(k)(1), we find it appropriate to take into account the 2019 TRA Year Book in considering the scope language of the temporary tire exclusion to make our determination in this case.  Contrary to UCS's argument that our reliance on the 2019 TRA Year Book is contrary to the scope language, our reading of the scope of the *Order* accords with the plain scope language and Commerce's scope regulations and it avoids an interpretation which would render reference to Table PCT-1R superfluous, meaningless or surplusage.[87]

Moreover, the distinction between the language defining the scope of the *Order* and the exclusion from the *Order* necessitates Commerce's finding that the 2019 TRA Year Book in considering the scope language of the temporary tire exclusion to make our determination in this case.  While the language in the *Order* defining the tires included in the scope provides the TRA Year Book as an illustrative but non-exhaustive list "as updated annually," the temporary tire exclusion in the scope notably lacks any reference to annual updates.[88]  The reference to annual updates for the inclusions but not the exclusions indicates that annual updates shall only apply to the inclusion language.  An alternative reading would also create significant challenges for administrability.  While the reference to the TRA Year Book in the inclusion language is illustrative, the scope is ultimately set by reference to whether "the tire is of a size that fits passenger cars or light trucks."[89]  However, for the temporary tire exclusion, inclusion in the TRA Year Book is a requirement for an exclusion.[90]  Allowing annual updates in such a scenario would result in the scope of the *Order* changing continuously and would improperly give

---

[86] *See* UCS's June 26, 2025 Remand QR at 2.
[87] *See SMA Surfaces, Inc. v. United States*, 617 F. Supp. 3d 1263, 1275 (Ct. Int'l Trade 2023).
[88] *See Order*, 86 FR at 38012 (temporary tire exclusion).
[89] *Id.*
[90] *Id.*

significant authority to third parties to control the scope of the *Order* through the annual updates of the TRA Year Book.

Regarding UCS's arguments concerning the *Passenger Tires from China Orders* and the Maxxis scope ruling,[91] as outlined above, we disagree that the *Passenger Tires from China Orders* and the passenger tires from Taiwan *Order* scopes are identical.  In fact, as explained above, they are different as relevant here. Notably, the *Passenger Tires from China Orders*' scope states:

> In addition, all tires that lack a "P" or "LT" prefix or suffix in their sidewall markings, as well as all tires that include any other prefix or suffix in their sidewall markings, are included in the scope, regardless of their intended use, *as long as the tire is of a size that is among the numerical size designations* listed in the passenger car section or light truck section of the *Tire and Rim Association Year Book*, as updated annually, unless the tire falls within one of the specific exclusions set out below.  (Emphasis added.)

Whereas the passenger tires from Taiwan *Order* scope states:

> In addition, all tires that lack a "P" or "LT" prefix or suffix in their sidewall markings, as well as all tires that include any other prefix or suffix in their sidewall markings, are included in the scope, regardless of their intended use, *as long as the tire is of a size that fits passenger cars or light trucks*. Sizes that fit passenger cars and light trucks *include, but are not limited to,* the numerical size designations listed in the passenger car section or light truck section of the Tire and Rim Association Year Book, as updated annually. The scope includes all tires that are of a size that fits passenger cars or light trucks, unless the tire falls within one of the specific exclusions set out below.  (Emphasis added.)

Notably, the *Passenger Tires from China Orders*' scope ties its exclusions back to the TRA Year Book referenced in the sentence prior with the updated annually language, whereas the passenger tires from Taiwan *Order* scope does not include that condition.  Giving effect to the change in the scope language requires a different interpretation of the scope of the orders. Accordingly, we are not bound to the interpretation in the *Passenger Tires from China Orders* and in the Maxxis scope ruling under the *Passenger Tires from China Orders*. Our interpretation is based on the

---

[91] *See* UCS's Remand Comments at 12-13.

plain language in the passenger tires from Taiwan *Order*, here, in accordance with 19 CFR 351.225(k)(1).

## VI.     FINAL RESULTS OF REDETERMINATION

For these final results of redetermination, we find that Cheng Shin's T-Type tires, imported by UCS, are within the scope of the *Order*.  Should the Court affirm the final results of redetermination, Commerce intends to publish a notice of amended scope determination in the *Federal Register* and issue appropriate instructions to CBP, consistent with the discussion above.

9/10/2025

X _Chris J Abbott_

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance