UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and, <br><br> CHENG SHIN RUBBER U.S.A., INC., <br><br> Defendant-Intervenor. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Court No. 24-00165 |

## **DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully responds to the comments filed by Cheng Shin Rubber USA Inc. (Cheng Shin),[1] ECF No. 52, concerning the Department of Commerce's remand results in this matter, filed in accordance with this Court's decision and remand order in *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, v. United States and Cheng Shin*, 784 F. Supp. 3d 1385 (Ct. Int'l Trade June 9, 2025) (*United Steel*).  *See* Final Results of Redetermination

---

[1] Cheng Shin is the importer and requestor of the underlying scope ruling; and Cheng Shin Rubber Ind. Co. Ltd. is the producer of the product at-issue.  *See* Cheng Shin Scope Application, dated March 12, 2024 at 2 (P.R. 1, C.R. 1).

Pursuant to Court Remand, dated September 10, 2025 (ECF No. 45) (Remand Results). We respectfully request that the Court sustain the remand results because they comply with the Court's remand order and because they are supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

I.    **In Its Final Scope Ruling, Commerce Determined That Cheng Shin's T-Type Tires Are Not Covered by the Order**

This case concerns Commerce's final scope ruling, which Commerce issued after Cheng Shin requested that Commerce determine that a certain T-type tire model imported by Cheng Shin is outside the scope of the antidumping duty order on passenger vehicle and light truck tires (referred to for ease of reference as passenger tires) from Taiwan. *See* Cheng Shin Scope Application, dated March 12, 2024 at 2 (P.R. 1, C.R. 1)[2] (citing *Passenger Vehicle and Light Truck Tires from the Republic of Korea, Taiwan, and Thailand: Antidumping Duty Orders*, 86 Fed. Reg. 38,011 (Dep't of Commerce July 19, 2021) (*Order*)); Remand Results at 7.

The scope of the *Order* covers "passenger vehicle and light truck tires" which are "new pneumatic tires, of rubber, with a passenger vehicle or light truck size designation." *See* Remand Results at 2 (quoting *Order*, 86 Fed. Reg. at 38,012). The *Order* states that subject tires may have certain prefixes or suffix in their tire size designation and "{a}ll tires with a 'P' or 'LT' prefix, and all tires with an 'LT' suffix in their sidewall markings are covered … regardless of their intended use." *Order*, 86 Fed. Reg. at 38,012. In addition, "all tires that lack a 'P' or 'LT' prefix or suffix in their sidewall markings, as well as all tires that include any other prefix or

---

[2] Citations to "P.R." and "C.R." refer to documents contained in the public and confidential records, respectively, for Commerce's Final Scope Ruling. *See* ECF No. 20. Citations to "P.R.R." and "C.R.R." refer to documents contained in the public and confidential records, respectively, of Commerce's Remand Results. *See* ECF No. 46.

suffix in their sidewall markings, are included in the scope, regardless of their intended use, as long as the tire is of a size that fits passenger cars or light trucks", where "{s}izes that fit passenger cars and light trucks include, but are not limited to, the numerical size designations listed in the passenger car section or light truck section of the Tire and Rim Association Year Book, as updated annually."  *Id.*  The *Order* specifies that "{t}he scope includes all tires that are of a size that fits passenger cars or light trucks, unless the tire falls within one of the specific exclusions."  *Id.*  Relevant to this case, one exclusion is for temporary tires:

> tires designed and marketed exclusively as temporary use spare tires for passenger vehicles which, in addition, exhibit each of the following physical characteristics:  the size designation and load index combination molded on the tire's sidewall are listed in Table PCT-1R ('T' Type Spare Tires for Temporary Use on Passenger Vehicles) or PCT-1B ('T' Type Diagonal (Bias) Spare Tires for Temporary Use on Passenger Vehicles) of the Tire and Rim Association Year Book, the designation 'T' is molded into the tire's sidewall as a part of the size designation, and, the tire's speed rating is molded on the sidewall, indicating the rated speed in MPH or a letter rating as listed by the Tire and Rim Association Year Book, and the rated speed is 81 MPH or a 'M' rating … .

*Id.* at 38,013.

In its application for a scope ruling, Cheng Shin described its T-type tire as used exclusively as a temporary-use spare tire with a numerical size designation of T155/60R18, which Cheng Shin noted "is not listed in the passenger-car section or light-truck section of the {Tire and Rim Association} Year Book."  Scope Application at 2.  According to Cheng Shin, the T-type tire is a "mini" spare tire that does not meet the size or regulatory requirements for "regular-service" on passenger cars or light trucks.  *Id*. at 4 and Attachment 6.

Commerce conducted a scope inquiry and, on August 5, 2024, issued a final scope ruling that Cheng Shin's T-type tires are not covered by the *Order*.  Final Scope Ruling at 9 (P.R. 15, C.R. 4).  Commerce determined that the numerical size designation T155/60R18 of Cheng Shin's

T-type tires is "not listed in the passenger car section or light truck section of any of the {Tire and Rim Association} Year Books provided on the record" and "no evidence on the record … suggests the tire in question is of a size that fits passenger cars and light trucks." *Id*. at 8. Relying on the language in *Order* explaining that "{a}ll tires that lack a 'P' or 'LT' prefix or suffix…are included in the scope, regardless of their intended use, as long as the tires is of a size that fits passenger cars or light trucks," Commerce concluded that Cheng Shin's T-type tires were not within the scope. *Id*. at 7-8 (quoting *Order*, 86 Fed. Reg. at 28,012); *see also* Remand Results at 7-8.

## II.    The Court Held That Commerce's Scope Ruling Was Neither Lawful Nor Supported by Substantial Evidence And It Remanded for Further Consideration

After Commerce issued its final scope ruling, the petitioner, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (USW) filed a complaint on September 4, 2024, challenging Commerce's final scope ruling. *See generally* ECF No. 6 (Complaint); *see also* Remand Results at 8. Following briefing for judgment on the agency record and oral argument by the parties— USW (plaintiff), the United States (defendant), and Cheng Shin (defendant-intervenor)—the Court issued an order remanding the action to Commerce for further consideration. *See* Oral Arg.; *see also United Steel*, 784 F. Supp. 3d at 1385.

Specifically, the Court held that Commerce's determination that Cheng Shin's T-type tires were outside the scope of the *Order* was not in accordance with law nor supported by substantial evidence. *See generally United Steel*, 784 F. Supp. 3d at 1385. The Court reasoned that by the plain language of the *Order*, spare tires are in scope if the subject tire is of a size that fits passenger cars or light trucks and "{t}here is no dispute" that Cheng Shin's T-type spare tires are of a size that fit passenger cars "because spare tires are meant to be used on passenger cars."

