**UNITED STATES COURT OF INTERNATIONAL TRADE**
BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant,*<br><br>and<br><br>CHENG SHIN RUBBER USA INC.,<br><br>*Defendant-Intervenor.* | **Court No. 24-00165** |

**PLAINTIFF'S COMMENTS IN SUPPORT OF THE FINAL REDETERMINATION ON REMAND**

Plaintiff the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (the "USW" or "Plaintiff") respectfully submits its comments in support of the redetermination reached by the U.S. Department of Commerce ("Commerce") regarding the redetermination upon remand of Commerce's scope decision under the antidumping duty ("AD") order on passenger vehicle and light truck tires

("PVLT tires") from Taiwan (ECF 45-1). The comments are timely filed per this Court's second amended scheduling order of October 20, 2025 (ECF No. 48).

**I.      Introduction**

This Court remanded Commerce's scope determination that certain temporary-use spare passenger tires ("T-type tires") imported by Defendant-Intervenor Cheng Shin Rubber Usa Inc. ("Cheng Shin") were outside of the scope of the AD order as they were of a size not listed in the Tire and Rim Association ("TRA") Year Book (the "Year Book"). *See* Slip-Op. 25-72 (ECF No. 37); *see also Final Scope Ruling on the Antidumping Duty Order on Passenger Vehicle and Light Truck Tires from Taiwan: Request by Cheng Shin Rubber Ind. Co. Ltd.* (Dep't Commerce Aug. 5, 2024) ("*Scope Ruling*") (P.R. 15).[1] As the Court recognized, the plain language of the scope of this order included all tires of a size used on passenger vehicles or light trucks, not only those listed in the Year Book. Slip-Op. 25-72 (ECF No. 37) at 13-14. The Court also properly recognized that Commerce could not interpret the scope contrary to those plain terms and that unrebutted evidence on the record showed that Cheng Shin's T-type tires were of a size that fit passenger cars. *Id.* at 14-16.

Commerce's redetermination upon remand complies with this Court's ruling. Commerce properly examined if the Cheng Shin's T-type tires are of a size that fits passenger vehicles and, because the record before Commerce was abundantly clear

---

[1] Citations to documents on the public administrative record of Commerce's scope inquiry are denoted as "P.R." in these comments.

that they are of such a size, determined that they are covered by the plain language of the scope. *Results of Redetermination* (ECF. No. 45-1) at 11-12. Commerce further examined if the tires satisfied the scope exclusion for temporary tires and held that they do not. *Id.* at 12-13.

As Commerce's redetermination complies with this Court's opinion and properly applies the plain language of the scope of the order, Plaintiff supports the redetermination and asks this Court to affirm it. Plaintiff takes no position regarding the new determination that Cheng Shin's T-type tires are not covered by the exclusion for temporary tires.

**II.    Argument**

    ***A. No Party Challenges Commerce's Redetermination on the Inclusion All of PVLT Tire Sizes***

First, no party challenges Commerce's redetermination that tires of all sizes that fit a passenger car are covered by the scope of the AD order, and that there is no intended use requirement in the scope language. *See Results of Redetermination* (ECF. No. 45-1) at 14, 17-18; *see also Defendant-Intervenor's Comments in Opposition to Final Redetermination on Remand* ("*Defendant-Intervenor's Comments*") (ECF No. 52) at 13-30 (making no claim regarding Commerce's determination on tire sizes). Indeed, in contrast to its arguments to this Court prior to the remand that additional, unstated requirements should be read into the actual language of the scope (*see, e.g.*, Slip-Op. 25-72 (ECF No. 37) at 14-15 (the argument that only "regular use" tires are covered by the scope)), Defendant-Intervenor now insists that the plain language of the scope must be paramount and that language

3

does *not* include those requirements. *Defendant-Intervenor's Comments* (ECF No. 52) at 7-8; *see also Results of Redetermination* (ECF. No. 45-1) at 14 (Defendant-Intervenor's argument to Commerce now that "{t}he scope language also explicitly states that the intended use of the tire is irrelevant to the scope determination.").