4

*Id.* at 1392-93.  Based on its review of the Commerce's analysis and the record, the Court ruled that Commerce failed to explain how the record supported the determination that Cheng Shin's tires do not fit passenger cars or light trucks.  *Id*.  And the Court concluded that Commerce's interpretation effectively changed the scope of the *Order* by reading in a requirement not present therein: that the tire be for regular use.  *Id.* at 1393-1394.  Relying on this reasoning, the Court remanded the case to Commerce for it to reconsider its scope ruling in light of the Court's opinion.  *See generally United Steel*, 784 F. Supp. 3d at 1385-1395.f

### III.    Commerce's Remand Redetermination Finding Cheng Shin's T-Type Tires Covered by the Scope of the *Order*

On remand, Commerce reopened the administrative record and requested certain information from Cheng Shin and provided an opportunity for interested parties to comment. *See* Request for Information, Supplemental Questionnaire (Dep't of Commerce June 17, 2025) (P.R.R. 1); Comment Schedule (Dep't of Commerce June 18, 2025) (P.R.R. 2).  In its response, Cheng Shin noted that T-type tires were separated into two tables in the 2019 Tire and Rim Association (TRA) Year Book, which was used during the underlying investigation, and attached the index from the 2019 TRA Year Book identifying the two tables—Tables PCT-IR and PCT-IB.  *See* Cheng Shin's Supplemental Questionnaire Response, dated June 26, 2025 (P.R.R. 6 – P.R.R. 10).  Cheng Shin also explained the TRA Year Book no longer includes Table PCT-1R. *Id*. at 2.  Petitioner, USW, commented on Cheng Shin's response.  *See* Petitioner Comments on Supplemental Questionnaire, dated July 3, 2025 (P.R.R. 11).

Commerce placed on the record excerpts of the 2019 TRA Year Book, including Tables PCT-1B and PCT-1R, used by the petition to initiate the underlying investigation and underlying investigation which resulted in the *Order* and provided an opportunity for comment on this addition.  *See* Memorandum, "2019 Tire and Rim Association Year Book Excerpt," dated

August 5, 2025; *see also Passenger Vehicle and Light Truck Tires from Taiwan: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 28,563 (Dep't of Commerce May 27, 2021), and accompanying Issues and Decision Memorandum at 20; *see also Passenger Vehicles and Light Truck Tires from Taiwan: Preliminary Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 508 (Dep't of Commerce Jan. 6, 2021) (citing Commerce's Memorandum, "Preliminary Scope Comments Decision Memorandum," dated December 29, 2020 (Prelim Scope Decision Memorandum); Prelim Scope Decision Memorandum at 15, n.47 (citing to Volume I of the Petitions Exhibit I-7 (TRA Yearbook (2019)). No party commented on these excerpts.

On August 11, 2025, Commerce issued its draft remand redetermination. *See* Commerce's Memorandum, "Draft Results of Redetermination Pursuant To Court Remand," dated August 11, 2025 (P.R.R. 15) (Draft Results). In the Draft Results, in accordance with 19 C.F.R. § 351.225(k)(1), Commerce determined that Cheng Shin's T-type tires fall within the scope of the *Order*. Draft Results at 2. First, consistent with the Court's opinion and upon reexamination of record evidence, Commerce determined that Cheng Shin's T-type tires are of a size that fit passenger cars and, therefore, fall within the *Order*'s description of in-scope merchandise. *Id*. at 9, 11-14. Second, Commerce determined to further analyze whether Cheng Shin's T-type tires satisfy the scope exclusion for certain temporary tires. *Id*. In so doing, Commerce concluded that Cheng Shin's T-type tires do not meet subsection (a) of the temporary tire exclusion's requirements and, therefore, are not excluded from the scope, as they do not have a size designation and load index combination listed in Table PCT-1R or PCT-1B of the 2019 Tire and Rim Association (TRA) Year Book. *Id*. at 12-13. Therefore, in the Draft Results, Commerce determined that Cheng Shin's T-type tires are within the scope of the *Order*.

Commerce provided an opportunity for comment on the Draft Results; Cheng Shin alone responded. *Id*. at 15; *see also* Cheng Shin's Comments on the Draft Remand Redetermination, dated August 18, 2025 (P.R.R. 22).

On September 10, 2025, Commerce released its final results of remand redetermination. *See generally* Remand Results.  In its final results, Commerce noted and addressed the three comments filed by Cheng Shin.  Remand Results at 14-25.  Specifically, Commerce explained (1) the plain language of the *Order* makes clear that "spare tires are in scope if the tire is of a size that fits passenger cars or light trucks," Remand Results at 14, 14-18, (2) that Commerce factored in the Court's remand in opinion and order in its redetermination to conclude that Cheng Shin's T-Type tire's fall within the scope, Remand Results at 19-20, and (3) that the temporary tire exclusion's subsection (a) does not specify a TRA Year Book edition and expressly limits the exclusion to the size designation and load index combinations in two tables, *i.e.*, PCT-1R and PCT-1B, one of which is no longer included in the updated annual TRA Year Book, Remand Results 21-24.  As such and relevant to the temporary tire exclusion at (4), Commerce declined to read the "as updated annually" language into the exclusion because doing so is contrary to the plain language and would render reference to Table PCT-1R superfluous, meaningless or surplusage. *Id*.  Moreover, inclusion in Tables PCT-1R or PCT-1B of the TRA Year Book is an explicit requirement for the temporary tire exclusion. *Id*. at 23.

When interpreting an order, Commerce may consider certain interpretive sources, including descriptions of the merchandise contained in the petition and the underlying investigation of the order at issue, to determine whether a product is covered by the scope.  19 C.F.R. § 351.225(k)(1).  In the remand results, Commerce explained that it relied on primary interpretive sources under (k)(1) to determine that the TRA Year Book tables in the temporary

tire exclusion referred to the tables which were used in the petition and underlying investigation—Tables PCT-1R and PCT-1B of the 2019 TRA Year Book.  Remand Results at 22-23 (citing Petition, dated May 13, 2020 at Exhibit 7 (2019 TRA Year Book)); *see also* Memorandum, "2019 Tire and Rim Association Year Book Excerpt," dated August 5, 2025 (P.R.R. 19); Cheng Shin's Comments dated August 18, 2025 at 12 (P.R. 22).  In its remand determination, Commerce also explained that agency's interpretations of the scope in the *Tires from China Orders* do not dictate the interpretation that Cheng Shin advances in this case because the instant scope has different language differs meaningfully between the two cases. Remand Results at 24 (citing *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*, 80 Fed. Reg. 47,902 (Dep't of Commerce August 10, 2015) (*Tires from China Orders*)).  Accordingly, Commerce kept in place its conclusion from its draft remand determination, finding that Cheng Shin's T-type tires are covered by the *Order.*

## **ARGUMENT**

### I.    **Standard of Review**

This Court's review of remand determinations is the same as its review of original determinations.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i)).  Therefore, in remand proceedings, the Court will sustain Commerce's determination if it is "in accordance with the remand order," and is "supported by substantial evidence and otherwise in accordance with law."  *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

Commerce's determination "as to whether a particular type of merchandise is within the class or kind of merchandise" described in an antidumping or countervailing duty order is reviewable by the Court pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi).  Such scope determinations

are "highly fact-intensive and case-specific." *King Supply Co. v. United States*, 674 F.3d 1343, 1345 (Fed. Cir. 2012). The Court may review whether such a determination is "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

"'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Crawfish Processors Alliance v. United States*, 483 F.3d 1358, 1361 (Fed. Cir. 2007) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (stating "{s}ubstantial evidence is more than a mere scintilla"). "Even if it is possible to draw two inconsistent conclusions from evidence in the record, such a possibility does not prevent Commerce's determination from being supported by substantial evidence." *Am. Silicon Techs. v. United States*, 261 F.3d 1371, 1376 (Fed. Cir. 2001) (citing *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1044 (Fed. Cir. 1996)).