As no party contends that Commerce's redetermination—that the scope of the order covers all tires sizes that fit on passenger vehicles, including sizes for uses such as spare tires, unless otherwise excluded from the scope and so is not limited to sizes listed in the Year Book—was incorrect, this Court should affirm Commerce's redetermination on that point.

### B. Defendant-Intervenor's New Challenge Impermissibly Seeks to Have Changes in Coverage Apply Retroactively

After properly holding in the redetermination that all sizes of tires that fit passenger cars, including the T-type tires, are covered by the scope unless falling under one of the seven exclusions detailed in the scope language, Commerce looked further at whether the T-type tires in question fell into the fourth exclusion for some temporary tires. *See, e.g.*, *Results of Redetermination* (ECF. No. 45-1) at 12-13. Commerce noted that this exclusion required that the tire size be "listed in Table PCT-1R ('T' Type Spare Tires for Temporary Use on Passenger Vehicles) or PCT-1B ('T' Type Diagonal (Bias) Spare Tires for Temporary Use on Passenger Vehicles)" of the Year Book. *Id.* at 12. Commerce recognized that the size of the T-type tires was not listed in those tables of the 2019 Year Book, the Year Book in effect at the time of the order. *Id.* at 13. Commerce therefore concluded that the T-type tires did not meet the exclusion requirements, so remained covered by the order. *Id.*

4

During the redetermination proceedings, Defendant-Intervenor submitted the temporary spare tables from the 2022-2024 Year Books for the first time and added, unbidden by Commerce, the passenger vehicle section (including the temporary spare table[2]) from the 2025 Year Book. *See Defendant-Intervenor's Comments* (ECF No. 52) at 3-4. Defendant-Intervenor argued that because the 2025 Year Book listed the size of the T-type tires, Commerce must now find they do fall within the temporary spare exclusion. *See Results of Redetermination* (ECF. No. 45-1) at 14, 21.

Commerce disagreed, explaining that the language of the exclusion did not refer to the Year Book "as updated annually." *Defendant-Intervenor's Comments* (ECF No. 52) at 22. Instead, Commerce pointed out, the exclusion referred to PCT-1R and PCT-1B tables. *Id.* The PCT-1R table does not appear in more recent versions of the Year Book. Therefore, Commerce reasoned, the reference in the

---

[2] In its comments in opposition to the redetermination, Defendant-Intervenor now avers that "the PCT-1R and PCT-1B tables identified in the passenger-vehicle-spare-tire exclusion are considered tables *within* the 'passenger car section' of the TRA Year Book…." *Defendant-Intervenor's Comments* (ECF No. 52) at 10 (emphasis Defendant-Intervenor's). As we have before pointed out to the Court, Defendant-Intervenor previously argued that these tables were instead "other sections" of the Year Book separate from the passenger car section; and so Defendant-Intervenor had excluded those tables from its submissions to Commerce of the passenger car section of the Year Book in the scope inquiry prior to the remand. *See Defendant-Intervenor's Brief* (ECF No. 30) at 18-19 (claiming that the Year Book passenger and light truck sections "only identify the size designations of regular-service tires for passenger cars and light trucks, while *other sections* of the TRA Year Book identify the size designations for temporary use spare tires for passenger cars and light trucks…;" emphasis added); *see also Plaintiff's Reply Brief* (ECF No. 31) at 13-15 (pointing out Defendant-Intervenor's argument and exclusion of the spare tire tables from its submissions). Defendant-Intervenor apparently has abandoned that position now.

5

exclusion to the specific prior tables indicated that the exclusion requires the size be listed in those tables in the 2019 Year Book, the Year Book in effect at the time of the order. *Id.* at 22-23. As the size in dispute here was now so listed, Commerce held, these tires did not meet the exclusion requirements. *Id.* at 23-24.