## II.    Commerce's Remand Redetermination Complies With The Remand Order, Is Supported by Substantial Evidence, And Is in Accordance With Law

On remand, Commerce reached two conclusions: (1) Cheng Shin's T-type tires fall within the description of in-scope merchandise as tires which fit passenger cars, and (2) Cheng Shin's tires do not meet the criteria for the scope's temporary tire exclusion. This remand redetermination complies with the Court's remand order and is supported by substantial evidence.

First, in determining that Cheng Shin's T-type tires are covered by the *Order*, Commerce considered the product description in Cheng Shin's request for a scope ruling, its supplemental responses, and the language of the scope of the *Order*. Remand Results at 9.

Per the scope language:

> All tires with a "P" or "LT" prefix, and all tires with an "LT" suffix in their sidewall markings are covered by this *Order* regardless of their intended use.  In addition, all tires that lack a "P" or "LT" prefix or suffix in their sidewall markings, as well as all tires that include any other prefix or suffix in their sidewall markings, are included in the scope, regardless of their intended use, as long as the tire is of a size that fits passenger cars or light trucks.

*Order*, 86 Fed. Reg. at 38,012.  Upon its examination of the evidence on remand, Commerce found that Cheng Shin's T-type tires are of a size that fits passenger cars and, therefore, are in-scope merchandise.  Remand Results at 11-12; *id*. at 14-20.  This aspect of Commerce's remand redetermination is entirely consistent with the Court's remand order that "the plain language … requires that spare tires shall be in scope if the tire is of a size that fits passenger cars or light trucks."  *United Steel*, 784 F. Supp. 3d at 1393.

On remand, Commerce also analyzed whether Cheng Shin's T-type tires are excluded from scope under temporary tires exclusion.  Remand Results at 12-13, 21-25.  In relevant part, the scope of the *Order* states that:

> The scope includes all tires that are of a size that fits passenger cars or light trucks, unless the tire falls within one of the *specific* exclusions set out below.
>
> …
>
> Specifically excluded from the scope are …
>
> (4) tires designed and marketed exclusively as temporary use spare tires for passenger vehicles which, in addition, exhibit each of the following physical characteristics:
>
> (a) the size designation and load index combination molded on the tire's sidewall are listed in Table PCT-1R ("T" Type Spare Tires for Temporary Use on Passenger Vehicles) or PCT-1B ("T" Type Diagonal (Bias) Spare Tires for Temporary Use on Passenger Vehicles) of the Tire and Rim Association Year Book,
>
> (b) the designation "T" is molded into the tire's sidewall as part of the size designation, and,

(c) the tire's speed rating is molded on the sidewall, indicating the rated speed in MPH or a letter rating as listed by Tire and Rim Association Year Book, and the rated speed is 81 MPH or a "M" rating, {…}.

*Order*, 86 Fed. Reg. at 38,012-13 (emphasis added).  Upon consideration of the temporary tire exclusion, Commerce found that Cheng Shin's T-type tires do not satisfy subsection (a) of the temporary tire exclusion and, therefore, they are not excluded from the scope of the *Order*.  *Id*. at 12-13.

In its comments on Commerce's final determination on remand, Cheng Shin specifically challenges Commerce's conclusion that its T-type tires do not satisfy the temporary tire exclusion in the *Order*.  As we explain below, however, Cheng Shin's arguments are unpersuasive.

> A.    **Commerce's Remand Determination That Cheng Shin's Merchandise Does Not Meet The Temporary Tire Exclusion Is Supported by Substantial Evidence**

In its comments brief, Cheng Shin argues that contrary to Commerce's determination on remand, its T-type tires in fact meet the temporary tire exclusion criteria and, therefore, are excluded from the *Order*.  According to Cheng Shin, Commerce used the wrong TRA Year Book to assess whether its product satisfied subsection (a) of the temporary tire exclusion. Cheng Shin Br. at 7-11.  Cheng Shin claims that the scope requires use of the "annual updated" TRA Year Book—that is, the 2025 TRA Year Book, rather than the 2019 TRA Year Book, on which Commerce relied.  *Id*. at 9-10.  Contrary to Cheng Shin's claims, however, Commerce's determination to use the tables from the 2019 TRA Year Book is consistent with the scope language and Commerce's scope regulations.  *See* 19 C.F.R. § 351.225(k)(1).

**1.   The Scope Language Does Not Require That The Updated Annual TRA Year Book Be Used When Evaluating The Temporary Tire Exclusion**

According to Cheng Shin, the "plain language of the scope states that the updated annual TRA Year Book should be used to determine the scope of the {temporary tire} exclusion." Cheng Shin Br. at 7, 7-11.  However, there is no such language in the *Order*.  Indeed, the *Order* contains no language specifying which yearbook should be used for the exclusion and Cheng Shin arguments otherwise are without merit.

As concerns the exclusion, the scope states that, "{s}pecifically excluded from the scope are … (4) tires designed and marketed exclusively as temporary use spare tires for passenger vehicles which, in addition, exhibit each of the following physical characteristics:"

> (a) the size designation and load index combination molded on the tire's sidewall are listed in Table PCT-1R ("T" Type Spare Tires for Temporary Use on Passenger Vehicles) or PCT-1B ("T" Type Diagonal (Bias) Spare Tires for Temporary Use on Passenger Vehicles) of the Tire and Rim Association Year Book, …

*Order*, 86 Fed. Reg. at 38,012-13 (other elements omitted).  In the remand results, Commerce explained that the exclusion's plain language neither specifies a year nor that the "updated annual" TRA Year Book should be used for the temporary tire exclusion.  Remand Results at 22.

Given the absence of language in the exclusion to support its claim, Cheng Shin argues that "{r}ead in context, it is clear that all of the references to the '{TRA} Year Book' in the scope exclusion section refer back to the earlier description of the same Year Book in the initial description of what is included within the scope."  Cheng Shin Br. at 10.  The "earlier description" is a reference in the description of in-scope merchandise to define "sizes that fit passenger cars or light trucks" to "include, but are not limited to, the numerical size designations listed in the passenger car section or light truck section of the {TRA} Year Book, as updated annually."  *Order*, 86 Fed. Reg. at 38,012-13.  But given the context in which that language

exists, it is *not* "clear" that the exclusion's reference to the TRA Yearbook "refer{s} back" to the earlier scope reference.

"Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1095 (Fed. Cir. 2002) (citing *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001)).  Any interpretation of the language of the scope in which Commerce engages must, first and foremost, give effect to the plain meaning of the language.  *Id.*; *see also OMG, Inc. v. United States*, 972 F.3d 1358, 1362 (Fed. Cir. 2020).

First, the earlier reference to the TRA Year Book is illustrative of in-scope merchandise and specific to sizes that fit passenger cars or light trucks.  Remand Results at 23.  In particular, the description of in-scope merchandise states that:

> {A}ll tires … are included in the scope, regardless of their intended use, as long as the tire is of a size that fits passenger cars or light trucks.  Sizes that fit passenger cars and light trucks *include, but are not limited to*, the numerical size designations listed in the passenger car section or light truck section of the {TRA} Year Book, as updated annually.

*Order*, 86 Fed. Reg. at 38,012-13 (emphasis added); Cheng Shin Br. at 10.  The scope language "the numerical size designations … in the passenger car section or light truck section of the {TRA} Year Book, as updated annually," is an exemplar of in-scope tire sizes, *i.e.*, "size{s} that fit passenger cars or light trucks" covered by the scope.  Remand Results at 22-23; *Order*, 86 Fed. Reg. at 38,012-13.

Second, as reflected in the plain language of the *Order*, the scope explicitly does not *require* use of the updated annual TRA Year Book in determining whether a product is in-scope.  As Commerce explained, the plain language of the scope indicates that scope coverage is not determined solely by whether the numerical size designation of the tire is listed in a TRA Year

Book.  Remand Results at 16.  That is, the scope expressly defines "sizes that fit passenger cars and light trucks" to "*include, but are not limited to*, the numerical size designations listed in the passenger car section or light truck section of the {TRA} Year Book, as updated annually."  *Id*. (emphasis added).  The phrase "include, but are not limited to" makes clear that the updated annual TRA Year Book is not the only authority or even the only TRA Year Book edition that identifies in-scope tire sizes.  While the scope specifies that the size designations in the passenger car section or light truck section of the "TRA Year Book, as updated annually," are covered sizes and, therefore, the annual update *can* be used by Commerce to identify in-scope tire sizes, the scope nowhere states that it is limited to that yearbook nor does it mandate its use. Remand Results at 17.  Cheng Shin's argument that "{b}ecause the scope *requires* the most-recently-updated TRA Year Book be used for identifying covered merchandise … , the reference to the TRA Year Book in the {temporary tire} exclusion is best read to also *require* consideration of the most-recently-updated TRA Year Book," Cheng Shin Br. at 10 (emphasis added), entirely disregard's the *Order*'s silence on this point.  *See* Remand Results at 23, 16.

Third, as explained above, reference to the TRA Year Book "as updated annually" in the general description of in-scope merchandise is merely illustrative and non-mandatory.  Remand Results at 23.  The language ("include, but are not limited to"), in context, indicates that the drafters intended the scope coverage to be more broad than those tire sizes listed in the annual updated TRA Year Book, as the scope is ultimately set by whether the "tire is of a size that fits passenger cars or light trucks."  Remand Results at 23; *see also United Steel*, 784 F. Supp. 3d at 1392.  In contrast, reference to the TRA Year Book in the temporary tire exclusion specifies the size designation and load index combinations under two particular tables in the TRA Year Book which must be molded onto an excluded product's sidewall.  Remand Results at 22-23.  The

exclusion language is precise regarding the excluded size/load combinations, and it lacks any mention of "annual updates" or "as updated annually."

In support of its argument, Cheng Shin claims that Commerce should have treated the "as updated annually" language as a definition of the term "TRA Year Book" in the *Order*, and therefore should have imported that so-called definition into every mention of the "TRA Year Book" throughout the *Order*, including in the relevant temporary tire exclusion. Cheng Shin Br. at 9-10 (relying on *SMA Surfaces Inc. v. United States*, 617 F. Supp. 3d 1263 (Ct. Int'l Trade 2023)). In contrast to the defined term in *SMA Surfaces*, however, which was denoted as such by parentheses, the *Order* in the instant case does not clearly indicate that "as updated annually" serves that purpose in the *Order*. *C.f., SMA Surfaces Inc.*, 617 F. Supp. 3d at 1273 ("To begin, placement of shorthand text in parentheses after a long description commonly indicates a defined term…."). Conveniently, Cheng Shin ignores that the scope drafters could have, but did not, include the language "as updated annually" in subsection (a) of the temporary tire exclusion but did not do so. *City & Cnty. Of San Francisco, California v. Env't Prot. Agency*, 604 U.S. 334, 344 (2025) (holding that disparate inclusion or exclusion of particular language is generally presumed intentional, a well-established cannon of statutory construction). Commerce therefore acted reasonably when it gave meaning to that decision to not include "as updated annually" to the temporary tire exclusion.

Finally, recent updates of the TRA Year Book no longer include Table PCT-1R, and, thus, reading "as updated annually" into subsection (a) of the temporary tire exclusion would render express language referring to Table PCT-1R superfluous, meaningless or surplusage. Remand Results at 23. The Court should not give effect to such an interpretation. "[A]n interpretation that renders [a term in the scope language] meaningless and mere surplusage,"

would not be and indeed is not reasonable. *Asia Wheel Co. Ltd v. United States*, 762 F. Supp. 3d 1289, 1303 (Ct. Int'l Trade 2025) (quoting *SMA Surfaces*, 617 F. Supp. 3d at 1275). Moreover, Cheng Shin's interpretation would result in the exclusion requirements continuously changing and give significant authority to third parties to control and even narrow scope coverage. Remand Results at 23-24.

### 2. Commerce's Interpretation of The Scope Language Comports With (k)(1) Sources

In the absence of plain language which pointed to a particular yearbook that must be used, Commerce considered primary interpretive sources—descriptions from the petition and underlying investigation—to interpret the language of the exclusion's subsection (a) in accordance with the regulation. Remand Results at 22; *see also* 19 C.F.R. § 351.225(k)(1).

"Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Duferco Steel*, 296 F.3d at 1095. Commerce can, however, "interpret and clarify its antidumping orders" "in accordance with the methodology set forth in its regulations." *Id*. at 1096-1097 (citing 19 C.F.R. § 351.225(k) (internal quotations removed). Indeed, Commerce may interpret scope orders "'with the aid of the antidumping petition, the factual findings and legal conclusions adduced from the administrative investigations, and the preliminary order.'" *Id*. (quoting *Smith Corona Corp. v. United States*, 915 F.2d 683, 685 (Fed. Cir. 1990)). Commerce's scope regulations provide that "in determining whether a product is covered by the scope of the order at issue, Commerce will consider the language of the scope and may make its determination on this basis alone if the language of the scope … is dispositive" and that, at Commerce's discretion, certain primary interpretive sources may be taken into account including the descriptions of the

merchandise contained in the petition and initial investigation pertaining to the order at issue. 19 C.F.R. § 351.225(k)(1)(i); Remand Results at 22.