Defendant-Intervenor now asks this Court to reject Commerce's reasoning on what version of the Year Book is relevant to the temporary tire exclusion under the scope of this order and to decide that the 2025 version of the Year Book must now be applied according to what Defendant-Intervenor argues is the "plain language" of the order. *See Defendant-Intervenor's Comments* (ECF No. 52) at 7-31.

Plaintiff takes no position on whether Commerce properly interpreted the language of the order to limit the temporary spare exclusion to the sizes listed in the 2019 temporary spare tables. Commerce's reasoning is certainly not unreasonable on its face, as the language of the exclusion does not specify whether the updated Year Book is referenced, unlike the scope language setting out coverage generally, which does reference the annually updated Year Book as a non-exhaustive example of included tire sizes.

We do note, however, the logical inconsistency in what the Defendant-Intervenor asks the Court to do. Defendant-Intervenor claims that the exclusion must be read to reflect the current version of the Year Book, but seeks to have a future, not a current, version of the Year Book applied.

Defendant-Intervenor submitted its request for a scope ruling on March 12, 2024. Commerce initiated the scope inquiry on April 11 and issued the original

6

scope determination on August 5. *See Results of Redetermination* (ECF. No. 45-1) at 7. Indeed, by Commerce's regulations, Commerce's scope inquiry had to be completed by August 9, 2024. *See* 19 C.F.R. § 351.225(e)(1) (deadline for scope rulings, absent an extension that did not occur here, is 120 days from the date of initiation). Thus, at no point during the 2024 scope inquiry period was the 2025 Year Book published. The annually updated Year Book in 2024 was the 2024 Year Book. Thus, the Year Book relevant to Commerce's 2024 scope inquiry is the 2024 Year Book.

      Defendant-Intervenor now seeks to force Commerce to retroactively apply changes that occurred after that relevant period. Defendant-Intervenor does not explain how a future version of the Year Book applies anywhere under the language of the scope. It does not. Indeed, Defendant-Intervenor argues that the "exclusion under the Taiwan Order was contemplated to change over time." *Defendant-Intervenor's Comments* (ECF No. 52) at 29. But rather than allowing it to change over time, Defendant-Intervenor seeks to have a scope that already contemplates future events, forcing Commerce to apply 2025 facts to a 2024 scope decision before those facts occurred. Defendant-Intervenor cites to no authority that would suggest that Commerce can so apply facts before they happened.

      Regardless of how this Court holds on Commerce's determination that only the 2019 version of the Year Book is relevant for the temporary tire exclusion in the scope of this order, the Court must not require that Commerce apply later versions of the Year Book to earlier-entered merchandise or prior scope decisions. Doing so

7

would create a truly unadministrable order—where the coverage of the order could never be settled as future changes in the Year Book unknowably could extend backwards in time, making the coverage today unknowable—and would be entirely inconsistent with the plain language of the order that applies the Year Book "as updated annually," not before. If Defendant-Intervenor wishes to have a scope ruling that considered the 2025 version of the Year Book, Defendant-Intervenor needs to make a scope ruling request in 2025.

### III.    Conclusion

For the reasons discussed above, this Court should affirm Commerce's redetermination that the scope of the order covers all sizes of tire used on passenger vehicles and light trucks, regardless of intended use, unless otherwise excluded by the scope.

Respectfully submitted,

/s/ Nicholas J. Birch
Roger B. Schagrin
Nicholas J. Birch
Alessandra A. Palazzolo
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

December 22, 2025

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel at Schagrin Associates hereby certifies that the Reply Brief of Plaintiff the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, dated December 22, 2025, complies with the word-count limitation set out in 2(B)(1)(b) of this Court's Standard Chambers Procedures, limiting comment on remand determinations to 10,000 words. This response brief contains 1,863 words according to the word count function of the word processing software used to prepare the brief.

/s/ Nicholas J. Birch
Roger B. Schagrin
Nicholas J. Birch
Alessandra A. Palazzolo
**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700
*Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

Dated: December 22, 2025