On this point, Cheng Shin next argues that the 351.225(k)(1) interpretive factors confirm that the updated TRA Year Book—here, from 2025—should be used for the temporary tire exclusion. Cheng Shin Br. at 11-16. In particular, Cheng Shin claims that materials from the petition and investigation and scope rulings under the *Tires from China Orders*, along with the petitioner's intent, based on alleged "record information," "confirm that the annually updated TRA Year Book—not the 2019 version included in the petition—should be used for the exclusion analysis." *Id*. at 15, 11.

### i. Cheng Shin's Arguments That Rely on Documents Not in Either the Remand Record Nor the Original Administrative Record Are Waived for Failure to Exhaust Administrative Remedies

As an initial matter, Cheng Shin raises for the first time in its appeal to this Court, arguments referencing documents not on the record. Relying on party comments from the underlying investigation and the petition, Cheng Shin contends that: (1) the petition resulting in the underlying investigation did not state that the TRA Year Book used for exclusions should be different than the version used for in-scope merchandise or that any of the exclusions should be limited to the TRA Year Book available at the time of the petition, and (2) during the investigation, the petitioner did not take issue with another party's use of the updated annual TRA Year Book for purposes of identifying excluded products. Cheng Shin Br. at 12-13 (citing USW's May 13, 2020, Taiwan Investigation Petition; Atturo Tire Corp.'s July 20, 2020, Taiwan Investigation Scope Comments at Exhibit 4; USW's July 30, 2020, Taiwan Investigation Rebuttal Scope Comments at 6; and USW's September 25, 2020, Taiwan Investigation Comments on Scope Exclusion Request at note 5). The petitioner's submissions from the investigation, cited by Cheng Shin here, were not placed on the record for Commerce's

consideration in making its determination and, therefore, it is impermissible to address them for the first time before this Court. Because Cheng Shin failed to exhaust its administrative remedies by raising these arguments to the agency, Cheng Shin may not have the Court consider them now.

Congress intended for parties to exhaust their administrative remedies during the underlying proceedings before Commerce "absent a strong contrary reason." *Boomerang Tube*, 856 F.3d 908, 912 (Fed. Cir. 2017) (citing *Corus Staal v. United States*, 502 F.3d 1370, 1379 (Ct. Int'l Trade 2017)); *see also* 28 U.S.C. § 2637(d). Cheng Shin has not provided that "strong contrary reason" explaining its failure to raise these arguments during the investigation. *Id.* And indeed, there is no evident reason why Cheng Shin could not have raised these arguments in a timely manner. Nothing in the law has changed since Commerce conducted the remand, nor have there been any changes in the record facts during that time.

Cheng Shin's lapse in exhausting its administrative remedies is made even more problematic because to support its waived arguments, Cheng Shin cites documents that are not on the remand record. Cheng Shin Br. 12-13, n.45-n.50, and n.52. This Court has recognized that Commerce must base its decisions on the record before it and that the burden falls to interested parties to create an accurate record upon which Commerce may actually rely. *Yama Ribbons & Bows Co., Ltd. v. United States*, 865 F. Supp. 2d 1294, 1253 (Ct. Int'l Trade 2012). Commerce cannot be expected to weigh evidence and arguments which were not before it in the first instance.

On remand, Commerce reopened the record and requested information from Cheng Shin. As acknowledged by Cheng Shin, the petition included excerpts from the 2019 TRA Year Book, *see, e.g.*, Cheng Shin Br. at 12, and Commerce placed those excerpts on the record of this

remand for comment before using Tables PCT-1R and PCT-1B from the yearbook in the Draft Results. Draft Results at 13. In the Draft Results, Commerce outlined the (k)(1) scope regulations and its own ruling that Cheng Shin's T-type tires fall within the scope of the order in accordance with 19 C.F.R. § 351.225(k)(1). *Id*. at 2. Commerce also stated that Cheng Shin's product does not satisfy the requirements for the temporary tire exclusion because the "size designation and load index combination molded on the sidewall of Cheng Shin's T-type tires is not listed in Table PCT-1R or PCT-1B of the 2019 {TRA} Year Book, as required by subsection (a) of the *Order*'s temporary tire exclusion." Draft Results at 13 (citing *Order*, 86 Fed. Reg. at 38011-13; Memorandum, "2019 Tire and Rim Association Year Book Excerpt," dated August 5, 2025; Scope Application at Attachments 3 and 4; and Cheng Shin's June 26, 2025 Remand QR at Attachment 2). Here again, Commerce provided an opportunity to comment.

Not only did Cheng Shin fail to comment on the 2019 TRA Year Book excerpts which Commerce placed on the remand record, however, Cheng Shin also failed to point to the materials which it now cites in its brief before this Court and failed to raise its claims concerning the petition and investigation materials in response to the Draft Results. Cheng Shin's relevant comments on the Draft Results are as follows:

> The Department's reliance on the 2019 TRA Year Book is, however, contrary to the plain language of the scope and the Department's past decisions. The Draft Remand Redetermination did not explain why the 2019 TRA Year Book was relevant to its analysis. However, the 2019 TRA Year Book was included in the petition that resulted in the underlying investigation of this case. Therefore, it appears that the Department relied on the 2019 TRA Year Book, because it was the version of the year book available when the scope was established for this case. But the Draft Remand Redetermination has, once again, failed to look at the actual scope language, which explicitly states that the determination of whether merchandise is within the scope will be based on the TRA Year Book 'as updated annually.' As a result, the reference to the TRA Year Book in the passenger-vehicle spare tire exclusion means that the tire must be included in the PCT-1R or PCT-1B tables of the updated

> annual TRA Year Book available at the time of this proceeding — not the
> version of the TRA Year Book available at the time of the investigation.

Cheng Shin's Draft Remand Comments at 12.  Commerce addressed the comments that Cheng

Shin *did* make in the final remand results but, of course, was unable to do the same where Cheng

Shin did not raise certain arguments.

Cheng Shin has deprived Commerce of the opportunity to examine and weigh the cited

materials in making its determination, and to respond to Cheng Shin's claims prior to review by

this Court.  Moreover, the cited documents are not even on the remand record for the Court to

review as they were not placed on the record.[3]  Accordingly, the Court should not entertain

Cheng Shin's arguments concerning the petition and investigation materials nor review evidence

that was not presented to Commerce as required in making its determination.

### ii.    Cheng Shin's Arguments About Which Issue of the TRA Year Book Commerce Used Are Without Merit

Notwithstanding the Government's position that the Court should not entertain Cheng

Shin's arguments nor review evidence that was not presented to Commerce, we respond to

Cheng Shin's arguments insofar as we can without Commerce having examined the extra-record

materials.

First, Cheng Shin's argues that the petition "did not state anywhere that the TRA Year

Book used for the exclusions should be different than the version used for in-scope merchandise

or that any of the exclusions should be limited to the TRA Year Book available at the time of the

petition."  Cheng Shin's Br. at 12.  Notably, the petition is not on the record of this remand or

---

[3] In stark contrast, Commerce affirmatively placed excerpts of the TRA Year Book on the record of this remand proceeding.  In addition, the documents and passages cited by Cheng Shin are not covered by 19 C.F.R. § 351.104(a)(6), especially as documents not originating from Commerce.

underlying scope segment.  However, that the petition did not "state anywhere" a particular

aspect of a proposed scope does not have the effect of contradicting Commerce's determination.

A petition proposes a scope for an investigation, but it is the responsibility of Commerce to

actually define the scope of an order.  *Duferco Steel*, 296 F.3d at 1089; *see also Tak Fak Trading

Co. v. United States*, 396 F.3d 1378, 1382 (Fed. Cir. 2005) ("Commerce has broad authority to

interpret its own antidumping duty orders.") (internal quotations omitted).  Commerce ultimately

decides the language of a scope, including any exclusions, and applies the record facts to the

scope to determine whether a product is in or out of the scope.  *See, e.g., Mitsubishi Elec. Corp.

v. United States*, 898 F.2d 1577, 1582-83 (Fed. Cir. 1990).

      When questions arise as to whether a product is covered by an existing scope of an order,

Commerce is authorized to provide clarification.  19 U.S.C. § 1516a(a)(2)(B)(vi); *accord Royal

Bus. Machs., Inc. v. United States*, 669 F.2d 692, 699 (Ct. CPA 1982) (confirming Commerce's

authority to issue scope rulings).  In determining whether a product is covered by the scope,

Commerce will consider the scope language and may make its determination on this basis alone

if the scope language … is dispositive.  19 C.F.R. § 351.225(k)(1).  Commerce may also

consider certain primary interpretive sources, *see id*. at § 351.225(k)(i), and Commerce's

interpretations of its own antidumping duty orders are entitled to substantial deference because

"the meaning and scope of antidumping orders are issues particularly within the expertise and

special competence of Commerce."  *King Supply*, 674 F.3d at 1348 (internal citations and

quotations omitted); *see Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1382-83 (Fed.

Cir. 2017).  Thus, the lack of information in a petition regarding a particular aspect of a proposed

scope is unpersuasive.

Cheng Shin also states that the petitioner did not take issue with another party's use of the 2020 TRA Year Book in its scope exclusion request in the investigation. Cheng Shin Br. at 12. The party's scope exclusion request and comments from the underlying investigation are not on the record of this remand or underlying scope segment. And again, it is the responsibility of Commerce—not the petitioner or some other party to an investigation—to define and subsequently clarify the scope of an order and, in doing so, consideration of the weight to assign any (k)(1) sources is within Commerce's reasoned decision-making authority.

Cheng Shin contends that the exclusion in the scope of the *Order* is "modeled after" the exclusion in the *Tires from China Orders*, which, Cheng Shin claims, confirms that the annual updated TRA Year Book should be used because "it was well established … that the annually updated TRA Year Book was the appropriate Year Book for evaluating whether a tire met the exclusion for passenger-vehicle spare tires under the *China Orders*." Cheng Shin Br. at 13 (citing *Tires from China Orders*, 80 Fed. Reg. 47,902, Appendix (August 10, 2015)). In the remand results, however, Commerce addressed the argument that the scopes require identical treatment, explaining that the similar scopes are different in a relevant way. Remand Results at 18-19.

> {T}he {} *Tires from China Orders*' scope states that 'all tires that lack a 'P' or 'LT' prefix or suffix … as well as all tires that include any other prefix or suffix … are included in the scope, … *as long as the tire is of a size that is among the numerical size designations listed in the passenger car section of the TRA Yearbook, as updated annually*.' That is, the {} *Tires from China Orders*' scope language explicitly specifies that scope coverage hinges on the whether the tire is of a size that is among the numerical size designations listed in relevant sections of the annual update of the TRA Year Book. In accordance with this language, Commerce determined that the scope of merchandise subject to the {} *Tires from China Orders* will change as the TRA Year Book is revised. But, the passenger tires from Taiwan *Order* scope, here, hinges on whether the tire is '*of a size that fits passenger cars and light trucks*,' where '{s}izes that fit passenger cars and light trucks *include, but are not limited to*, the

> numerical size designations listed in the passenger car section or light
> truck section of the {TRA} Year Book, as updated annually.'

*Id*. at 18 (citing sources) (emphasis in original).  Commerce reasonably concluded that "the plain language of the passenger tires from Taiwan *Order*'s scope does not dictate an interpretation identical to that of the {} *Tires from China Orders*."  Remand Results at 18-19.

Cheng Shin argues that the scope rulings from the *Tires from China Orders* confirm that the updated annual TRA Year Book should be used for the exclusion.  Cheng Shin Br. at 13-15; *id*. at 14 (citing *Notice of Scope Rulings*, 84 Fed. Reg. 36,577, 36,578 (Dep't of Commerce July 29, 2019); Memorandum, "Scope Ruling Regarding Spare Tires Imported by Maxxis International, dated May 1, 2018 (Maxxis Scope Ruling); Notice of Scope Rulings, 84 Fed. Reg. 44,849 (Dep't of Commerce August 27, 2019); and Memorandum, "Scope Ruling Regarding Spare Tires Imported by Giti Tire (USA) Ltd., dated July 11, 2018 (Giti Scope Ruling)).  However, the scope rulings cited by Cheng Shin derive from the *Tires from China Orders*—not the passenger tires from Taiwan *Order*, at issue here.  As explained above, Commerce found that the two scopes are substantively different to the point that the Taiwan *Order*'s scope does not dictate an interpretation identical to that in the *Tires from China Orders*.  Remand Results at 18-19.  Specifically, the *Tires from China Orders*' scope coverage hinges on whether a tire is of "a size that is among the numerical size designations listed in the passenger car section of the TRA Year Book, as updated annually."  Based on the plain scope language and in accordance with § 351.225(k)(1), Commerce determined that the scope of merchandise subject to the *Tires from China Orders* will change as the TRA Year Book is revised.  Remand Results at 18.

Regarding the Maxxis Scope Ruling, Cheng Shin states that "Commerce confirmed that the annually updated TRA Year Book should be used to determine whether the tires are excluded" and that "{t}o support that finding, Commerce cited to the scope language that stated

the annual updated TRA Year Book should be used for purposes of identifying in-scope

merchandise." Cheng Shin Br. at 15. Cheng Shin is correct but Cheng Shin overlooks that the

Taiwan *Order* does not state that the annual updated TRA Year Book should be used for

purposes of identifying in-scope merchandise. Because the scopes have different language, and

derive from different proceedings with different factual records, Commerce found that an

identical interpretation is not dictated. Remand Results at 19.

Citing to the oral argument transcript in this case and the petitioner's comments on

Cheng Shin's questionnaire response from the remand, Cheng Shin argues that "record

information confirms the petitioner intended that the annually updated TRA Year Book be used

to determine whether passenger-vehicle spare tires are excluded." Cheng Shin Br. at 15-16.

Statements at oral argument by the petitioner's counsel in a subsequent matter pertaining to an

existing order demonstrably do not constitute a primary interpretive source in accordance with

19 C.F.R. § 351.225(k)(1)(i). To the extent that such comments may be relevant to this Court's

analysis of the remand determination, Commerce's analysis of the primary interpretive sources,

including the descriptions of the merchandise in the petition and investigation govern in

determining whether a product is covered by the scope of the order at issue consistent with 19

C.F.R. § 351.225(k)(1)(ii).

> **3. Commerce Reasonably Considered The 2025 TRA Year Book in Determining That The T-Type Tires Fall Within The Description of Subject Merchandise And Nothing Requires Commerce to Use The 2025 TRA Year Book for The Exclusion**

Cheng Shin next contends that Commerce's reliance on the 2025 TRA Year Book is an

acknowledgement that the 2025 TRA Year Book is the relevant updated annual yearbook for

purposes of this scope inquiry. Cheng Shin Br. at 17. This is incorrect. As Cheng Shin

acknowledges, Commerce considered the 2025 TRA Year Book—specifically, that Cheng Shin's

24

T-type tires have a size designation of T155/60R18, which is a size that is included in the PCT-1B table of the 2025 TRA Year Book—as support for its finding that Cheng Shin's T-type tires are "of a size that fits passenger cars" and, therefore, fall within the description of subject merchandise. Remand Results at 16. The *Order* specifically states that "all tires … , are included in the scope, regardless of their intended use, as long as the tire is of a size that fits passenger cars or light trucks," and "{s}izes that fit passenger cars and light trucks include, but are not limited to, the numerical size designations listed in the passenger car section or light truck section of the {TRA} Year Book, as updated annually." Given that the 2025 TRA Year Book constitutes an annual update of the yearbook, Commerce reasonably considered it in determining that Cheng Shin's T-type tires fall within the scope description as of a size that fits passenger cars. Commerce's consideration of the 2025 TRA Year Book to determine that the product at issue meets the description of in-scope merchandise does not equate to an acknowledgement that the 2025 TRA Year Book is the relevant authority for the exclusion.

Cheng Shin argues that the *Tires from China Orders'* scope rulings indicate that the 2025 TRA Year Book is the relevant updated yearbook for the spare tire exclusion. Cheng Shin Br. at 16-17. As stated above, Commerce's scope rulings under the *Tires from China Orders* do not dictate the outcome or scope interpretation in this case involving the tires from Taiwan *Order* because the scope language is different. The *Tires from China Orders'* scope expressly requires the use of the TRA Year Book "as updated annually" to identify in-scope merchandise. The Taiwan *Order* at issue in this case does not, and accordingly reliance on *Tires from China Orders'* scope rulings is inapposite. *See e.g.*, *Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310, 1330 (Fed. Cir. 2024) (holding that Commerce reasonably declined to find that language in separate orders was applicable in the interpretation of *differing* language in

*another* order).  Instead, the coverage under Taiwan *Order* hinges on whether the tire is "of a size that fits passenger cars or light trucks," where "{s}izes that fit passenger cars and light trucks include, but are not limited to, the numerical size designations listed in the passenger car section or light truck section of the {TRA} Year Book, as updated annually."  As such, Commerce considered the fact that Cheng Shin's T-type tire is of a numerical size listed in the passenger car section of the 2025 TRA Year Book in its determination that the product is of a size that fits passenger cars and, therefore, falls within the description of in-scope merchandise. Remand Results at 16.  Commerce's reliance on the 2025 TRA Year Book accords with the plain scope language.  Contrary to Cheng Shin's argument, the fact that the record supports that Cheng Shin's T-type tire is of a "size that fits passenger cars" does not mean that it also qualifies for one of the "specific" exclusions.

> **B.    Commerce Reasonably Determined to Use The 2019 TRA Year Book to Conclude That Cheng Shin Tire Did Not Meet The Temporary Tire Exclusion**

Cheng Shin next argues that there is "no valid justification" for using the 2019 TRA Year Book for the scope exclusion.  Cheng Shin Br. at 18, 18-31.  However, Commerce thoroughly explained its reliance on the 2019 TRA Year Book for subsection (a) of the scope exclusion based on the plain scope language and (k)(1) interpretive sources.

> **1.    Commerce's Determination Is Supported by The Plain Language of The Scope**

Cheng Shin claims that Commerce concluded that it was not required to use the updated annual TRA Year Book for the scope exclusion because the exclusion did not include the phrase "as updated annually."  Cheng Shin Br. at 19.  Not so.

Rather, Commerce found that "{t}he plain language of the temporary tire scope exclusion's reference in subsection (a) to the TRA Year Book neither specifies a year nor includes the language 'as updated annually'"; "subsection (a) expressly limits the exclusion to the

size designation and load index combinations listed in two tables, *i.e.*, PCT-1R and PCT-1B of

the {TRA} Year Book"; and that since 2019, the TRA Year Book no longer includes Table PCT-

1R.  Remand Results at 22-23.  Based on these findings, in accordance with § 351.225(k)(1),

Commerce considered the descriptions of the merchandise contained in the petition pertaining to

the *Order* at issue, which include the size designation and load index combinations for Tables

PCT-1R and PCT-1B of the 2019 TRA Year Book.  *Id*.  Commerce concluded that it is

"appropriate to take into account the 2019 TRA Year Book in considering the scope language of

the temporary tire exclusion to make our determination in this case."  *Id*.  Commerce further

explained that the distinction between the language in the description of in-scope merchandise

and the temporary tire exclusion supported its conclusion:

> While the language in the *Order* defining the tires included in the scope
> provides the TRA Year Book as an illustrative but non-exhaustive list 'as
> updated annually,' the temporary tire exclusion … notably lacks any
> reference to annual updates.  The reference to annual updates for the
> inclusions but not for the exclusions indicates that annual updates shall
> only apply to inclusion language.

Remand Results at 23.  Commerce's analysis reflects its consideration of the scope language as a

whole, and that the agency interpreted phrases in context—consistent with its obligations under

the law.

Cheng Shin claims that the description of in-scope merchandise "explicitly states that the

annually updated TRA Year Book should be used to determine whether merchandise is within

scope," and "{a}s a result, later references to the TRA Year Book in the exclusion … necessarily

mean the annually updated TRA Year Book."  Cheng Shin Br. at 19.  As explained above, the

description of in-scope merchandise does not state that the annually updated TRA Year Book

should be used to determine whether merchandise is within scope.  Accordingly, Commerce's

reading of the scope accords with the plain language. Cheng Shin's preference for another outcome or an alternative interpretation is insufficient.

### 2. Commerce's Determination Concerning The Temporary Tire Exclusion Is Supported by (k)(1) Sources

Cheng Shin argues that because the annual updated TRA Year Book still contains one of the two tables listed in the scope exclusion, Commerce should use the annual updated TRA Year Book each year because it "will continue to capture all of the tires identified for the exclusion at the time of the investigation." Cheng Shin Br. at 20. However conveniently it attempts to work-around the plain language, Cheng Shin misses the point. In this case, Commerce was charged with interpreting the scope language to determine whether the inquiry product is covered by the *Order*. Thus, the question for Commerce is not whether using the updated annual TRA Year Book and its single table could somehow fit into the plain language that "(a) the size designation and load index combination molded on the tire's sidewall are listed in Table PCT-1R … or PCT-1B … of the {TRA} Year Book." The question for Commerce was what yearbook it must use based on the scope language accounting for (k)(1) interpretive sources.

Commerce interpreted the exclusion language in accordance with section 351.225(k)(1) of its regulations, determining that the reference to the excluded "size designation and load index combinations" "listed in Table PCT-1B or PCT-1R of the {TRA} Year Book" was to the specific listings from the 2019 TRA Year Book, used in the petition and underlying investigation. Remand Results 13, 22-23.

Cheng Shin claims that Commerce ignored its own analysis in the *Tires from China* scope rulings. Cheng Shin Br. at 22. Contrary to Cheng Shin's claim, Commerce acknowledged the language differences in the *Tires from China* and the Taiwan *Order* scopes and disagreed that the scopes are identical. Remand Results at 18, 24. Given the relevant differences in scope

language, Commerce explained that it was not bound to the interpretation in the *Tires from China* scope rulings. *Id*. Cheng Shin raises the petitioner's Rule 56.2 Brief as support for its claim that the *Tires from China* scope rulings apply here. Cheng Shin Br. at 23-25. The petitioner's Rule 56.2 Brief is not a (k)(1) primary interpretive source, however. *See* 19 C.F.R. § 351.225(k)(1).[4]

Although Cheng Shin disagrees with the manner in which Commerce weighed (k)(1) sources, under the substantial evidence standard of review, "mere disagreement with Commerce's weighing of the evidence" does not warrant setting aside Commerce's determination. *Haixing Jingmei Chem. Prod. Sales Co. v. United States*, 335 F. Supp. 3d 1330, 1346 (Ct. Int'l Trade 2018). Accordingly, because Commerce's reading of the exclusion language and reliance on the 2019 TRA Year Book for the exclusion is consistent with the plain language and (k)(1) interpretive sources, this Court should leave it undisturbed.

### 3. Commerce Reasonably Considered Administrability Concerns in Reaching Its Final Remand Determination

Cheng Shin claims that Commerce's administrability concerns "strain credulity" because the agency "admits" that the scope of the Taiwan *Order* "contemplates that the universe of in-scope merchandise may change over time." Cheng Shin Br. 25. Cheng Shin overstates Commerce's position with respect to the Taiwan *Order*'s scope, however. Commerce acknowledged that "{t}he plain language of the scope indicates that scope coverage is not determined solely by whether the numerical size designation of the tire is listed in the TRA Year

---

[4] "The following primary interpretive sources may be taken into account under paragraph (k)(1) introductory text of this section, at the discretion of the Secretary: (A) the descriptions of the merchandise contained in the petition … ; (B) the descriptions of the merchandise contained in the initial investigation … ; (C) previous or concurrent determinations of the Secretary, including prior scope rulings, memoranda, or clarifications … ; and (D) Determinations of the Commission … ." 19 C.F.R. § 351.225(k)(1)(i).

Book" and that "the language expressly provides that the scope includes all tires that are of a size

that fits passenger cars or light trucks," where "sizes that fit passenger cars and light trucks

include, but are not limited to, the numerical size designations listed in the passenger car section

or light truck section of the TRA Year Book, as updated annually."  Remand Results at 16.  The

key inquiry is whether the tire is of a size that fits a passenger car or light truck and, therefore,

scope coverage is not dependent on year-to-year updates.  As Commerce explained:

> While reference to the TRA Year Book in the inclusion language is
> illustrative, the scope is ultimately set by reference to whether 'the tire is
> of a size that fits passenger cars or light trucks. However, for the
> temporary tire exclusion, inclusion in the TRA Year Book is a requirement
> for the exclusion.  Allowing annual updates in such a scenario would
> result in the scope of the order changing continuously and would
> improperly give significant authority to third parties.

Remand Results at 23-24.  Thus, Commerce explained its administrability concerns and those

concerns support its determination.

According to Cheng Shin, "there is no evidence that either Customs or Commerce has

had issues administering the scope of the {*Tires from*} *China Orders*."  Cheng Shin Br. at 26.

The administrability of the *Tires from China Orders* is not at-issue in this case, however.  And,

because of the relevant differences in scope language, the agency is not bound to its

interpretation in the *Tires from China Orders*' scope rulings in evaluating Cheng Shin's tires

from Taiwan.  As such, the administrability of that order does not detract from Commerce's

interpretation which is based on the scope language in accordance with 19 C.F.R.

§ 351.225(k)(1).

### 4.  <u>Commerce Lawfully Interpreted The Temporary Tire Exclusion</u>

Cheng Shin argues that Commerce's use of the 2019 TRA Year Book for the scope

exclusion imports a requirement without a textual basis in the scope language and

"impermissibly modifies the scope to include {Cheng Shin's product}." Cheng Shin Br. at 29.

Taken to its logical conclusion, Cheng Shin's argument means that tires that would not have

been understood as excluded at the time of the *Order*'s issuance should be excluded now. Cheng

Shin overlooks that the exclusion has not changed, however. In fact, the exclusion has the same

requirements as it did when the *Order* was issued. Therefore, Commerce has not "imported a

requirement without a textual basis" or "impermissibly modifie{d}" the scope to include Cheng

Shins' product, as Cheng Shin claims. Cheng Shin Br. at 29. Cheng Shin's product was not

excluded then, and it is not excluded now. With respect to Cheng Shin's argument regarding the

textual basis for Commerce's determination, Commerce acknowledged that the scope exclusion

did not specify a yearbook version. This is precisely the reason Commerce resorted to (k)(1)

interpretive sources in considering the scope language and to reach its determination. There is

nothing in the scope language which indicates that the exclusion criteria change over time.

Accordingly, Commerce lawfully interpreted the temporary tire exclusion.

## **CONCLUSION**

For these reasons, this Court should sustain Commerce's remand redetermination and

enter final judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

Of Counsel:

LESLIE M. LEWIS
Attorney
Office of the Chief Counsel
for Trade Enforcement & Compliance
U.S. Department of Commerce
Washington, D.C. 20230

/s/ Isabelle Aubrun
ISABELLE AUBRUN
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0465
E-mail: Isabelle.aubrun2@usdoj.gov

December 22, 2025

*Attorneys for Defendant United States*